1
2
3
4
5
6

**UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| **EFRAIN MUNOZ, LEONA LOVETTE and STEPHANIE MELANI, individually and on behalf of all others similarly situated,** ) ) ) ) ) | **CIV CASE NO 08-0759 AWI DLB** **ORDER RE: MOTION ON THE PLEADINGS** |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | |
| **PHH CORP., PHH MORTGAGE CORP., PHH HOME LOANS, LLC, and ATRIUM INSURANCE CORP.,** ) ) ) ) | |
| **Defendants** ) ) | |

**I. History**[1]

Defendant PHH (which comprises a number of related companies with similar names, including PHH Corporation, PHH Mortgage Corporation, and PHH Home Loans, LLC) provides real estate mortgages nationwide.  Defendant Atrium Insurance Corporation is a wholly owned subsidiary of PHH.  Plaintiffs are individuals who obtained mortgages from PHH who provided down payments of less than 20% of the total purchase price of the homes.  Those who purchase a home with less than a 20% down payment must generally purchase private mortgage insurance

---

[1]The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

("PMI") to protect the lender against the risk of default.  Borrowers in this situation pay not only their monthly mortgage payment but a monthly PMI premium as well.  Plaintiffs allege PHH selected the specific PMI providers Plaintiffs used as part of the mortgage process.  These PMI providers pooled the PMI contracts and reinsured with Atrium to spread the risk of default, giving Atrium a portion of the monthly PMI premiums.  Plaintiffs allege that the reinsurance is a sham whereby Atrium took on little to no risk and functioned instead as a means of giving PHH a referral fee.

Plaintiffs filed suit in federal court on June 2, 2008.  Plaintiffs allege that Defendants' PHH's and Atriums's scheme violates Section 8 of the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601 et seq. ("RESPA").  This case is a proposed class action of all PHH customers who have been directed to obtain PMI from one of the providers who then reinsured with Atrium. Defendants filed an answer and the present motion for judgment on the pleadings.  Plaintiffs oppose the motion.  The matter was taken under submission without oral argument.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(c), "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion.  Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).  Judgment on the pleadings is appropriate when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law. Ventress v. Japan Airlines, 486 F.3d 1111, 1114 (9th Cir. 2007).  The allegations of the nonmoving party must be accepted as true, while any allegations made by the moving party that have been denied or contradicted are assumed to be false.  MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081 (9th Cir. 2006).  The facts are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in favor of that party.  Living Designs, Inc.

2

1   v. E.I. DuPont de Nemours & Co., 431 F.3d 353, 360 (9th Cir. 2005).

2        Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

3   plaintiff's "failure to state a claim upon which relief can be granted."  A dismissal under Rule

4   12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient

5   facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

6   2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

7   factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

8   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

9   of action will not do. Factual allegations must be enough to raise a right to relief above the

10   speculative level, on the assumption that all the allegations in the complaint are true (even if

11   doubtful in fact)....a well-pleaded complaint may proceed even if it strikes a savvy judge that

12   actual proof of those facts is improbable" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56

13   (2007), citations omitted.  "[O]nly a complaint that states a plausible claim for relief survives a

14   motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the

15   Court of Appeals observed, be a context-specific task that requires the reviewing court to draw

16   on its judicial experience and common sense. But where the well-pleaded facts do not permit the

17   court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it

18   has not shown that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950

19   (2009), citations omitted.  The court is not required "to accept as true allegations that are merely

20   conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden

21   State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  The court must also assume that "general

22   allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l

23   Wildlife Fed'n, 497 U.S. 871, 889 (1990), citing Conley v. Gibson, 355 U.S. 41, 47 (1957),

24   overruled on other grounds at 127 S. Ct. 1955, 1969.  Thus, the determinative question is

25   whether there is any set of "facts that could be proved consistent with the allegations of the

26   complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S.

27

28                     3

506, 514 (2002).  At the other bound, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated...laws in ways that have not been alleged." <u>Associated General Contractors of California, Inc. v. California State Council of Carpenters,</u> 459 U.S. 519, 526 (1983).

