# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFRAIN MUNOZ, et al., | ) 1:08cv0759 AWI DLB |
| | ) |
| Plaintiffs, | ) ORDER REGARDING DEFENDANTS' |
| | ) MOTION TO STAY CASE |
| v. | ) (Document 161) |
| | ) |
| PHH CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

Defendants PHH Corporation, PHH Mortgage Corporation, PHH Home Loans, LLC, and Atrium Insurance Corporation filed the instant motion for an order staying this case pending the United States Supreme Court's ruling in the matter of *First American Financial Corporation v. Denise P. Edwards,* No. 10-708 ("*Edwards*").  Plaintiffs Efrain Munoz, Leona Lovette, Stephanie Melani, Iris Grant, John Hoffman and Daniel Maga, II ("Plaintiffs"), individually and as proposed class representatives, filed an opposition, to which Defendants replied.  Finding the matter suitable for decision without oral argument pursuant to Local Rule 230(g), the Court vacated the hearing scheduled for August 26, 2011, and deemed the matter submitted.

## **BACKGROUND**

Plaintiffs initiated this action in June 2008.  The operative complaint asserts a single cause of action against Defendants for violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA").

According to the complaint, Plaintiffs in this case obtained mortgage loans. As none of them paid 20% down for their respective home purchases, they were required to purchase private mortgage insurance ("pmi") to protect the lender in the event of default. The pmi premium is paid by the borrower and is usually collected by the lender with the borrower's monthly payments.

Plaintiffs allege that PHH, the residential mortgage lender, referred them to one or more private mortgage insurers for the purchase of pmi and they had no opportunity to comparison shop. The private mortgage insurers referred by PHH had separate reinsurance agreements with Defendant Atrium, an affiliate of PHH Corporation. Plaintiffs characterize Defendant Atrium as a "captive" reinsurer because it is affiliated with the lender and it provides reinsurance primarily (or exclusively) for loans the lender originates that require pmi. In other words, Plaintiffs contend that PHH enters into "captive reinsurance arrangements," by which it refers its borrowers to private mortgage insurers who agree to reinsure with Atrium. Plaintiffs argue that this arrangement results in the payment to Atrium of kickbacks and unearned fees in violation of RESPA because Atrium assumes very little or no actual risk in exchange for a portion of Plaintiffs' monthly premiums. Plaintiffs conclude that Defendants' reinsurance contracts did not provide real or commensurately priced reinsurance in violation of Section 8(a) and (b) of RESPA.

Plaintiffs seek damages in an amount equal to three times the amounts they have paid or will have paid for private mortgage insurance as of the date of judgment.[1] First Amended Complaint ("FAC") ¶¶ 86-98.

## DISCUSSION

Defendants now seek a stay on the grounds that by granting *certiorari* in *Edwards*, the United States Supreme Court will rule on the same issue of constitutional standing that is presented in this case; that is, whether a plaintiff pursuing a claim under section 8 of RESPA,

---

[1] On February 11, 2011, Defendants filed a motion for summary judgment. On the same date, Plaintiffs filed a motion seeking certification of a single class of persons who obtained residential mortgages and were required to purchase certain private mortgage insurance. The District Judge vacated the hearing on Defendants' summary judgment motion pending a ruling on class certification.

1  who has not suffered any injury in fact, has standing under Article III, § 2 of the United States
2  Constitution.
3     Plaintiffs oppose the stay, contending that the Supreme Court's determination in *Edwards*
4  will not dispose of their claims as they have alleged an injury in fact.  Plaintiffs' contentions lack
5  merit.
6     As discussed more fully below, a stay of these proceedings is warranted.

**I.     Legal Standard**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When considering whether to grant or refuse a stay, the court weighs competing interests including: (1) the possible damage which may result from granting the stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating issues, proof, and questions of law which could be expected to result from a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

"A trial court may, with propriety, find it efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which may bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-864 (9th Cir. 1979). For a stay to be appropriate it is not required that the issues of such proceedings are necessarily controlling of the action before the court. *Id.*

The party moving for a stay bears the burden of establishing the need for a stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *see also Landis*, 299 U.S. at 256 ("the justice and wisdom" of a stay lays "heavily on the petitioners"). The party seeking the stay:

> must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis*, 299 U.S. at 255. These considerations are "counsels of moderation rather than limitations upon power." *Id.*

**II.     Analysis**

    A.     <u>Orderly Course of Justice</u>

The United States Supreme Court granted *certiorari* to decide the question of whether a private purchaser of real estate settlement services has standing to sue under Article III, § 2 of the United States Constitution in the absence of any injury in fact. *First American Financial Corp. v. Edwards*, 2011 WL 2437037 (2011).

In October 2008, Defendants raised the identical issue in this case, arguing that Plaintiffs had not suffered an injury in fact necessary to confer Article III standing. As part of their argument, Defendants noted that Plaintiffs could not claim an injury by alleging that they were overcharged for pmi because the rates charged by the private mortgage insurers are filed with, and approved by, state insurance regulators and are per se reasonable pursuant to the filed rate doctrine. Doc. 31, pp. 1-2, 7. The Court rejected Defendants' argument, relying, in part, on the "well reasoned, persuasive opinion" of the district court in *Edwards v. First Am. Corp.*, 517 F.Supp.2d 1199, 1204 (C.D. Cal. 2007). The Court concluded that "overcharging is not required for standing under [RESPA section 8]" and found Plaintiffs' claim "to be solely that there were kickbacks or fee splitting in violation of RESPA and not that there was any overcharging." Doc. 60, pp. 7, 11.

