UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFRAIN MUNOZ, *et. al*, | CASE NO. 1:08-cv-0759-AWI-BAM |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL** |
| v. | |
| PHH CORP. *et. al*, | |
| Defendants. | |

**INTRODUCTION**

Currently before the Court is Plaintiff Efrain Munoz's, *et. al*[1], Motion to Compel documents responsive to Plaintiffs' Requests for Production. Plaintiffs are seeking the production of all documents that Defendants have produced to the Consumer Financial Protection Bureau ("CFPB") in connection with its investigation of Defendants PHH Corporation ("PHH") and Atrium Reinsurance Company ("Atrium").[2] The Court deemed the matter suitable for decision without oral

---

[1] Plaintiffs include Efrain Munoz, individually and on behalf of others similarly situated.

[2] PHH Corporation is one of the leading non-depository mortgage companies with approximately $9.4 billion in assets. PHH also operates Atrium Reinsurance Company, a wholly-owned captive reinsurance subsidiary. Doc. 200, Ex. G at 1.

argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for February 22, 2013. Having considered the joint statements of the parties, as well as the Court's file, Plaintiffs' Motion to Compel is **GRANTED**.

## BACKGROUND

### A.  Factual Background

Plaintiffs' filed a complaint in the underlying action on June 2, 2008, alleging that Defendants had acted together to violate the Real Estate Settlement Procedures Act ("RESPA") Sections 8(a) and (b) by entering into captive reinsurance arrangements for the purpose of receiving kickbacks, referral payments and unearned fee splits (disguised as ceded reinsurance premiums) from private mortgage insurers to whom PHH referred business. (FAC ¶¶ 1-2, 61-63, 69-709; Doc. 2). Pursuant to this arrangement, PHH required borrowers making a down payment of less than 20% of the purchase price of their residences to purchase, either directly or indirectly, private mortgage insurance for their respective mortgage loans. FAC ¶¶ 3, 11. Plaintiffs allege that PHH then allocated its referral of borrowers to the mortgage insurance providers participating in the arrangement. FAC ¶¶ 4, 29. In exchange for this referral of business, mortgage insurance providers agreed to kick back (or "cede") a portion of PHH borrowers' mortgage insurance premiums to Defendant Atrium for reinsurance coverage, which was placed in "reinsurance trusts." ¶¶ 5-6, 60-65.

Plaintiffs allege that, by design of the arrangement between Defendants, Atrium assumed no real or commensurate risk—because the reinsurance trusts were funded almost exclusively by ceded premiums, not Atrium's own capital. Absent the requisite transfer of risk, the reinsurance arrangements were illusory and Defendants' agreement or understanding to provide and accept referral fees and kickbacks in connection with Plaintiffs' and potential class members' settlement services violated RESPA. Accordingly, Plaintiffs seek recovery for all borrowers who were subjected to Defendants' settlement services.

### B.  Background of Parties' Discovery Dispute

In early 2009, Plaintiffs served Defendants with its first set of Requests for Production. Doc.

200, Ex. A. Plaintiffs' Request Nos. 10[3] and 11[4] of the First RFP, request any documents that Defendants produced to any governmental agency or committee in connection with any investigation into PHH concerning allegations that PHH violated RESPA, as well as any documents concerning any such investigation. On March 4, 2009, Defendants objected to Request Nos. 10 and 11, on the grounds that the requests were "overly broad, unduly burdensome, and oppressive," among other objections. Doc. 200, Ex. B.

In May 2012, the CFPB, a federal regulatory entity authorized to enforce RESPA, launched an investigation into the conduct of mortgage lenders and private mortgage insurance providers in connection with their reinsurance arrangements. Pursuant to its investigation, the CFPB issued a May 22, 2012 Civil Investigatory Demand ("CID") to PHH, which included twenty-one (21) interrogatories and thirty-three (33) requests for production of documents for investigation into PHH's captive reinsurance arrangements with private mortgage insurers. More specifically, the CFPB's document requests seek information relating to, among other things: (1) corporate information and organization charts showing the PHH entities involved with PHH's captive reinsurance arrangements' position the PHH corporate hierarchy; (2) documents relating to the genesis of PHH's captive reinsurance arrangements; (3) documents describing or relating to PHH's captive reinsurance arrangements and how they operated; (4) financial statements; (5) contracts and agreements with private mortgage insurers; (6) actuarial, accounting reports, summaries, audits and statements; (7) invoices, bills, receipts, dividends and records of payments from the captive reinsurance trusts or in any way related to PHH's captive reinsurance arrangements; and (8) disclosures, communications to borrowers regarding mortgage insurance and captive reinsurance and

---

[3] **REQUEST NO. 10**: All documents concerning any investigation of you, any of the Defendants, Private Mortgage Insurance Companies and/or captive reinsurers by any person, agency, governmental agency or committee, including, but not limited to, the DOJ, HUD and State Attorneys General, concerning allegations that you or any Defendant violated or may have violated RESPA including but not limited to RESPA's anti-kickback violation provisions.

