UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFRAIN MUNOZ, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHH CORPORATION, et al.,<br><br>Defendants. | CASE NO. 1:08-cv-00759-AWI-BAM<br><br>ORDER RE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO STRIKE CERTAIN ALLEGATIONS<br><br><br>(Docs 276) |

Defendants PHH Corporation ("PHH"), PHH Mortgage Corporation, PHH Home Loans, LLC, and Atrium Insurance Corporation ("Atrium") seek to dismiss Plaintiffs' putative tolling subclass and its representative Marcella Villalon from the present action with prejudice for failure to state a claim upon which relief can be granted. Additionally, PHH moves to strike certain allegations from Plaintiffs' Second Amended Complaint as contrary to this court's prior directive that leave to amend be granted solely to the equitable tolling and equitable estoppel allegations. For the reasons that follow, PHH's motion to dismiss is granted and the court strikes all pleadings amended after its August 11, 2014 order.

## I. FACTUAL AND LEGAL BACKGROUND

*RESPA Claim*

PHH provides real estate mortgages nationwide. PHH wholly-owns Atrium. Atrium provides reinsurance services to private mortgage insurance ("PMI") providers. Typically, PMI providers

are unaffiliated with the mortgage provider. In turn, PMI providers decrease their risk by acquiring reinsurance, though companies such as Atrium, in exchange for a percentage of the PMI provider's premiums. Captive reinsurance occurs when the mortgage provider also provides the reinsurance.

Congress enacted the Real Estate Settlement Procedures Act ("RESPA") to increase real estate settlement process transparency and protect consumers from abusive business practices. See 12 U.S.C. § 2601. In relevant part, section 8(a) provides:

> "No person shall give and no person shall accept any portion, split, or percentage, of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

12 U.S.C. § 2607(a). Contrarily, section 8(b) provides:

> "No person shall give and no person shall accept any portion, split, or percentage, of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

12 U.S.C. § 2607(b).

Plaintiffs acquired mortgages from PHH and provided down payments of less than 20% of the home purchase prices. PHH required Plaintiffs, due to their less-than-20% down payments, to purchase PMI in order to protect PHH against the risk of default. Plaintiffs allege that PHH organized a scheme whereby PHH selected the specific PMI provider. In turn, PHH required selected PMI providers to acquire reinsurance through Atrium. Plaintiffs allege that reinsurance through Atrium was illusory, no actual transfer of risk occurred. Specifically, Plaintiffs allege: "[t]he millions of dollars to premiums accepted from [mortgage insurers]: (a) were not for services actually furnished or performed; and/or (b) exceeded the value of such services." Doc. 273, 34:21-23. Thus, Atrium's share of PMI premiums constituted kickbacks and fee-splits in violation of RESPA section 8.

*First Amended Complaint*

On June 2, 2008, Plaintiffs Efrain Munoz, Leona Lovette, and Stephanie Melanie filed a class action complaint against Defendants for alleged violations of RESPA section 8. See Doc. 1-2. On December 10, 2010, Plaintiffs filed their First Amended Complaint ("FAC"). See Doc. 96. The

FAC included arguments for a subclass of plaintiffs, for whom the complaint was not timely filed within one year of obtaining their home loan, for the application of equitable tolling and equitable estoppel to RESPA's statute of limitations for section 8 claims. See id.

The FAC lacked a named plaintiff for the putative tolled class of plaintiffs. On May 30, 2013, Plaintiff-intervenor Marcella Villalon filed a motion to intervene on behalf of the tolling class of individuals who obtained mortgage loans and private mortgage insurance through PHH's alleged captive mortgage reinsurance arrangements between January 1, 2004 and June 1, 2007. See Doc. 231. Her loan transaction had taken place on March 1, 2007. Id. At her closing she had received a uniform "Mortgage Insurance" disclosure (the "Disclosure") set forth within her mortgage "Deed of Trust." See Doc. 273, Exh. C. In lieu of filing a pleading in the present matter, Plaintiff-intervenor filed a declaration and adopted the FAC allegations, including the equitable tolling and equitable estoppel allegations as set forth in FAC at ¶¶ 99-111. See Doc. 231-4, Exh. B at ¶ 9.

