# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EFRAIN MUNOZ, et al., individually and on behalf of all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**PHH CORPORATION, et al.,**<br><br>Defendants. | CASE NO. 1:08-cv-00759-AWI-BAM<br><br>**ORDER ON FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR CLASS CERTIFICATION**<br><br>(Doc. 114, 117, and 230) |

Plaintiffs have brought a motion for class certification of an action under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, seeking to recover damages for alleged kickbacks and fee-splits in violation of RESPA section 8. Doc. 114, Doc. 117. The Magistrate Judge issued Findings and Recommendations ("F&R") recommending that this action be certified with the exception of the subclass of plaintiffs who relied upon equitable tolling or equitable estoppel to excuse late filings ("the tolling subclass"). Doc. 230. The F&R was served on all parties. Both parties filed objections to the F&R. Doc. 232; Doc. 233. Both parties filed responses to the objections to the F&R. Doc. 235, Doc. 237. Subsequently, on May 22, 2015, this court granted a motion to dismiss the tolling subclass and its representative. In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(C), this court now considers the objections raised to the F&R de novo. The portion of the F&R regarding the tolling subclass and Plaintiffs' objections thereto are, however, now moot. Having carefully reviewed the entire file, the court finds that the remainder of the F&R is supported by the record and by proper analysis.

Defendants object that the F&R should not be adopted because (1) the proposed class incorrectly includes a reinsurance arrangement where there is no named plaintiff; (2) the proposed class improperly includes two reinsurance agreements that were commuted; (3) the proposed class erroneously includes borrowers who obtained loans from lenders other than PHH Mortgage or PHH Home Loans; and (4) given Plaintiffs' reliance on a "no risk transferred" theory in connection with the reinsurance arrangements, the Magistrate Judge should have recognized the numerous factual issues underlying the liability determination that are fatal to Plaintiffs' attempt to achieve class certification.

For the first, Defendants assert that because none of the named Plaintiffs were "referred" to CUNA Mutual Insurance Group ("CMG") by PHH nor obtained mortgage insurance from CMG, the named Plaintiffs do not have standing to challenge the reinsurance agreement between Atrium and CMG. The Magistrate Judge, however, has already provided a well-reasoned rejection of this argument. "Defendants' 'standing' argument is misguided. Neither CMG, nor any other insurer, is a defendant in this action. Standing concerns the relationship between the plaintiff and defendant; not the relationship between a plaintiff and a third party that is not before the Court." Doc. 230, 28:8-10. The Magistrate Judge, therefore, analyzed the argument through Rule 23(a)(2) typicality, and found that "each named Plaintiff was subject to Defendants' captive reinsurance arrangement and suffered the same alleged harm as putative class members whose loans were insured by CMG." Accordingly, the Magistrate Judge concluded "that the named Plaintiffs' claims are typical of the putative class members who received insurance from CMG. The named Plaintiffs' claims derive from the same factual predicates and rely upon the same legal theory as the putative Class members whose loans were insured by CMG." Id. at 29:3-6.

Defendants challenge the Magistrate Judge's rationale arguing that even if the "factual or legal premises" are the same this does not demonstrate traceability. Defendants cite McCarn v. USBC USA, Inc., No. 1:12-cv-375, 2012 U.S. Dist. LEXIS 162257 (E.D. Cal. Nov. 13, 2012), because there "Judge O'Neil rejected the Plaintiffs' suggestion of 'a single, over-arching "rimmed" conspiracy,' and dismissed on standing grounds the claims against certain pmi providers where there was no named plaintiff who dealt with that particular pmi provider." Doc. 233, 9:18-21.

1  Defendants, however, ignore that Plaintiffs have not asserted claims against CMG, the pmi
2  provider, in this litigation.  Conversely, Defendant PHH provides real estate mortgages nationwide
3  and wholly-owns Atrium, while Atrium provides reinsurance services to PMI providers, like
4  CMG.  As the Magistrate Judge correctly noted the only relevant standing inquiry here is whether
5  Plaintiffs may bring claims against Defendants for their alleged statutory violations of RESPA,
6  which Defendants do not challenge.

7  Defendants also challenge the Magistrate Judge's finding that "there are no factual differences
8  between CMG and the other pmi providers."  Id. at 10:14-15.  In actuality, the Magistrate Judge
9  held that "t[]he named Plaintiff's claims derive from the same factual predicates and rely upon the
10 same legal theory as the putative Class members whose loans were insured by CMG."  Doc. 230,
11 29:4-6.  Specifically, "[e]ach named Plaintiff was subject to Defendants' captive reinsurance
12 arrangement and suffered the same alleged harm as putative Class members whose loans were
13 insured by CMG."  Id. at 28:17-19.  Defendants, on the other hand, argue that "'complex' expert
14 analysis that will be required must be done on a book year-by-year basis.  Further, the facts of the
15 CMG reinsurance arrangement varied significantly from the other arrangements."  Doc. 233,
16 10:16-18.  The differences among the agreements that Defendants emphasize, however, are not
17 material and are secondary to the features that are the basis of Plaintiffs' claim, i.e. the same
18 captive reinsurance arrangements and same alleged harm.

