UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFRAIN MUNOZ, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHH CORPORATION, et al.,<br><br>Defendants. | CASE NO. 1:08-cv-00759-AWI-BAM<br><br>ORDER RE: INTERLOCUTORY APPELATE CERTIFICATION<br><br>(Doc. 294) |

Plaintiffs have made a motion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) of the Court's order dismissing Plaintiffs' putative tolling subclass and its representative Marcella Villalon from the present action with prejudice. Doc. 294. For the reasons that follow, Plaintiffs' motion is denied.

## I. History

*RESPA Claim*

PHH provides real estate mortgages nationwide. PHH wholly-owns Atrium. Atrium provides reinsurance services to private mortgage insurance ("PMI") providers. Typically, PMI providers are unaffiliated with the mortgage provider. In turn, PMI providers decrease their risk by acquiring reinsurance, though companies such as Atrium, in exchange for a percentage of the PMI provider's premiums. Captive reinsurance occurs when the mortgage provider also provides the reinsurance.

Congress enacted the Real Estate Settlement Procedures Act ("RESPA") to increase real estate

settlement process transparency and protect consumers from abusive business practices. See 12 U.S.C. § 2601. In relevant part, section 8(a) provides:

> "No person shall give and no person shall accept any portion, split, or percentage, of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

12 U.S.C. § 2607(a). Contrarily, section 8(b) provides:

> "No person shall give and no person shall accept any portion, split, or percentage, of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

12 U.S.C. § 2607(b).

Plaintiffs acquired mortgages from PHH and provided down payments of less than 20% of the home purchase prices. PHH required Plaintiffs, due to their less-than-20% down payments, to purchase PMI in order to protect PHH against the risk of default. Plaintiffs allege that PHH organized a scheme whereby PHH selected the specific PMI provider. In turn, PHH required selected PMI providers to acquire reinsurance through Atrium. Plaintiffs allege that reinsurance through Atrium was illusory, no actual transfer of risk occurred. Specifically, Plaintiffs allege: "[t]he millions of dollars to premiums accepted from [mortgage insurers]: (a) were not for services actually furnished or performed; and/or (b) exceeded the value of such services." Doc. 273, 34:21-23. Thus, Atrium's share of PMI premiums constituted kickbacks and fee-splits in violation of RESPA section 8.

*First Amended Complaint*

On June 2, 2008, Plaintiffs Efrain Munoz, Leona Lovette, and Stephanie Melanie filed a class action complaint against Defendants for alleged violations of RESPA section 8. See Doc. 1-2. On December 10, 2010, Plaintiffs filed their First Amended Complaint ("FAC"). See Doc. 96. The FAC included arguments for a subclass of plaintiffs, for whom the complaint was not timely filed within one year of obtaining their home loan, for the application of equitable tolling and equitable estoppel to RESPA's statute of limitations for section 8 claims. See id.

The FAC lacked a named plaintiff for the putative tolled class of plaintiffs. On May 30, 2013, Plaintiff-intervenor Marcella Villalon filed a motion to intervene on behalf of the tolling class of

1   individuals who obtained mortgage loans and private mortgage insurance through PHH's alleged
2   captive mortgage reinsurance arrangements between January 1, 2004 and June 1, 2007.  See Doc.
3   231.  Her loan transaction had taken place on March 1, 2007.  Id.  At her closing she had received
4   a uniform "Mortgage Insurance" disclosure (the "Disclosure") set forth within her mortgage
5   "Deed of Trust."  See Doc. 273, Exh. C.  In lieu of filing a pleading in the present matter,
6   Plaintiff-intervenor filed a declaration and adopted the FAC allegations, including the equitable
7   tolling and equitable estoppel allegations as set forth in FAC at ¶¶ 99-111.  See Doc. 231-4, Exh.
8   B at ¶ 9.

9   On November 27, 2013, Defendants filed a motion for a Rule 12(c) partial judgment on the
10  pleadings.  As for equitable tolling, Plaintiff-intervenor alleged that "borrowers were not put on
11  notice of their claims and, despite exercising reasonable due diligence, reviewing their loan
12  documents, reasonably could not have discovered their claims within the applicable statute of
13  limitations" and that she was "able to discover the underlying basis for the claims alleged herein
14  only with the assistance and investigation of counsel."  Doc. 96, at ¶¶ 102, 105.