## III. Discussion

Defendants advance two arguments: PMI reinsurance is an activity not covered under RESPA and Plaintiffs suffered no injury as their monthly PMI premiums were based on rates filed and approved by the applicable state department of insurance.

**A. Settlement Service**

The parties dispute whether the reinsurance scheme constitutes a "settlement service" under RESPA.  In relevant part, RESPA states:

> (a) Business referrals. No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

> (b) Splitting charges. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. §2607.

> the term 'settlement services' includes any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing of settlement

12 U.S.C. §2602(3).  The Department of Housing and Urban Development ("HUD") administers

4

and enforces RESPA.[2]  Both parties cite to HUD regulations which provided the definition: "Settlement service means any service provided in connection with a prospective or actual settlement, including, but not limited to, any one or more of the following:....(10) Provision of services involving mortgage insurance." 24 C.F.R. 3500.2(b).  The regulation appears to clarify the statutory definition by listing more concrete examples of acts which qualify as settlement services.

Defendants treat the PMI reinsurance as the activity that must be evaluated: "because mortgage reinsurance is secured after the settlement of a loan, and paid for on an ongoing basis from borrowers' monthly insurance premiums, it does not constitute a 'settlement service' under RESPA." Doc. 31, Brief, at 5:17-19.  They have focused the analysis on the wrong step. Plaintiffs allege that PHH received a referral fee for directing PMI business to certain providers. The reinsurance is only the means by which the alleged fee is transferred; the PMI itself is the settlement service at issue.  Under the plain terms of the HUD regulation, providing PMI does constitute a settlement service covered by Section 2607 of RESPA.  Thus, any form of referral fee or split of PMI premiums that are not for services actually performed would constitute a violation.

Defendants cite to Bloom v. Martin, 77 F.3d 318, 321 (9th Cir. 1996) for the proposition that "RESPA applies only to services performed, and costs payable, at or before the closing of a real estate sale or loan." Doc. 31, Brief, at 5:9-10.  The Northern District has dealt with this exact issue (fee sharing for referrals of PMI business through the means of PMI reinsurance):

> Defendants point out that RESPA only applies to services performed, and costs payable, at or before the closing of the real estate sale or loan. See Bloom v. Martin, 77 F.3d 318, 321 (9th Cir. 1996). Defendants contend that because the risk insured by the private mortgage insurer only starts after the closing and borrowers often pay their premiums after closing, the transaction is not covered by RESPA. Defendants' argument is without merit. The service provided by the private mortgage insurer is clearly a 'service provided

---

[2]RESPA is a law which provides for regulation of certain aspects of the real estate settlement industry.  HUD is charged with public enforcement while persons also have a private right of action.

> in connection with a real estate settlement' (12 U.S.C. 2602(3)). Despite defendants' contention otherwise, it is of no matter when the risk insured actually arises or when the borrower actually pays the premium. The costs associated with the private mortgage insurance agreement became payable upon the closing of the transaction.

Kay v. Wells Fargo & Co., 247 F.R.D. 572, 576 (N.D. Cal. 2007).  The court agrees with Kay.  In Bloom, the Ninth Circuit found that "RESPA's non-exhaustive list of settlement services also suggests a limitation to costs payable at or before settlement. 12 U.S.C. §2602(3). All of the services, such as title searches and pest and fungus inspections, are necessary for the closing whereas demand and reconveyance fees are assessed after the closing, when the mortgage is paid off." Bloom v. Martin, 77 F.3d 318, 321 (9th Cir. Cal. 1996).  When a homebuyer only has a small down payment, lenders require PMI; without PMI, the transaction can not close.  Thus, it qualifies as a settlement service under RESPA.

**B. Filed Rate Doctrine**

Defendants assert that "because the mortgage insurance rates at issue were filed with and approved by the Pennsylvania and California Departments of Insurance, the filed rate doctrine bars plaintiffs from challenging the reasonableness of those rates in this court." Doc. 31, Brief, at 7:9-11.  The filed rate doctrine (or filed tariff doctrine) is a judicially created rule and must be examined specifically in the context of the laws and regulatory structures at issue.