Defendants believe that the Supreme Court's determination in *Edwards* will provide binding authority in this case, which may affect this Court's earlier ruling on Plaintiffs' Article III standing.

Plaintiffs counter that a stay is unnecessary. They argue that alleged illicit kickbacks and/or unearned fee splits affected the price, quality, or other characteristics of Plaintiffs' settlement service sufficient to confer Article III standing and thus the Supreme Court's determination in *Edwards* will not dispose of their claims. Plaintiffs attempt to factually distinguish this case from *Edwards*, citing the following allegations in the operative complaint to support Article III standing:

      29. Borrowers typically have no opportunity to comparison-shop for private mortgage insurance. The private mortgage insurer is selected by the lender. The terms and conditions of the insurance policy, as well as the cost of the policy, is determined by the lender and the private mortgage insurer, rather than negotiated between the borrower and the private mortgage insurer.

. . .

      93. Plaintiffs and the Class were harmed by Defendants' unlawful kickback scheme.

      94. First, Plaintiffs and the Class were overcharged for mortgage insurance. Kickbacks and unearned fees unnecessarily and artificially inflate settlement service charges. Under PHH's scheme, the mortgage insurance premiums paid by Plaintiffs and the Class necessarily and wrongly included payments for both: (a) actual mortgage insurance services; and (b) payments unlawfully kicked back to PHH's captive reinsurer that far exceeded the value of any services performed and, were, in fact, illegal referral fees.

      95. Second, regardless of whether Plaintiffs and the Class were overcharged for private mortgage insurance, and regardless of the reasonableness or unreasonableness of the rates Plaintiffs paid for private mortgage insurance, under RESPA, Plaintiffs and the Class were, as a matter of law, entitled to purchase settlement services from providers that did not participate in unlawful kickback and/or fee splitting schemes.

. . .

      99. Defendants knowingly and actively concealed the basis for Plaintiffs' claims by engaging in a scheme that was, by its very nature and purposeful design, self-concealing.

Opposition, pp. 5-6 (FAC, ¶¶ 29, 93-95, 99).  Critically, what Plaintiffs omit in their opposition is that they expressly cited the district court's decision in *Edwards* in their complaint to support the proposition that they can recover statutory damages regardless of whether they were overcharged for private mortgage insurance because, under RESPA, they are entitled to purchase settlement services from providers that do not participate in unlawful kickback and/or fee-splitting schemes.  FAC, § 95.  Plaintiffs current effort to distinguish, or otherwise distance, this case from *Edwards* is, at best, disingenuous.

      Plaintiffs also contend that the Third Circuit in *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 755 (3d Cir. 2009), has already determined, in a directly analogous action, that the language of RESPA indicates that Congress created a private right of action without requiring an overcharge allegation.  However, *Alston* is one of the cases cited in the Petition for Writ of Certiorari to the Supreme Court to demonstrate that courts of appeals are divided on the question

of whether a statutory violation, in the absence of any actual injury, creates standing under Article III.[2]  *See* Exhibit 1 to Motion to Stay, *Edwards* Petition for Writ of Certiorari, p. 17, 20. In other words, the Supreme Court's ruling also will affect *Alston*.  *See* Exhibit A to Defendants' Reply, *Moore v. GMAC Mortgage, LLC,* No. 2:07-cv-024296, Order dated August 17, 2011 ("Contrary to Plaintiffs' mischaracterization, the question before the Supreme Court in Edwards is - as the Edwards Petition for Writ of Certiorari makes clear – precisely the same question that the Third Circuit decided in Alston.  The Supreme Court's ruling will affect . . . Alston.").  Thus, Plaintiffs' reliance on *Alston* to suggest that the instant case will proceed regardless of the Supreme Court's decision in *Edwards* is unpersuasive.

Although Plaintiffs disagree, the Supreme Court's resolution of *Edwards* will provide direct authority on the standing issue; that is, whether allegations of unlawful kickbacks/fee splitting under RESPA, in the absence of an actual, distinct injury, are sufficient to confer Article III standing.  *See* Exhibit 1 to Motion for Stay.  There is no rational reason to proceed further in this case until the standing issue has been clarified by the Supreme Court.

B.   Possible Damage to Plaintiffs Resulting from Stay

Plaintiffs argue that delaying this case does not serve the interest of the parties, will cause undue delay after several years of discovery and after conclusion of briefing on the motion for class certification.  However, this is not damage resulting from a stay.  Rather, a stay will reduce the additional expenditure of the parties' time and resources, which is of particular importance if the Supreme Court's decision ultimately disposes of this action.

C.   Possible Hardship to Defendant Going Forward

As is clear, the parties may suffer damage by conducting what could be pointless discovery and motion practice.

Weighing the competing interests, the Court concludes that staying Plaintiffs' RESPA claim until the Supreme Court decides *Edwards* will further the orderly course of justice, promote judicial economy and avoid the waste of judicial and party resources.

---

[2]Plaintiffs fail to mention this fact in their efforts to distinguish this case from *Edwards*.

CONCLUSION

Based on the above:

1. Defendants' motion to stay is GRANTED.

2. The parties shall notify the Court immediately when *Edwards* is decided.

3. A status conference is scheduled for one (1) year from the imposition of the stay.

IT IS SO ORDERED.

Dated:   **September 8, 2011**              /s/ **Dennis L. Beck**
                                       UNITED STATES MAGISTRATE JUDGE