[4] **REQUEST NO. 11**: All documents that you provided to any governmental agency or committee that has investigated or is currently investigating you concerning allegations that you or any Defendant violated or may have violated RESPA, including, but not limited to, documents provided to the DOJ, HUD and State Attorneys General.

3

any scripts or templates for any such communications or disclosures. *See* Doc. 200, Ex. H at 10-20.

PHH objected to the CFPB's document requests on June 12, 2012, stating that the requests were overbroad, imposed an undue burden and were tantamount to "fishing expedition into PHH's business." Doc. 200, Ex I. The CFPB rejected PHH's arguments, and, on September 20, 2012, issued a "Decision and Order" denying PHH's objections and ordering PHH to produce all responsive documents to the CFPB within twenty-one (21) days of the Order. *Id.* at 9. Defendants do not dispute that documents have subsequently been produced in compliance with the CFPB's investigation.

Upon learning of the CFPB's investigation, Plaintiffs requested that Defendants comply with their ongoing duty to produce documents responsive to Plaintiffs' First RFP. Plaintiffs requested production of the CFPB Documents, which Plaintiffs identified as responsive to Request Nos. 10 and 11 of the First RFP and relevant to the issues in this litigation. *See* Doc. 200, Ex. J at 2-3. In their December 13, 2012 letter responding to Plaintiffs' request for the CFPB Documents, Defendants refused immediate production, but stated that "now that the CFPB's investigation is proceeding forward, PHH will reevaluate its position with respect to its original discovery responses and supplement its production where necessary." *See* Doc. 200, Ex. C.

On January 9, 2013, Defendants produced an additional 8,851 pages of documents. *See* Doc. 200, Ex. D. However, Defendants reiterated their refusal to produce the CFPB documents on relevance grounds. In a final attempt at resolving the parties' differences concerning the CFPB documents, Plaintiffs narrowed their document requests, while reserving all rights to seek a complete production of CFPB Documents at a later stage of the proceedings. Specifically, Plaintiffs requested production of only those documents that Defendants produced in response to thirteen (13) of the CFPB's thirty-three (33) Document Requests; namely CFPB Document Request Nos. 5-7, 9-10, 12, 15, 17- 20, 26, and 30.

Defendants objected to this narrowed request for CFPB documents on relevance and burden/feasibility grounds. *See* Doc. 200, Ex. E. In this regard, Defendants renewed their relevance objection and further stated, "even setting aside our objections, there is no practical way to fulfill your request . . . suffice it to say that our production efforts do not track the document requests in

the CID." *Id.* Plaintiffs replied by letter dated January 18, 2013 reiterating their request for production of the CFPB documents and the bases therefor. *See* Doc. 200, Ex. L.

As the parties were unable to resolve their dispute, Plaintiffs contacted the Court to request an informal discovery telephonic conference. That telephonic conference took place on January 31, 2013. (Doc. 198). The Court was unable to resolve the discovery dispute during the telephonic conference because Defendants refused to stipulate to an informal ruling outside the formal Local Rule 251 procedures. Doc. 200, Ex. F. Plaintiffs initiated a final telephonic meet and confer with Defendants in an effort to resolve this dispute, which occurred on February 7, 2013. Defendants persist in refusing to produce the CFPB Documents ultimately leading to this motion to compel.

## DISCUSSION

**A.  Legal Standard For A Motion to Compel Discovery**

Rule 26(b) of the Federal Rules of Civil Procedure provides that any non-privileged material "that is relevant to any party's claim or defense" is within the scope of discovery. The court may allow discovery of any material "relevant to the subject matter involved in the action," not just the claims or defenses of each party, if there is good cause to do so. FED. R. EVID. 401 defines "relevant evidence" as "evidence having any tendency to make existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 402 provides that all relevant evidence is admissible except as otherwise provided by the U.S. Constitution, Act of Congress, or applicable rule of Federal Rules of Evidence.