On November 27, 2013, Defendants filed a motion for a Rule 12(c) partial judgment on the pleadings. As for equitable tolling, Plaintiff-intervenor alleged that "borrowers were not put on notice of their claims and, despite exercising reasonable due diligence, reviewing their loan documents, reasonably could not have discovered their claims within the applicable statute of limitations" and that she was "able to discover the underlying basis for the claims alleged herein only with the assistance and investigation of counsel." Doc. 96, at ¶¶ 102, 105.

The court, however, found "that PHH's loan document disclosure adequately placed Plaintiff-intervenor on notice of her claim and that she fails to allege extraordinary circumstances that prevented her from timely filing." Doc. 266, 8:26-28. The court reasoned that "[t]he loan documents PHH provided to the time-barred plaintiffs are substantively similar to those discussed in other cases." Id. at 9:1-2. "Both the Samp loan disclosure and the PHH loan document disclosure explain the requirement of mortgage insurance, the purpose of mortgage insurance, the borrower's rights and responsibilities under mortgage insurance, and the potential occurrence of captive reinsurance." Id. at 9:25-28.

"Here, there is no excusable ignorance of the captive reinsurance scheme. As in Kay, Orange,

and Samp, the loan disclosure document put Plaintiff-intervenor on notice of the possible existence of a claim by informing her of the very nature and use of the captive reinsurance arrangement.  Despite being on notice, Plaintiff-intervenor does not allege any diligence beyond reviewing loan documents. . . . Thus, Plaintiff-Intervenor inadequately pleads diligence in pursuing her rights despite being on notice of the possible existence of her claim." Id. at 10:15-25.

The court then found that there were no extraordinary circumstances that stood in the Plaintiff-intervenor's way in pursuing her rights.  Plaintiff-intervenor alleged that the time-barred class did not possess the information or skills necessary to discover the RESPA violation "due to the complex, undisclosed and self-concealing nature of PHH's scheme."  Doc. 96, at ¶ 105. Plaintiff-intervenor next alleged that time-barred plaintiffs reasonably could not have discovered "Defendants' conduct as alleged herein absent specialized knowledge and/or assistance of counsel." Id. at ¶ 105.  Nevertheless, the court found "that an alleged complex and self-concealing nature of a reinsurance scheme and the failure to timely obtain counsel do not constitute extraordinary circumstances." Doc. 266, 11:18-20.

As for equitable estoppel/fraudulent concealment, the court held that plaintiff-intervenor failed to sufficiently plea fraudulent concealment apart from an underlying RESPA claim.  See Doc. 266. Plaintiff-intervenor alleged fraudulent concealment for both section 8(a) and (b) violations on Defendants' intentional misrepresentation that Atrium accepted fees without legitimately assuming risk.  Specifically, Plaintiff-intervenor alleged that, "PHH made affirmative, intentional misrepresentations concerning its captive reinsurance program.  PHH affirmatively represented to Plaintiffs and the Class that any amounts it received from its captive reinsurance arrangements were for services actually performed." Doc. 96, at ¶ 106.  However, the court found "that Defendants did not hide PHH's relationship with Atrium.  PHH's form loan document explicitly spells out the reinsurance scheme." Doc. 266, 14:9-10.  "[A] plain reading of PHH's disclosure clearly and unequivocally indicates that the Lender (PHH) or any of its affiliates (Atrium) may receive a portion, of the mortgage insurance premiums in exchange for reinsurance, 'an arrangement that is often termed "captive reinsurance."'" Id. at 14:22-25, quoting the Disclosure. "Contrary to Plaintiff-intervenor's assertion that Defendants held the reinsurance scheme out to be

4

1  legitimate in the loan disclosure, . . . the PHH disclosure does not contain such an assurance." Id.
2  at 15:1-6.

3      Plaintiff-intervenor also alleged that through a 2007 SEC filing "PHH represented that its
4  captive reinsurance services in return for the premiums that it received from its borrowers [sic]
5  private mortgage insurance providers." Doc. 96, at ¶ 106. Plaintiff-intervenor alleged that PHH's
6  representation of Atrium's level of risk assumption constituted an act of concealment wholly apart
7  from the underlying RESPA claims. See id. at ¶ 107. Plaintiff-intervenor further alleged that
8  Defendants failed to adequately describe the relationship between settlement service providers
9  pursuant to RESPA section 8(c) and 24 C.F.R. 3500.7. See id. at ¶ 108. The court, though, held
10 that these allegations were not sufficiently apart from the underlying RESPA claim to constitute
11 equitable estoppel/fraudulent concealment. See Doc. 266, 16:19-22, 15:11-16, 15:21-16:2.