19 Defendants next submit that the proposed class improperly includes two reinsurance
20 agreements that were commuted.  Defendants argue that the putative class recommended by the
21 Magistrate Judge improperly includes borrowers with pmi from Radian and CMG where the
22 reinsurance arrangement was commuted in 2009.  Defendants allege that the Magistrate Judge
23 misunderstood their argument as attempting to "erase the Section 8 violations that took place from
24 the time the mortgage transactions were finalized until those reinsurance agreements were
25 commuted."  See Doc. 233, 11:22-25.  Rather, Defendants allege no RESPA violation can be
26 demonstrated where the parties to the reinsurance agreement reached an agreement that required
27 Atrium to return all the premiums it had received, all of the earnings Atrium had received on those
28 premiums, and the initial capital contribution that was required to establish the reinsurance

structure. This allegedly represents the provisions of services in the form of reinsurance through forfeiture of the contributed capital. Additionally, because the commissions received by Atrium for those two agreements were held in a trust for paying reinsurance claims, Plaintiffs allegedly cannot show the receipt of any payment by Atrium. These are, however, premature merits arguments that can be made to the proposed class as a whole regardless of whether the forfeiture of contributed capital was by agreement or reinsurance payouts. The Magistrate Judge correctly concluded that:

> "Plaintiffs' and Class members' claims whose loans were insured by Radian or CMG are not 'mooted' by Atrium's subsequent commutation of those agreements. The Radian and CMG agreements were in existence between 2004 and 2009, and during that time, Plaintiffs allege Defendants unlawfully received kickbacks from these insurers. Prior Section 8 violations are not mooted merely because a party is no longer violating Section 8."

Doc. 230, 29:17-21.

Defendants' third basis for objecting to the F&R is that allegedly the proposed class erroneously includes borrowers who obtained loans from lenders other than PHH Mortgage or PHH Home Loans. Specifically, Defendants challenge the inclusion of closed loans acquired from loan correspondents in the proposed class. Defendants dispute the Magistrate Judge's finding that "[i]nternal memorandums and correspondence from PHH personnel further demonstrate PHH's affirmative influence, if not outright control over the private mortgage insurance selection process." Doc. 233, 14:15-19; Doc. 230, 23:8-9. Allegedly, the Magistrate Judge presumed:

> "that every borrower with pmi from UGI, Genworth, Radian or CMG was the result of a 'referral' by PHH, or was the result of PHH's pricing policies. Such an assumption is misplaced because the undisputed facts demonstrate that, at any given time, PHH Mortgage was acquiring loans from hundreds of correspondent lenders and there is no showing that even one of those lenders was 'influenced' by PHH Mortgage's pricing policy. Further, as Mr. Danahy explains, there were instances where there was only one pmi provider with a program that would meet the borrower's needs. In those cases, the borrower was offered the pmi provider that would allow him or her to get a loan, regardless of whether there was a reinsurance agreement in place."

Doc. 233 at 16:8-16. Defendants' opposition, however, conceded that "PHH Mortgage does provide brokers with a list of [private mortgage insurance] providers that can be selected by the borrower if the broker decides to use PHH Mortgage as the lender for his or her customer." Doc. 129; Doc. 230, 22:8-11. Defendants' supplemental opposition further stated that "[w]hile it is true

4

that, as with brokered loans, PHH Mortgage provides its correspondent lenders with a list of preferred [private mortgage insurance] providers, it does not direct the use of a specific [private mortgage insurance] provider in connection with such loans, and it does not have any interaction with the borrowers prior to closing." Doc. 185; Doc 230, 22:11-15.

Based upon these concessions, the Magistrate Judge determined that "Plaintiffs can litigate their theory that Defendants, whether directly or through brokers and correspondent lenders, systematically referred borrowers to one of the Primary Insurers." Doc. 230, 22:6-7. The Magistrate reasoned "Plaintiffs do not need to establish PHH 'required' the use of a[n] insurer. Rather, all Plaintiffs must show is that they were 'referred' to an insurer. By providing correspondent lenders and brokers with a list of PHH's Primary Insurers, an issue common to the Class is whether this referral constitutes an 'oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person or a provider of' private mortgage insurance." Id. at 22:17-22. Accordingly, the Magistrate Judge properly included closed loans acquired from loan correspondents in the proposed class.

Last, Defendants allege that given Plaintiffs' reliance on a "no risk transferred" theory in connection with the reinsurance arrangements, the Magistrate Judge should have recognized the numerous factual issues underlying the liability determination that are fatal to Plaintiffs' attempt to achieve class certification. The first alleged factual issue is that Defendants "disagree with the Magistrate Judge's conclusion that a single analysis across all book years for a given provider is appropriate given the underlying issues related to the determination of liability. There is no dispute among the parties that each individual book year for each particular pmi provider who obtained reinsurance would need to be evaluated separately." Doc. 233, 16:21-27.