15  The Court, however, found "that PHH's loan document disclosure adequately placed
16  Plaintiff-intervenor on notice of her claim and that she fails to allege extraordinary circumstances
17  that prevented her from timely filing."  Doc. 266, 8:26-28.  The Court reasoned that "[t]he loan
18  documents PHH provided to the time-barred plaintiffs are substantively similar to those discussed
19  in other cases."  Id. at 9:1-2.  "Both the Samp loan disclosure and the PHH loan document
20  disclosure explain the requirement of mortgage insurance, the purpose of mortgage insurance, the
21  borrower's rights and responsibilities under mortgage insurance, and the potential occurrence of
22  captive reinsurance."  Id. at 9:25-28.

23  "Here, there is no excusable ignorance of the captive reinsurance scheme. As in Kay, Orange,
24  and Samp, the loan disclosure document put Plaintiff-intervenor on notice of the possible
25  existence of a claim by informing her of the very nature and use of the captive reinsurance
26  arrangement.  Despite being on notice, Plaintiff-intervenor does not allege any diligence beyond
27  reviewing loan documents. . . . Thus, Plaintiff-Intervenor inadequately pleads diligence in
28  pursuing her rights despite being on notice of the possible existence of her claim."  Id. at 10:15-25.

3

The Court then found that there were no extraordinary circumstances that stood in the Plaintiff-intervenor's way in pursuing her rights.  Plaintiff-intervenor alleged that the time-barred class did not possess the information or skills necessary to discover the RESPA violation "due to the complex, undisclosed and self-concealing nature of PHH's scheme."  Doc. 96, at ¶ 105.  Plaintiff-intervenor next alleged that time-barred plaintiffs reasonably could not have discovered "Defendants' conduct as alleged herein absent specialized knowledge and/or assistance of counsel."  Id. at ¶ 105.  Nevertheless, the Court found "that an alleged complex and self-concealing nature of a reinsurance scheme and the failure to timely obtain counsel do not constitute extraordinary circumstances."  Doc. 266, 11:18-20.

As for equitable estoppel/fraudulent concealment, the Court held that Plaintiff-intervenor failed to sufficiently plead fraudulent concealment apart from an underlying RESPA claim.  See Doc. 266.  Plaintiff-intervenor alleged fraudulent concealment for both section 8(a) and (b) violations on Defendants' intentional misrepresentation that Atrium accepted fees without legitimately assuming risk.  Specifically, Plaintiff-intervenor alleged that, "PHH made affirmative, intentional misrepresentations concerning its captive reinsurance program.  PHH affirmatively represented to Plaintiffs and the Class that any amounts it received from its captive reinsurance arrangements were for services actually performed."  Doc. 96, at ¶ 106.  However, the Court found "that Defendants did not hide PHH's relationship with Atrium.  PHH's form loan document explicitly spells out the reinsurance scheme."  Doc. 266, 14:9-10.  "[A] plain reading of PHH's disclosure clearly and unequivocally indicates that the Lender (PHH) or any of its affiliates (Atrium) may receive a portion, of the mortgage insurance premiums in exchange for reinsurance, 'an arrangement that is often termed "captive reinsurance."'"  Id. at 14:22-25, quoting the Disclosure.  "Contrary to Plaintiff-intervenor's assertion that Defendants held the reinsurance scheme out to be legitimate in the loan disclosure, . . . the PHH disclosure does not contain such an assurance."  Id. at 15:1-6.

Plaintiff-intervenor also alleged that through a 2007 SEC filing "PHH represented that its captive reinsurer provided actual reinsurance services in return for the premiums that it received from its borrowers [sic] private mortgage insurance providers."  Doc. 96, at ¶ 106.

4

Plaintiff-intervenor alleged that PHH's representation of Atrium's level of risk assumption constituted an act of concealment wholly apart from the underlying RESPA claims. See id. at ¶ 107. Plaintiff-intervenor further alleged that Defendants failed to adequately describe the relationship between settlement service providers pursuant to RESPA section 8(c) and 24 C.F.R. 3500.7. See id. at ¶ 108. The Court, though, held that these allegations were not sufficiently apart from the underlying RESPA claim to constitute equitable estoppel/fraudulent concealment. See Doc. 266, 16:19-22, 15:11-16, 15:21-16:2.