> The filed rate doctrine originated in Keogh v. Chicago & Northwestern Railway, 260 U.S. 156, 67 L. Ed. 183, 43 S. Ct. 47 (1922), where the Court held that a private shipper could not recover treble damages against railway companies that had set uniform rates duly filed with, and approved by, the Interstate Commerce Commission. Two rationales were offered. First, the regulatory scheme allowed the recovery of damages for illegal rates in proceedings before the ICC; Congress presumably would not have intended a second remedy. Second, carrier rate regulation was primarily intended to prevent the charging of discriminatory rates, an objective which would be disserved by affording antitrust recovery to some shippers but not all. Although the doctrine has been questioned by many including the Supreme Court itself, it lives on to a limited extent. See Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 476 U.S. 409, 90 L. Ed. 2d 413, 106 S. Ct. 1922 (1986); MCI Telecommunications Corp. v. AT&T Co., 512 U.S. 218, 234, 129 L. Ed. 2d 182, 114 S. Ct. 2223 (1994)

Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979, 992 (9th Cir. 2000).

1    In the complaint, Plaintiffs do state that "Plaintiffs and the Class were overcharged for

2   mortgage insurance." Doc. 2, Complaint, at 18:4.  In opposition to this motion, Plaintiffs clarify

3   that "Plaintiffs do not dispute that filed rates are *per se* reasonable under the filed rate doctrine

4   and thus, no action may be brought directly challenging their fairness....the gravamen of

5   Plaintiff's claim is **not** a challenge to the fairness or reasonableness of the rate charged but rather,

6   a claim for the relief expressly provided to consumers by RESPA to remedy the use of prohibited

7   unfair business practices." Doc. 42, Opposition, at 9:24-25 and 11:1-3, emphasis in original. The

8   complaint does state, "*regardless* of whether Plaintiffs and the Class were overcharged for

9   private mortgage insurance, and *regardless* of the reasonableness or unreasonableness of the

10  rates Plaintiffs paid for private mortgage insurance, under RESPA, Plaintiffs and the Class were,

11  as a matter of law, entitled to purchase settlement services from providers that did not participate

12  in unlawful kickback and/or fee-splitting schemes." Doc. 2, Complaint, at 17:10-15, emphasis in

13  original.  Based on these representations, the court understands Plaintiffs' claim to be solely that

14  there were kickbacks or fee splitting in violation of RESPA and not that there was any

15  overcharging.

16    The Northern District, in <u>Kay</u>, addressed this exact issue, and found the filed rate doctrine

17  no bar to suit:

18    Although the Ninth Circuit has yet to rule on the applicability of the filed-rate doctrine to
      private mortgage insurance, other court decisions indicate an unwillingness to fully bar
19    plaintiffs' RESPA claims. See <u>Kahrer v. Ameriquest Mortg. Co.</u>, 418 F. Supp. 2d 748,
      756 (W.D. Pa. 2006); <u>Moore v. Radian Group, Inc.</u>, 233 F. Supp. 2d 819, 825 (E.D. Tex
20    2002). Statutes like RESPA are enacted to protect consumers from unfair business
      practices by giving consumers a private right of action against service providers.
21    Plaintiffs may not sue under the veil of RESPA if they simply think that the price they
      paid for their settlement services was unfair. Alternatively, plaintiffs bringing a suit under
22    RESPA may allege a violation of fair business practices through the use of illegal
      kickback payments. The filed-rate doctrine bars suit from the former class of plaintiffs
23    and not the latter. In the instant action, plaintiff is alleging that she paid an excess amount
      of money due to a violation of RESPA. As such, the filed-rate doctrine cannot bar her
24    claims from going forward.

25  <u>Kay v. Wells Fargo & Co.</u>, 247 F.R.D. 572, 576 (N.D. Cal. 2007).  The Ninth Circuit has not

26  issued any rulings discussing this issue in the intervening years.  More recently, the Eastern

27

28                                                    7

1    District of Pennsylvania has cited favorably to <u>Kay</u> in "conclud[ing] that the filed rate doctrine

2    does not bar the plaintiffs' claim that defendants violated RESPA through an alleged kickback or

3    fee-splitting scheme through their mortgage lender's captive reinsurance arrangement." <u>Reed v.</u>

4    <u>Wash. Mut., Inc.</u>, 2008 U.S. Dist. LEXIS 50523, *9 (E.D. Pa. June 30, 2008).