Relevance requires only that the evidence have "any" tendency to prove or disprove "any" consequential fact. This test incorporates two separate components: (1) Logical relevance, meaning the evidence must have some tendency, however slight, to make any fact more or less probable; and (2) Legal Relevance, meaning the evidence must relate to a fact "of consequence" to the case, *i.e.*, will the "fact" that the evidence is offered to establish help in determining some issue in the case? *See,* Jones & Rosen, Federal Civil Trials and Evidence (2011) Evidence, para. 8:111, p. 8B-2. If the inference to be drawn from the evidence is the result of speculation or conjecture, the underlying evidence is not relevant. *See Engstrand v. Pioneer Hi-Bred Int'l*, 946 F.Supp. 1390, 1396 (S.D. Iowa 1996), *aff'd* 112 F.3d 513 (8th Cir. 1997). "[T]he standard of relevancy is not so liberal as to

5

allow a party to . . . explore matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion v. United Food & Comm'l Workers Union,* 103 F.3d 1007*,* 1012-1013 (D.C. Cir. 1997)(internal quotes omitted).

A responding party that objects to requests for production of documents is required to state objections with specificity. FED. R. CIV. P. 33(b)(4), 34(b)(2)(B). If the party requesting discovery is dissatisfied with any of the responses, the party may move to compel further responses by informing the court "which discovery requests are the subject of [the] motion to compel, and, for each disputed response, inform the [c]ourt why the information sought is relevant and why [the opposing party's] objections are not justified." *Ellis v. Cambra*, No. 02-cv-5646 AWI (SMS), 2008 WL 860523, at *4 (E.D. Cal. Mar. 27, 2008); *Brooks v. Alameida*, No. 03-cv-2343 JAM (EFB), 2009 WL 331358 (E.D. Cal. Feb. 10, 2009).

The court must limit discovery if the burden of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26(b)(2)(C)(iii). "In each instance [of discovery], the determination whether ... information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action." FED. R. CIV. P. 26 Advisory Committee's note (2000 Amendment) (Gap Report)(Subdivision (b)(1)).

**B.     The CFPB Documents are Relevant**

Plaintiffs contend that the documents produced to the CFPB are clearly relevant because the CFPB investigation is targeting the very same practices that Plaintiffs allege violated Section 8 of RESPA. (Doc. 200 at 12). In response, Defendants contend that the fact that documents are being produced to the CFPB pursuant to a government investigation does not automatically make them relevant to Plaintiffs' claim in the instant litigation. According to Defendants, such "cloned" discovery requests seeking all documents produced in another matter are highly disfavored because they do not allow a court to evaluate the relevance of the information sought.

Relevant information is ultimately defined by a Plaintiff's claims. Plaintiffs' case here is predicated on theories of kickbacks and unearned fee splits in violation of RESPA. This Court has previously emphasized that"the alleged wrongful conduct at issue in [an underlying suit], of course, is critical to determining the scope of permissible discovery." *Stanislaus Food Prods. Co. v.*

6

*USS-POSCO Indus.*, No. 09-CV-0560, 2012 WL 1940662, at *2 (E.D. Cal. May 29, 2012) (McAuliffe, J.). Each party generally has the right to discover "any nonprivileged matter that is relevant to any party's claim or defense." FED.R.CIV.P 26(b)(1). The Court need not make an illogical leap to conclude that the documents that PHH has produced to the CFPB are relevant to subject matter in this case. The CFPB is investigating the same alleged wrongful conduct as is alleged by Plaintiffs. There can be no serious dispute that documents related to the CFPB's investigation of Defendants reinsurance arrangements are relevant to Plaintiffs suit based on identical allegations. While Defendants argue that the CFPB has broad subpoena powers that extend beyond the scope of the federal rules, this argument does not negate the plain relevance of the documents Plaintiffs' request, nor does this argument shield the documents from discovery. The Court concludes that Defendants have not met their burden of showing that the documents that Plaintiffs seek are irrelevant to Plaintiffs' suit.

**B.     Plaintiffs Request are Not Overbroad and Unduly Burdensome**

Defendants also resist Plaintiffs' request for all documents produced to the CFPB as overly broad and unduly burdensome. According to Defendants, many of the documents produced to the CFPB are not related to the subject matter of its investigation and exceed the scope of time relevant to Plaintiffs' suit, therefore, enabling Plaintiffs to go on a "fishing expedition" with respect to other aspects of PHH's business.

In response and in an effort to narrow their discovery requests, Plaintiffs offered to limit their requested production to reduce the amount of documentation needed to satisfy its discovery request. Plaintiffs' limited their request to only those documents that Defendants produced in response to thirteen (13) of the CFPB's thirty-three (33) Document Requests. Defendants however refused Plaintiffs' offer to accept production of a reduced number of requests stating that their "production efforts do not track the document requests in the CID." Defendants argue that production of Plaintiffs' narrowed discovery requests would be unduly burdensome because the CFPB allowed PHH to forego a "responsiveness" review and produce materials without identifying the specific document request(s) to which they are potentially responsive.