12     Accordingly, in an August 11, 2014 order, the court granted Defendants' motion for partial
13 judgment on the pleadings for both the equitable tolling and equitable estoppel/fraudulent
14 concealment pleadings. However, the court provided that "Plaintiff-intervenor shall have one
15 opportunity to file and serve a further amended complaint to cure deficiencies. . . . Plaintiff-
16 intervenor may not amend any section of the complaint outside the scope of equitable tolling and
17 equitable estoppel pleadings." Id. at 17:4-8.

18 *Second Amended Complaint*

19     Pursuant to this order, Plaintiff-intervenor filed a Second Amended Complaint ("SAC") on
20 October 7, 2014. See Doc. 274. She alleged that use of misleading mortgage documents
21 constituted an affirmative act of concealment that was separate and distinct from the RESPA
22 claim. See id. at 23:1-2. She stated that the Disclosure "affirmatively misrepresented to
23 reasonable borrowers that the [captive reinsurance arrangements] would 'not affect the amounts
24 [borrower] ha[d] agreed to pay for [PMI]' or 'the rights [borrower] ha[d].'" Id. at 22:1-3. The
25 relevant portion of the Disclosure provides:

26     "(a) Any such agreement will not affect the amounts that Borrower has agreed to
    pay for [PMI], or any other terms of the Loan. Such agreements will not increase
27     the amount Borrower will owe for [PMI], and they will not entitle Borrower to any
    refund.
28     (b) Any such agreements will not affect the rights borrower has – if any – with

respect to the [PMI] under Homeowners Protection Act of 1988 or any other law…"

Doc. 274-3, Exh. C at ¶ 10.

Plaintiff-intervenor further alleged that the Disclosure affirmatively misrepresented to borrowers that any payments made or ceded to PHH of portions of its borrowers' premiums would be in exchange for actual reinsurance. See Doc. 274, 22:15-19. Specifically, "Defendants misrepresented to Ms. Villalon and every other [tolling subclass member] that the purpose of the [captive reinsurance arrangements] were to 'shar[e] or modif[y] the [mortgage insurer's] risk' and/or 'reduc[e] losses' associated with each [tolling subclass member's] mortgage." Id. at 22:20-22.  "In reality, however, the [mortgage insurer's] purported 'reinsurance' payments to Atrium were prohibited kickbacks." Id. at 22:23-24.  According to Plaintiff-intervenor, this concealment was separate and distinct from the RESPA claim as disclosure or nondisclosure of alleged unlawful conduct is not an element of the RESPA claims. Id. at 23:1-6.

Plaintiff-intervenor also alleged that the term "captive reinsurance" in the Disclosure did not provide notice as the term refers to an industry standard. See id. at 26:10-15.  She cited statistics, including that only one borrower out of approximately 24,200 PMI policies elected to opt out of the captive reinsurance arrangements, allegedly confirming that Defendants' representations in the Disclosures did not raise concern for an objectively reasonable borrower. See id. at 27:12-19.

Plaintiff-intervenor alleged that "as a direct result of . . . assurances, it was irrelevant to Ms. Villalon and other [tolling subclass members] that the Disclosure (or any other document): (i) mentioned 'captive reinsurance;' (ii) explained the general purpose of PMI; (iii) noted the possibility that Defendants may receive a financial benefit from the [captive reinsurance arrangements]; or (iv) purportedly permitted borrowers to 'opt out' of using a particular PMI provider with which PHH had a [captive reinsurance arrangement]." See id. at 24:5-10.  These alleged assurances were that the tolling subclass members were "'not a party to the mortgage insurance' . . . and that the PHH's [captive reinsurance arrangements] would not have, or were not having, any practical impact on the [tolling subclass members'] respective costs, loan terms, or PMI or settlement rights or obligations." Id. at 23:21-25.

Plaintiff-intervenor alleged that neither she nor any of the tolling subclass members received

any actual notice of facts bearing upon her RESPA claim until October 2012. Id. at 28. Indeed, the first public revelation regarding PHH's potential RESPA violations did not occur until the Consumer Financial Protection Bureau launched its investigation in May 2012. See id. at 30:5-6. The Defendants further failed to provide their employees with training or information concerning the captive reinsurance arrangements and thus any investigation would have been futile. See id. at 29:19-27. Thus, "[g]iven the unavailability of any information concerning Defendants' [captive reinsurance arrangements], and the practical effect of Defendants' false assurances and acts of concealment on the [tolling subclass members'] due diligence, Ms. Villalon and the other [tolling subclass members] were as diligent as could reasonably be expected." See id. at 30:23-26.