Allegedly, the Magistrate Judge's incorrectly determined that "risk transfer" could be determined across books years. Defendants argue that risk transfer determination in this case is not subject to common proof and the four reinsurance agreements vary in significant ways from each other and across book years. "[E]ven assuming for the sake of argument that Plaintiffs' evidence could demonstrate that there was no risk transferred under the UGI agreement 'as written' because of the purported 'trust caps,' that is irrelevant where, as here, Atrium has paid

5

claims in connection with a particular book year so there is no dispute that services were provided, which is all that RESPA requires." Id. at 20:11-15. Further, the allocation of "risk" to the reinsurer for the remaining borrowers was supposedly affected by the loans that dropped out of each pool. The Magistrate Judge, however, correctly refuted this assertion:

> "Thus, even if the Court were to determine the UGI and Genworth agreements should be evaluated with respect to changing bands of loss and premium cedes (and given Atrium's cross-collateralization of all book years, such an analysis may not be significant utility to the overall risk transfer analysis), the Court would, at most, have to conduct an additional two analysis to account for these changes. As the Court in Kay observed when acknowledging the need to consider seven different reinsurance agreements, this investigation 'will not be so particularized that it will overshadow the common issues of the class." Kay, 247 F.R.D. at 576.
> For class certification purposes, the most important consideration of Atrium's reinsurance agreements is that they were not entered into with individual borrowers. Rather, the agreements covered pools of loans for each Primary Insurer. Plaintiffs' allegations of contractual liability-limiting features, alone, permits the Court to evaluate the sufficiency of risk transfer on a class-wide basis. Furthermore, a more substantive approach risk transfer, i.e., bands of loss contrasted with premium cedes, can be done on an aggregated basis for the entire Class. The sufficiency of risk transfer is a common issue under Rule 23(a)(2)."

Doc. 230, 21:3-16.

Allegedly, the Magistrate Judge also presumed that since the borrowers ended up with a pmi provider with whom Atrium had a reinsurance agreement, that they must have been "referred." This, however, is not what the Magistrate Judge reasoned. Rather, as already stated, the Magistrate Judge found that:

> "Plaintiffs do not need to establish PHH 'required' the use of a[n] insurer. Rather, all Plaintiffs must show is that they were 'referred' to an insurer. By providing correspondent lenders and brokers with a list of PHH's Primary Insurers, an issue common to the Class is whether this referral constitutes an 'oral or written action directed to a person which has the effect of affirmatively influencing the selection by any person or a provider of' private mortgage insurance."

Id. at 22:17-22.

Defendants also argue that individual damage calculations will be required because large numbers of loans have been dropped out of each pool and for each putative class member, there would need to be an individualized inquiry as to the status of that person's loan and whether pmi payments are being made. However, as the Magistrate Judge properly determined:

> "Mr. Munoz's delinquency is irrelevant to Section 8 liability. If Defendants' conduct violated Section 8, Defendants would be liable to Mr. Munoz for damages in an amount equal to three times the amount Mr. Munoz paid for PHH's settlement

service. Mr. Munoz's failure to stay current on his loan is not a defense to Section 8 liability, and Defendants do not cite any authority to the contrary. The only relevance of Mr. Munoz's delinquency relates to the amount of Mr. Munoz's damages. As the Court just explained, individual damage inquiries do not defeat class certification. Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010); See also, Comcast Corp. v. Behrend, -U.S.-, 133 S.Ct. 1426, (2013) (the relevant damage inquiry requires damages be capable of determination on a classwide basis, and that those damages be traceable to the plaintiff's 'liability case')."

Doc. 230, 34:7-16.

Defendants argue that the Magistrate Judge erred in relying on the "Countrywide Letter" as a basis for evaluating liability under section 8 of RESPA. However, as the Magistrate Judge noted Defendants have acknowledged that the "Countrywide Letter" has "been relied upon by mortgage insurers and lender-owned reinsurers alike to maintain compliance with RESPA." Doc. 129, 17:17-19; Doc. 230, 9:15-17. Defendants further "do not articulate any basis to evaluate captive reinsurance liability under Section 8." Doc. 230, 9:21-22.

Defendants also object to the Magistrate Judge's application of the "Countrywide Letter" to situations, like the present one, where actual reinsurance claims were paid. Allegedly, in these situations, services have been provided and the RESPA claim fails as a matter of law. However, while the Court must eventually determine a proper standard of decision to evaluate Defendants' captive reinsurance arrangement under Section 5, "the Court need not definitively opine on this standard at the class certification stage." Id. at 16:10-11. Furthermore, "Defendants' argument that Atrium 'actually performs' reinsurance services if it has ever made a reinsurance payment is an inquiry common to the Class as a whole." Id. at 16:26-27.

Accordingly, IT IS HEREBY ORDERED:

(1) The portions of the Findings and Recommendations filed May 15, 2013 (Doc. 230) regarding the tolling subclass are now MOOT.

(2) The remainder of the Findings and Recommendations is ADOPTED IN FULL.

IT IS SO ORDERED.

Dated:   June 10, 2015                           _____
                                                 SENIOR DISTRICT JUDGE