Accordingly, in an August 11, 2014 order, the Court granted Defendants' motion for partial judgment on the pleadings for both the equitable tolling and equitable estoppel/fraudulent concealment pleadings. However, the Court provided that "Plaintiff-intervenor shall have one opportunity to file and serve a further amended complaint to cure deficiencies. . . . Plaintiff-intervenor may not amend any section of the complaint outside the scope of equitable tolling and equitable estoppel pleadings." Id. at 17:4-8.

*Second Amended Complaint*

Pursuant to this order, Plaintiff-intervenor filed a Second Amended Complaint ("SAC") on October 7, 2014. See Doc. 274. She alleged that use of misleading mortgage documents constituted an affirmative act of concealment that was separate and distinct from the RESPA claim. See id. at 23:1-2. She stated that the Disclosure "affirmatively misrepresented to reasonable borrowers that the [captive reinsurance arrangements] would 'not affect the amounts [borrower] ha[d] agreed to pay for [PMI]' or 'the rights [borrower] ha[d].'" Id. at 22:1-3. The relevant portion of the Disclosure provides:

> "(a) Any such agreement will not affect the amounts that Borrower has agreed to pay for [PMI], or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for [PMI], and they will not entitle Borrower to any refund.
> (b) Any such agreements will not affect the rights borrower has – if any – with respect to the [PMI] under Homeowners Protection Act of 1988 or any other law…"

Doc. 274-3, Exh. C at ¶ 10.

Plaintiff-intervenor further alleged that the Disclosure affirmatively misrepresented to borrowers that any payments made or ceded to PHH of portions of its borrowers' premiums would

be in exchange for actual reinsurance. See Doc. 274, 22:15-19. Specifically, "Defendants misrepresented to Ms. Villalon and every other [tolling subclass member] that the purpose of the [captive reinsurance arrangements] were to 'shar[e] or modif[y] the [mortgage insurer's] risk' and/or 'reduc[e] losses' associated with each [tolling subclass member's] mortgage." Id. at 22:20-22. "In reality, however, the [mortgage insurer's] purported 'reinsurance' payments to Atrium were prohibited kickbacks." Id. at 22:23-24. According to Plaintiff-intervenor, this concealment was separate and distinct from the RESPA claim as disclosure or nondisclosure of alleged unlawful conduct is not an element of the RESPA claims. Id. at 23:1-6.

Plaintiff-intervenor also alleged that the term "captive reinsurance" in the Disclosure did not provide notice as the term refers to an industry standard. See id. at 26:10-15. She cited statistics, including that only one borrower out of approximately 24,200 PMI policies elected to opt out of the captive reinsurance arrangements, allegedly confirming that Defendants' representations in the Disclosures did not raise concern for an objectively reasonable borrower. See id. at 27:12-19.

Plaintiff-intervenor alleged that "as a direct result of . . . assurances, it was irrelevant to Ms. Villalon and other [tolling subclass members] that the Disclosure (or any other document): (i) mentioned 'captive reinsurance;' (ii) explained the general purpose of PMI; (iii) noted the possibility that Defendants may receive a financial benefit from the [captive reinsurance arrangements]; or (iv) purportedly permitted borrowers to 'opt out' of using a particular PMI provider with which PHH had a [captive reinsurance arrangement]." See id. at 24:5-10. These alleged assurances were that the tolling subclass members were "'not a party to the mortgage insurance' . . . and that the PHH's [captive reinsurance arrangements] would not have, or were not having, any practical impact on the [tolling subclass members'] respective costs, loan terms, or PMI or settlement rights or obligations." Id. at 23:21-25.

Plaintiff-intervenor alleged that neither she nor any of the tolling subclass members received any actual notice of facts bearing upon her RESPA claim until October 2012. Id. at 28. Indeed, the first public revelation regarding PHH's potential RESPA violations did not occur until the Consumer Financial Protection Bureau launched its investigation in May 2012. See id. at 30:5-6. The Defendants further failed to provide their employees with training or information concerning

the captive reinsurance arrangements and thus any investigation would have been futile. See id. at 29:19-27. Thus, "[g]iven the unavailability of any information concerning Defendants' [captive reinsurance arrangements], and the practical effect of Defendants' false assurances and acts of concealment on the [tolling subclass members'] due diligence, Ms. Villalon and the other [tolling subclass members] were as diligent as could reasonably be expected." See id. at 30:23-26.