5          In an analogous case in the Western District of Washington, plaintiffs sued under Section

6    2607(a) over referral fees a title insurance company paid to various entities to direct business its

7    way; "Plaintiffs do not directly challenge the reasonableness of the rate, or the quality of the

8    service. Rather, Plaintiffs challenge the fact that Defendants paid illegal inducements to obtain

9    referrals from middlemen." <u>Blaylock v. First Am. Title Ins. Co.</u>, 504 F. Supp. 2d 1091, 1102

10   (W.D. Wash. 2007).   Though the title insurance premiums were regulated by the state insurance

11   commissioner, the court declined to apply the filed rate doctrine under Washington law.  Other

12   district courts have reached the opposite conclusion. See <u>Morales v. Attorneys' Title Ins. Fund,</u>

13   <u>Inc.</u>, 983 F. Supp. 1418, 1428 (S.D. Fla. 1997) ("their RESPA claims must fall in the face of the

14   filed rate doctrine").  In a non-RESPA case concerning title insurance fees, the Ninth Circuit

15   stated "[defendant] makes much of the fact that the filed rates are the only rates which it may

16   legally charge in Arizona and Wisconsin. However, if those rates were the product of unlawful

17   activity prior to their being filed and were not subjected to meaningful review by the state, then

18   the fact that they were filed does not render them immune from challenge." <u>Brown v. Ticor Title</u>

19   <u>Ins. Co.</u>, 982 F.2d 386, 392-394 (9th Cir. 1992).

20         Fundamentally, Plaintiffs are not challenging the PMI premium rates but an alleged unfair

21   business practice.  The filed rate doctrine is a complicated field of law.  The balance of case law

22   suggests that the doctrine does not bar a RESPA claim in this case.

23

24   **C. Standing**

25         Based on this clarified statement of Plaintiffs' claim, Defendants raise the concern that

26   Plaintiffs may lack standing if there is no allegation that PMI premiums would be lower absent

27

28                                                  8

1    the reinsurance scheme.  The statutory language reveals that Congress did not require

2    overcharging (or an otherwise lower fee) to be an element of a Section 2607 RESPA claim.  The

3    preamble of RESPA states:

> The Congress finds that significant reforms in the real estate settlement process are
> needed to insure that consumers throughout the Nation are provided with greater and
> more timely information on the nature and costs of the settlement process and are
> protected from unnecessarily high settlement charges caused by certain abusive practices
> that have developed in some areas of the country....
>
> It is the purpose of this Act to effect certain changes in the settlement process for
> residential real estate that will result (1) in more effective advance disclosure to home
> buyers and sellers of settlement costs; (2) in the elimination of kickbacks or referral fees
> that tend to increase unnecessarily the costs of certain settlement services; (3) in a
> reduction in the amounts home buyers are required to place in escrow accounts
> established to insure the payment of real estate taxes and insurance; and (4) in significant
> reform and modernization of local recordkeeping of land title information.

11   12 U.S.C. §2601.  At base, the concern is with overly high settlement charges.  As many courts

12   have noted, Congress could have chosen to directly control the amount companies could charge.

13   See Haug v. Bank of America, 317 F.3d 832, 837 (8th Cir. 2003) ("Congress considered and

14   rejected proposed legislation that would have set a system of price controls for settlement

15   services fees").  Instead, Congress decided to address the problem through attacking certain

16   practices whose cumulative effect is often to raise the overall level of fees charged in the market.