Defendants overly broad and burdensome arguments are not persuasive. On one hand,

Defendants refuse production because Plaintiffs' original request is overly broad. On the other hand, Defendants reject Plaintiffs' narrowed document requests on the grounds that it would be more difficult to cull the CFPB production than it would be to reproduce the documents already produced to the CFPB. Defendants cannot have it both ways.  They cannot on one hand resist Plaintiffs discovery as over broad, but simultaneously resist Plaintiffs' efforts to limit the scope of their request as unduly burdensome.

Moreover, although Defendants repeatedly assert that Plaintiffs' discovery requests are overbroad or unduly burdensome, they have offered little or no detail to make the kind of showing required to substantiate these claims.  To meet their burden, Defendants must undertake a good faith effort to show the nature and extent of the hardship imposed and state specifically how compliance will be harmful or costly. *Global Ampersand, LLC v. Crown Eng'g & Constr., Inc.,* 261 F.R.D. 495, 499 (E.D. Cal. 2009) ("The party who resists discovery "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."). Viewed in this light, Defendants have not met their burden here to justify denying discovery since its objections contain only generalized assertions and suggestions devoid of any tangible detail. Further, Defendants have not met their burden of showing that producing documents that have already been produced to a third party is unduly burdensome.  Defendants have the duty to identify the specific burden that production will impose, and no burden has been substantiated.  Further, to the extent that Defendants fear that production will produce confidential information, there is a stipulated protective order in place which the court finds sufficient to address concerns as to the disclosure and use of any confidential information.  *See* Docs. 49, 89.

Finally, addressing Defendants' excessiveness concerns; Defendants contend that Plaintiffs' discovery requests are excessive because they are not limited in time.  According to Defendants, Plaintiffs' seek documents outside of the time period relevant to Plaintiffs' suit.  For example, Defendants claim that while the relevant time period for the CFPB's CID is from January 1, 2001, forward,  many of the documents responsive to the CFPB's request date back to January 1, 1995. Defendants argue that this time period far exceeds the one-year statute of limitations period relevant to Plaintiffs' RESPA claims.

The Court is well aware that the allegations underlying Plaintiffs' suit stem from loan transactions that originated in June 2007. FAC ¶¶ 10-12. However, while facially, documents dating back to 1995 exceed the scope of Plaintiffs' claims, Plaintiffs are entitled to "information concerning events that substantially precede...the incident that is the basis of the suit [as it] may shed important light on the facts directly relevant to a claim or defense, and thus may be relevant for discovery purposes." 6 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE 26.41 [12] (3d ed.). Though the Court acknowledges that Plaintiffs' discovery should not be limitless, Defendants did not designate a reasonable time period that the Court can use to adjust the scope of Plaintiffs' request.

In sum, the Court finds that the CFPB documents are relevant to Plaintiffs' claims and have already been produced as discovery in the CFPB investigation into Defendants' potential RESPA violations. Defendants will suffer little if any burden by producing the documents as they are kept in their normal course of business because these documents have already been produced. Defendants also have the option to limit their burden by producing the smaller subset of documents requested by Plaintiffs. *See, e.g.*, *Rosales v. El Rancho Farms*, 2011 WL 2433352, at *2 (E.D. Cal. 2011) (unpublished) ("The documents have been gathered, and are ready for production, which undermines the assertion that the request was overly burdensome."). Accordingly, the Court finds that the relevancy of Plaintiffs' request far outweigh the minimal burden to Defendants and as a result Plaintiffs' are entitled to compel production of Defendants CFPB documents.

## CONCLUSION

Based on the foregoing, the Court GRANTS, Plaintiffs' Motion to Compel. It is HEREBY ORDERED that:

1. Plaintiffs' Motion to Compel Defendants to Produce Documents Responsive to Request Nos. 10 and 11 of Plaintiffs' First Set of Requests for Production is **GRANTED**.

2. Within fourteen (14) calendar days of the date of service of this Order, Defendants must produce to Plaintiffs all documents responsive to Request Nos. 10 and 11 of Plaintiffs' First Set of Requests for Production, including, but not limited to, the documents that Defendants have produced to the Consumer Financial Protection

9

Bureau ("CFPB") pursuant to its ongoing investigation of PHH Corp.

3. Defendants shall also promptly produce to Plaintiffs any further documents that it provides to the CFPB in connection with the CFPB's investigation.

**IT IS SO ORDERED.**

Dated:   **February 22, 2013**                            **/s/ Barbara A. McAuliffe**
                                                                      **UNITED STATES MAGISTRATE JUDGE**