On November 21, 2014, Defendants filed a Partial Motion to Dismiss Plaintiffs' Second Amended Complaint and to Strike Certain Allegations. The court now decides this motion.

## II. Defendants' Arguments

Defendants have two core arguments: (1) Plaintiff-intervenor's reliance on the Disclosure fails as the court's prior conclusions regarding the document are now law of the case and accordingly the claims of the tolling subclass should be dismissed for failure to state a claim upon which relief can be granted and (2) the court should strike certain allegations of the SAC as contrary to the court's prior order granting leave to amend only to the equitable tolling and equitable estoppel allegations. See Doc. 276, 1:6-17.

Defendants argue that since the court has already decided the substantive issues at play here the law of the case applies. For equitable estoppel, Defendants emphasize that the court has previously concluded that the Disclosure "cannot serve as an act of concealment." See id. at 8:1-4. But, Defendants assert, Plaintiff-intervenor's equitable estoppel claim is entirely premised on the Disclosure. See id. at 11:4-5. And, according to the prior court order, the use of the Disclosure and the Affiliated Business Arrangement Disclosure Statement do not constitute an affirmative act of concealment separate and distinct from the RESPA claim. See id. at 11:20-12:1. Further, whether the Plaintiff-intervenor had actual notice at the time is immaterial because "[s]ilence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of

7

the parties imposes a duty upon the defendant to make disclosure." Id. at 12:2-10.

For equitable tolling, Defendants emphasize that the court previously concluded that the Disclosure placed Plaintiff-intervenor on notice of her potential claim, but "[d]espite being notice, Plaintiff-intervenor does not allege any diligence beyond reviewing loan documents." Id. at 7:5-8. Furthermore, "[i]n accordance with the other district courts in this Circuit, the Court finds that an alleged complex and self-concealing nature of reinsurance scheme and the failure to timely obtain counsel do not constitute extraordinary circumstances." Id. at 7:9-12. Accordingly, Defendants assert the only new extraordinary circumstance alleged by Plaintiff-intervenor is Defendants' failure to train employees regarding PMI insurance, which purportedly demonstrates that investigation would have been futile. See id. at 9:19-22. This, however, is "inconsequential in light of Ms. Villalon's admitted failure to even try to investigate her potential claims, until being contacted by counsel." Id. at 9:22-25.

Pursuant to Local Rule 110 and Federal Rule of Civil Procedure 16(f)(1)(C), Defendants argue that the Court should strike certain allegations from the SAC as violating the contours of the August 11 order that granted leave to amend the complaint only in regard to the equitable tolling and equitable estoppel pleadings. See id. at 14:7-9. Specifically, Defendants ask the court to strike paragraphs 18, 19, 20, 21, and 22 because the procedural background of how the Plaintiff-intervenor was named as plaintiff and the alleged number of tolling subclass members do not constitute facts pled to support equitable tolling or equitable estoppel. See id. at 13:8-17. Defendants ask that paragraph 80 be stricken as an attempt to recharacterize the underlying theory of the action as a "pay-to-play" scheme." See id. at 13:18-23. Defendants ask that the information in parentheses in paragraph 110 regarding the dollar amount and "preferred" mortgage insurers be stricken as new information unrelated to equitable tolling or equitable estoppel. See id. at 13:24-14:2. Last, Defendants asks that paragraph 116 be stricken as unrelated to equitable tolling or equitable estoppel. See id. at 14:3-6. Defendants note that the court has discretion to award reasonable attorney fees for the noncompliance. See id. at 5:14-19; Fed. R. Civ. P. 16(f)(2).

### III.  Plaintiff-intervenor's Arguments

Plaintiff-intervenor argues that the law of the case doctrine is unavailing because a court faced with new allegations in an amended pleading is not bound by determinations made regarding prior pleadings that are now superseded. See Doc. 278, 1:16-18. On the merits, Plaintiff-intervenor argues that the amended allegations plausibly allege with particularity that (1) Defendants actively misled Plaintiff-intervenor, thereby preventing her from discovering the underlying RESPA claims within the limitations period; (2) Plaintiff-intervenor was not on notice of her claims before June 2, 2007; and (3) Plaintiff-intervenor exercised reasonable due diligence. See id. at 1:6-13.