*Partial Motion to Dismiss*

On November 21, 2014, Defendants filed a Partial Motion to Dismiss Plaintiffs' Second Amended Complaint and to Strike Certain Allegations. On May 21, 2015, the Court subsequently granted this motion and dismissed the putative tolling subclass plaintiffs from the case. Doc. 284. In granting the motion, the Court relied upon the law of the case doctrine from its prior order and reasoned, in relevant part:

> "the Ninth Circuit decision Merritt v. Countrywide Fin. Corp., 759 F.3d 1023 (9th Cir. 2014), has not changed the legal underpinnings of this court's prior decision. Merritt held that RESPA's one-year limitations period for civil actions brought under the section of the statute prohibiting kickbacks and unearned fees may be equitably tolled. See id. at 1040-41. This was presumed in Kay v. Wells Fargo & Co., 247 F.R.D. 572, 578 (N.D. Cal. Nov. 30, 2007); Orange v. Wachovia Bank, N.A., EDCV 12-01683 VAP, 2013 U.S. Dist. LEXIS 157695, at *10 (C.D. Cal. May 6, 2013); and Samp v. JP Morgan Chase Bank, N.A., EDCV 11-1950VAP SPX, 2013 WL 1912869, at *6 (C.D. Cal. May 7, 2013). The Ninth Circuit also stated that "[t]here may be situations in which a consumer is unable to file suit within the statutory limitations period precisely because of a real estate service provider's obfuscation or failure to disclose." Merritt, 759 F.3d at 1040. This does not disturb the holdings of Kay, Orange, and Samp."

Id. at 13:5-15.

After the partial motion to dismiss was granted, the Court subsequently certified the remainder of the class action. Doc. 288. On June 24, 2015, Plaintiffs filed a motion for interlocutory appellate certification of the May 22, 2015 order pursuant to 28 U.S.C. § 1292(b). Doc. 294. The basis of the motion is that Plaintiffs allege that Ninth Circuit opinion Merritt disturbed the holdings of the district court opinions Kay, Orange, and Samp, which had formed the basis of the Court's prior orders. Defendants filed an opposition. Doc. 298. No oral argument was held in the matter and it was taken under submission. Doc. 300.

## II. Legal Standard

Title 28 U.S.C. § 1292(b) provides that:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, that application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

The court cannot be compelled to certify an order or an issue under section 1292(b) and the court's refusal to certify an order under this statute is not appealable. See Green v. Occidental Petroleum Corp., 541 F.2d 1335, 1338 (9th Cir. 1976); Oppenheimer v. Los Angeles County Flood Control Dist., 453 F.2d 895, 895 (9th Cir. 1972). The Ninth Circuit has listed the requirements for certification as: (1) a controlling question of law; (2) substantial grounds for difference of opinion; and (3) immediate appeal may materially advance the ultimate termination of the litigation. In re Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th Cir. 1982). Overall, Congressional legislative history "indicates that [interlocutory appeal] was to be used only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation. It was not intended merely to provide review of difficult rulings in hard cases." United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966).

To certify an order for interlocutory appellate review under Section 1292(b), all three prongs given in In re Cement must be satisfied. 28 U.S.C. § 1292(b); In re Cement, 673 F.2d at 1026. Accordingly, a plaintiff's failure to satisfy the second prong is sufficient to deny the motion. Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented. Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010). A party's strong disagreement with the court's ruling is not sufficient for there to be a

substantial ground for difference. That settled law might be applied differently does not establish a substantial ground for difference of opinion. Id.