17   Congress determined that kickbacks and referral fees are problematic practices and sought to

18   eliminate them.  The couched language used to describe their evils, "tend to increase

19   unnecessarily the costs," is telling.  Congress does not appear to state that each and every

20   kickback or referral fee scheme unnecessarily raises costs, but rather that they tend to do so

21   collectively.  Section 2607 then contains a blanket prohibition on kickbacks and unearned fee-

22   splitting (without singling out only those acts which unnecessarily increase fees) and makes such

23   acts a crime punishable by a fine of $10,000 and one year in prison. 12 U.S.C. §2607(d)(1).  This

24   is a clear Congressional determination that ALL kickbacks, referral fees, and the like are

25   activities subject to Section 2607.  Individuals who have paid fees tainted by the prohibited

26   activities can recover "an amount equal to three times the amount of any charge paid for such

27

28                                              9

settlement service." 12 U.S.C. §2607(d)(2).  Again, there is mention or reference to the concept of overcharging in determining the recovery amount; instead of triple the amount of excess fees, recovery is set at triple the amount of total fees.  There is every indication that Congress did not intend to require demonstrable overcharging for standing to sue.  The violation allegedly suffered by Plaintiffs is not overcharging but subjection to an illegal business practice.

Several courts have stated that direct overcharging is not the core of a Section 2607 claim. See Kruse v. Wells Fargo Home Mortg., Inc., 383 F.3d 49, 56 (2nd Cir. 2004) (Section 2607 "clearly and unambiguously does not extend to overcharges"); Durr v. Intercounty Title Co., 14 F.3d 1183, 1186 (7th Cir. 1994) ("Harris based his entire RESPA class action on this lone overcharge. The district court determined that this single fact was not enough to state a claim under RESPA, and we agree"); Haug v. Bank of America, 317 F.3d 832, 836 (8th Cir. 2003).  Instead, the focus must, following the statutory language, be on kickbacks and fee splitting.  However, some courts have required some form of overcharge, finding "the purpose of RESPA is to protect individuals 'from unnecessarily high settlement charges.' Here, where Plaintiffs have not been overcharged because of any illegal kickback or fee splitting, the court does not construe RESPA's damages provision as authorizing Plaintiffs to sue for damages." Alston v. Countrywide Fin. Corp., 2008 U.S. Dist. LEXIS 76763, *18-19 (E.D. Pa. Sept. 29, 2008), citations omitted; see also Boulware v. Crossland Mortg. Corp., 291 F.3d 261, 265 (4th Cir. 2002) ("An overcharge or unearned fee must be present in order for §[2607](b) to apply because the charge must be one 'other than for services actually performed.' However, the presence of an overcharge alone, without any portion of the overcharge being kicked back to or split with a third party, is not sufficient to fall within the purview of §[2607](b)").

The Central District of California conducted an in depth analysis of this issue examining both legislative history and HUD regulations, firmly finding "[plaintiff] need not have suffered an overcharge to invoke the protection of RESPA. By its 1983 amendment, Congress created a right to be free from referral-tainted settlement services as demonstrated by both the statute's text

and legislative history." <u>Edwards v. First Am. Corp.</u>, 517 F. Supp. 2d 1199, 1204 (C.D. Cal. 2007). <u>Edwards</u> is a well reasoned, persuasive opinion.  In another case, the Central District contrasted RESPA with California state law: "Here, Plaintiff has made no allegation that he paid an 'excess amount of money' due to a violation of RESPA....Defendant notes, 'The standing requirement under §17204 is stringent and bears no resemblance to the injury standing required under RESPA or the other claims referenced in the Opposition.' The Court agrees....To show a distinct and palpable economic injury under the actual injury aspect of the injury in fact prong of §17204 standing, a plaintiff must plead that he paid more for the insurance due to the referral fee, could have bought the same insurance for a lower price directly from a title insurance company, or was dissatisfied with the insurance or uninformed of its price." <u>Mahoney v. Fid. Nat'l Title Co.</u>, 2008 U.S. Dist. LEXIS 107413, *7-8 (C.D. Cal., Sept. 15, 2008).  In that case, defendants did not challenge standing for RESPA and the court did not sua sponte address the issue.

Overall, the statutory language and weight of precedent lead to the conclusion that overcharging is not required for standing under Section 2607.

## IV. Order

Defendants' motion on the pleadings is DENIED.


IT IS SO ORDERED.

**Dated:     September 17, 2009**              /s/ Anthony W. Ishii
                                    CHIEF UNITED STATES DISTRICT JUDGE