Plaintiff-intervenor states that she now brings the following new allegations that are substantively different than the FAC. First, the Defendants' alleged misrepresentations in the Disclosure covering up unlawful conduct are not an element of the RESPA claims and are therefore separate and distinct. See id. at 7:1-15. Second, there are extraordinary circumstances evident in the disclosure statement, statements by PHH in the current legal proceedings regarding captive insurance's place in the insurance industry, and the deposition of Samuel Rosenthal, PHH's Vice President of Risk Management-Secondary Marketing, in which he stated he was not familiar with non-captive reinsurance. See id. at 7:16-8:7. Third, the tolling subclass members were not on actual notice of their claims because the Disclosure lacked sufficient information to put them on notice. See id. at 8:8-23. This allegedly is in line with a recent Ninth Circuit decision, which stated that "[t]here may be situations in which a consumer is unable to file suit within the statutory limitations period precisely because of a real estate service provider's obfuscation or failure to disclose." Merritt v. Countrywide Fin. Corp., 759 F.3d 1023, 1040 (9th Cir. 2014).

Further, Plaintiff-intervenor asserts that the request to strike certain allegations is improper as the additional allegations address the court's concerns with respect to claim tolling and the tolling subclass members' presence in the case. See Doc. 278, 25:9-20. She also challenges that Local Rule 110 can be used to strike specific allegations in a complaint. See id. at 30:8-31:18.

**IV.  Legal Standards**

*Motion to Dismiss*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013); Johnson, 534 F.3d at 1121.

To avoid a Rule 12(b)(6) dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 556.

The court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000). Facts raised for the first time in opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice. Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citations omitted).

*Law of the Case*

The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs. See Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir. 1990). Under this doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. See id. Thus, in the Ninth Circuit, subsequent proceedings should follow the law of the case established in a previous

decision unless: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." Jeffries v. Wood, 114 F.3d 1484, 1489 (9th Cir. 1997) (en banc) (footnote, citation, and internal quotation marks omitted), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (1997).

*Motion to Strike*

Local Rule 11-110 provides that "failure of counsel or of a party to comply with these Local Rules or with any order of the Court may be grounds for the imposition by the Court of any and all sanctions . . . within the inherent power of the Court." Pursuant to Federal Rule of Civil Procedure 16(f)(1), a court may impose sanctions, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), for a party or its attorney's "fail[ure] to obey a scheduling or other pretrial order." Rule 37(b)(2)(A)(iii) authorizes the sanction of "striking pleadings in whole or in part." Under Rule 12(f)(1) a court may also strike on its own "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

**V. DISCUSSION**

*Motion to Dismiss*

For the law of the case doctrine to apply, "the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition." United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000). Plaintiff-intervenor argues, in effect, that her new allegations in the SAC are significant enough to make the law of the case doctrine inapplicable, such that the district court may reverse its previous finding. The SAC, however, merely cloaks the same facts or irrelevant facts in new legal theory, one amenable to the same defenses that have already prevailed. Thus, to win relief on the SAC's equitable estoppel and equitable tolling claims, Plaintiff-intervenor would have to relitigate issues the court has already resolved.

In its prior order, the court held that the "form loan document cannot serve as an act of concealment." See Doc. 266, 15:6-7. Therefore, alleged misrepresentations within the Disclosure cannot be the basis for separate and distinct misrepresentations from the RESPA claims. That

most of the tolling subclass members did not opt-out does not affect the basis for the court's decision as "a plain reading of PHH's disclosure clearly and unequivocally indicates that the Lender (PHH) or any of its affiliates (Atrium) may receive a portion of the mortgage insurance premiums in exchange for reinsurance." Id. at 14:22-25.

The court also found "that PHH's loan document disclosure adequately placed Plaintiff-intervenor on notice of her claim." Id. at 8:26-27. Plaintiff-intervenor now alleges that the Disclosure and mortgage documents did not provide notice. This directly contradicts the court's prior finding. The Plaintiff-intervenor further alleges that the tolling subclass members did not possess any knowledge or information regarding even the possibility of Defendants' alleged RESPA violations. However, it is not relevant if they lacked actual notice of the potential RESPA claims where there was inquiry notice as provided by the Disclosure and mortgage documents.