### III. Discussion

This Court's examination of the disclosures in its prior orders follows the Kay, Orange and Samp cases. Those cases, and this Court's interpretation of similar disclosures at issue for the claims of Plaintiff-intervenor, demonstrate that there are no substantial grounds for difference of opinion. The Ninth Circuit opinion Merritt further cannot reasonably be interpreted to disturb the holdings of Kay, Samp, and Orange. Plaintiffs argue to the contrary that Merritt "raises substantial grounds for differences in opinions as to the proper analysis of RESPA tolling allegations." Doc. 294, 8:23-24. Plaintiff elaborates:

> "neither this Court originally, nor the courts in Kay, Samp or Orange, addressed the RESPA tolling issue with the benefit of the Ninth Circuit's analysis and rationale for holding equitable tolling available for RESPA claims. As such, this Court's reliance on its own prior decision, which in turn relied upon the decisions in Kay, Samp and Orange gave no consideration to the consumer protection purposes of RESPA in erroneously concluding that the Disclosures did not constitute an act of concealment that prevented Plaintiff Villalon (and other borrowers) from being on notice of her potential RESPA claim. Indeed, given the Ninth Circuit's conclusion that equitable tolling must be available to protect consumers because a settlement service provider may use obfuscation and incomplete disclosure to hide its violation(s), the continuing validity of the prior determinations in the above-discussed cases that the Disclosure did not conceal and prevent discovery of the violation, justifying tolling of the statute, should be called into question. Further, since Merritt itself did not address what factual allegations would support equitable tolling of the RESPA statute of limitations, this case provides a unique and important opportunity for the Ninth Circuit to provide needed guidance on this issue."

Id. at 11:9-12:3 (footnotes omitted).

To support these conclusions, Plaintiffs rely on the statement in Merritt that "[t]here may be situations in which a consumer is unable to file suit within the statutory limitations period precisely because of a real estate service provider's obfuscation or failure to disclose" and that "district courts may evaluate RESPA claims case-by-case 'to determine if the general rule [that the limitations period ordinarily runs from the date of the alleged RESPA violation] would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.'" Id. at 1040, quoting King v. California, 784 F.2d 910, 915 (9th Cir. 1986).

9

There is nothing inconsistent about these statements, however, with Kay, Orange, and Samp. These cases all assume that there are situations in which equitable tolling or equitable estoppel can apply to RESPA violations due to "a real estate service provider's obfuscation or failure to disclose." These cases all assume that "district courts may evaluate RESPA claims case-by-case." These cases simply stand for what constitutes sufficient notice of the claim and preclude a finding of fraudulent concealment when there is no "active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." Samp, 2013 WL 1912869, at *7, quoting Santa Maria v. Pacific Bell, 202 F.3d 1170, 1177 (9th Cir. 2000). Indeed, the rule for the former is based upon settled Ninth Circuit jurisprudence. See Santa Maria, id. at 1178-79 (all that is required is that plaintiffs be aware of the "possible existence" of a claim). Likewise, the rule for the latter is as well as the Ninth Circuit "has repeatedly rejected claims of fraudulent concealment where the plaintiffs fail to allege misrepresentations beyond the actual basis for the lawsuit." McCarn v. HSBC USA, Inc., 2012 WL 5499433, at *7 (E.D. Cal. Nov. 13, 2012). To accept otherwise would "merge[] the substantive wrong with the tolling doctrine" and "eliminate the statute of limitations." Coppinger-Martin v. Solis, 627 F.3d 745, 751-52 (9th Cir. 2010).

Plaintiffs also rely on quotations in Merritt from Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 665 (9th Cir. 2012), regarding RESPA's consumer-protection purposes. In fact, RESPA's consumer-protection purposes are expressly stated in its first section, which declares that "significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2605(e)(1)(B) This was recognized by the Ninth Circuit well before Kay, Orange, Samp, or this Court's May 22, 2015 order, were ever decided. See Schuetz v. Banc One Mortg. Corp., 292 F.3d 1004, 1008-09 (9th Cir. 2002) (discussing the enactment and congressional purpose of RESPA).

In short, there is nothing in Merritt that conflicts or undermines Kay, Orange, or Samp. Merritt simply confirmed underlying assumptions of the cases relied upon by this court in its prior

10

orders. Plaintiffs have failed to present a substantial ground for difference of opinion. Accordingly, their motion for interlocutory appeal is denied.

## IV. Order

IT IS HEREBY ORDERED THAT Plaintiffs' motion for interlocutory appeal (Doc. 294) is DENIED.

IT IS SO ORDERED.

Dated:   October 1, 2015

SENIOR DISTRICT JUDGE