The court previously noted that "[d]espite being on notice, Plaintiff-intervenor does not allege any diligence beyond reviewing loan documents." Id. at 10-18-19. This has not changed. The Plaintiff-intervenor simply states in her opposition that "she was as diligent as could reasonably be expected from her March 1, 2007 loan closing through the time she received the assistance of counsel." Doc. 278, 16:18-21. This is premised on that the Disclosure did not provide notice, which, as discussed, is contradicted by the court's prior order. Otherwise, the only diligence alleged is participating in the loan transaction and reviewing the documents, which the court has already found to be insufficient.

There are also no extraordinary circumstances present. The court previously concluded that "an alleged complex and self-concealing nature of a reinsurance scheme and the failure to timely obtain counsel do not constitute extraordinary circumstances." Id. at 11:18-20. The court further already found that the Disclosure did not constitute an act of concealment. Statements by PHH in legal proceedings regarding captive insurance's common use in the insurance industry and Rosenthal's statements that he was not familiar with non-captive reinsurance are not material to these rulings. That Defendants failed to train employees regarding PMI insurance, which purportedly demonstrates that investigation would have been futile, is not significant in light of Plaintiff-intervenor's failure to investigate her potential claims until being contacted by counsel.

1    What's more, the other six named plaintiffs in this action, all of whom obtained mortgage loans in
2    2007 like the Plaintiff-intervenor or in 2008, managed to discover their alleged claims and file suit
3    within the statute of limitations period.[1]  Accordingly, it cannot be said that investigation would
4    have been futile.

5    Likewise, the Ninth Circuit decision Merritt v. Countrywide Fin. Corp., 759 F.3d 1023 (9th
6    Cir. 2014), has not changed the legal underpinnings of this court's prior decision.  Merritt held that
7    RESPA's one-year limitations period for civil actions brought under the section of the statute
8    prohibiting kickbacks and unearned fees may be equitably tolled.  See id. at 1040-41.  This was
9    presumed in Kay v. Wells Fargo & Co., 247 F.R.D. 572, 578 (N.D. Cal. Nov. 30, 2007), Orange v.
10   Wachovia Bank, N.A., EDCV 12-01683 VAP, 2013 U.S. Dist. LEXIS 157695, at *10 (C.D. Cal.
11   May 6, 2013); and Samp v. JP Morgan Chase Bank, N.A., EDCV 11-1950VAP SPX, 2013 WL
12   1912869, at *6 (C.D. Cal. May 7, 2013).  The Ninth Circuit also stated that "[t]here may be
13   situations in which a consumer is unable to file suit within the statutory limitations period
14   precisely because of a real estate service provider's obfuscation or failure to disclose."  Merritt,
15   759 F.3d at 1040.  This does not disturb the holdings of Kay, Orange, and Samp.

16   The court, therefore, determines that the SAC's equitable estoppel and equitable tolling claims
17   are barred by the law of the case doctrine and grants Defendants' motion to dismiss.  Since the
18   court previously concluded that Plaintiff-intervenor would have one opportunity to amend to cure
19   deficiencies in her equitable estoppel and tolling claims and since she has failed to cure those
20   deficiencies, this dismissal is with prejudice.

21   *Motion to Strike*

22   Pursuant to Local Rule 110 and Federal Rule of Civil Procedure 16(f)(1)(C), Defendants argue
23   that the court should strike certain allegations from the SAC as violating the contours of the
24   August 11 order that granted leave to amend the complaint only in regard to the equitable tolling
25   and equitable estoppel pleadings.  As discussed, however, the court has dismissed the equitable
26   estoppel and equitable tolling claims with prejudice.  Therefore, the court, pursuant to Rule

---

[1] In fact, the first lawsuit on the subject was filed in March 7, 2007.  See Kay v. Wells Fargo, No. 07-1351 (N.D. Cal. 2007), dismissed for lack of standing and refiled as Liguori v. Wells Fargo, 08-0479 (E.D. Pa. 2008).

12(f)(1), strikes on its own accord all pleadings amended after the August 11, 2014 order as immaterial.

### VI.  ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' partial motion to dismiss Plaintiffs' Second Amended Complaint is GRANTED;
2. The equitable estoppel and equitable tolling claims are DISMISSED from the Second Amended Complaint with prejudice; and
3. The court STRIKES all pleadings amended after its August 11, 2014 order.

IT IS SO ORDERED.

Dated:   May 21, 2015

_____
SENIOR DISTRICT JUDGE