UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFRAIN MUNOZ et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHH MORTGAGE CORPORATION, et al.,<br><br>Defendants,<br><br>and<br><br>OCWEN FINANCIAL CORPORATION,<br><br>Respondent. | No. 1:08-cv-00759-DAD-BAM<br><br>ORDER DENYING PLAINTIFFS' MOTION TO JOIN OCWEN FINANCIAL CORPORATION AS A DEFENDANT PURSUANT TO RULE 25(c)<br><br>(Doc. No. 401) |

This matter is before the court on plaintiffs' motion to join Ocwen Financial Corporation ("Ocwen") to this action as a defendant pursuant to Federal Rule of Civil Procedure 25(c). (Doc. No. 401.) On March 12, 2019, the motion came before the court for hearing. Attorneys Terence Ziegler and Donna Moffa appeared for plaintiffs and the class, and attorneys David Souders, Sandra Vipond, and Joseph Genshlea appeared for defendants and Ocwen (collectively, the "respondents"). The court has considered the arguments presented by Ocwen and the parties and, for the reasons set forth below, will deny plaintiffs' motion to join Ocwen as a defendant in this action without prejudice.

**BACKGROUND**

On June 2, 2008, plaintiffs filed this lawsuit, alleging that defendants violated the antikickback provisions of Section 8(a) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a), by requiring that the private mortgage insurers ("MIs") to which PHH Corporation ("PHH") referred business, enter into captive reinsurance agreements with Atrium, PHH's affiliated "reinsurer," as a mechanism to extract payment from the MIs in exchange for the referral of PHH's mortgage insurance business. (Doc. No. 1.) Plaintiffs secured certification of a class of mortgagers in June of 2015 (*see* Doc. Nos. 230, 288) and argued competing final dispositive motions before this court on December 20, 2016. (Doc. No. 384.) Several motions are currently under submission for decision before this court.[1]

At the parties' request, the court entered a stay pending mediation from December 8, 2017 until March 1, 2018. (Doc. No. 389.) The parties then sought to extend the stay until April 10, 2018 (Doc. No. 392), which the court granted (Doc. No. 393), to allow the parties to evaluate settlement possibilities following their February 21, 2018 in-person mediation session and PHH's announcement that it had entered into a definitive agreement for a merger with Ocwen. Ultimately, the parties were unable to reach a settlement agreement and jointly so advised the court on April 17, 2018. (Doc. No. 396.)

On October 4, 2018, Ocwen announced that it had completed its merger with PHH, purchasing all of PHH's common stock in a $360 million cash acquisition (the "Transaction"), resulting in PHH becoming a wholly-owned subsidiary of Ocwen. (*See* Doc. Nos. 399; 401-1 at 5; 401-3, Ex. 1.) As part of the Transaction, Ocwen also assumed $119 million of PHH's unsecured debt. (Doc. No. 402 at 6.) On January 23, 2019, plaintiffs' moved to join Ocwen in this action as a defendant. (Doc. No. 401.)

---

[1] This order addresses only plaintiff's motion to join Ocwen in this action as a defendant. The court is well aware that it has long had various other motions submitted for decision in this action, including motions for summary judgment, to decertify the class, and to strike. The court apologizes to all the parties for its delay in resolving those motions, while providing assurance that they continue to be worked upon by the court, albeit at a somewhat slowed pace as a result of the court's ongoing judicial emergency (*see* Doc. No. 415) and the public health emergency that has now gripped our nation as well as the rest of the world.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 25(c) governs the joinder of a party in an action where there is a transfer of interest:

> (c) Transfer of Interest. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.

The purpose of the rule is to maintain existing relationships in the litigation after a transfer of interest. "Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an *interest in the lawsuit* changes hands." *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000) (quoting *In re Covington Grain Co., Inc.*, 638 F.2d 1362, 1364 (5th Cir. 1981) (emphasis added)).

"When presented with a Rule 25(c) motion, district courts may, in their discretion: (1) permit the predecessor to continue alone; (2) substitute the successor-in-interest for the predecessor; or (3) join the successor-in-interest with the predecessor." *Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, No. 10cv541-GPC(WVG), 2014 WL 11878454, at *3 (S.D. Cal. July 30, 2014) (citing *Hilbrands v. Far East Trading Co.*, Inc., 509 F.2d 1321, 1323 (9th Cir. 1975)); *see also Sun-Maid Raisin Grow. of Cal. v. California Pack. Corp.*, 273 F.2d 282, 284 (9th Cir. 1959) ("Substitution or joinder is not mandatory where a transfer of interest has occurred."). As the Ninth Circuit has noted:

> The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued by or against the original party, and the judgment will be binding on his successor in interest even though he is not named. An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation.

*In re Bernal*, 207 F.3d at 598 (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1958 (2d Ed. 1986)).

## LEGAL ANALYSIS

Here, plaintiffs contend that Ocwen became a "successor in interest" to PHH's interest in this action when it merged with PHH, making joinder appropriate. (Doc. No. 401-1 at 10–17.)

3

Respondents argue, however, that "Ocwen's purchase of PHH Corporation's stock did not transfer the PHH Defendants' interests in this litigation to Ocwen." (*See* Doc. No. 402 at 8–12.)

Whether a "transfer of interest" is sufficient to justify joinder under Rule 25(c) is a question of state law. *See, e.g.*, *LiButti v. United States*, 178 F.3d 114, 124 (2d Cir. 1999) ("Successor liability [under Rule 25(c)] is a question of State law[.]"; *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72–73 (3d Cir. 1993) (looking at state law "pertaining to corporate successor liability" to determine whether "an entity is a transferee of interest" under Rule 25(c)); *Simplifi Health Benefit Mgmt., LLC v. Cayman Islands Nat'l Ins. Co.*, No. 2:13-CV-714, 2015 WL 5251234, at *3 (S.D. Ohio Sept. 9, 2015) ("To determine whether a transfer of interest [under Rule 25(c)] has occurred, the Court applies state substantive law.") (citing *Virgo v. Riviera Beach Assocs.*, 30 F.3d 1350, 1358 (11th Cir. 1994) and *Mickowski v. Visi-Trak Worldwide, LLC*, 415 F.3d 501, 510 (6th Cir. 2005)).

**A.     Choice of Law**

Plaintiffs initially argue that either the laws of New Jersey or Florida, where PHH and Ocwen are headquartered, respectively, should apply to this determination, noting that, in both states, a successor may be liable if the transaction amounts to a merger, or if the successor is a "mere continuation" of the predecessor. (*See* Doc. No. 401-1 at 10.) Respondents counter, arguing that the court should apply Maryland law, since PHH is incorporated in Maryland. (*See* Doc. No. 402 at 11.) In their reply, plaintiffs argue that the court "need not choose between the laws of these three states" but do not oppose the application of Maryland law to the resolution of the question posed here. (Doc. No. 405 at 5–6.)

"By default, California courts apply California law unless a party litigant timely invokes the law of a foreign state, in which case it is the foreign law proponent who must shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 928 (9th Cir. 2019) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) (*en banc*)) (internal quotation marks and citations omitted). To carry that burden, the proponent must utilize the

/////

4

"choice-of-law rules of the forum state," *id.* at 928, which in California consists of the following three-step "governmental interest" analysis:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state," *Bernhard v. Harrah's Club*, 16 Cal. 3d 313, 320 (1976), and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied." *Id.*

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006); *see also Senne*, 934 F.3d at 928–29.

Regarding the first and second steps, plaintiffs and respondents agreed at the hearing on the pending motion that there is a difference—a true conflict—between the laws of California on the one hand and the laws of New Jersey, Florida, and Maryland on the other as to the issue of successor liability. (*See also* Doc. No. 405 at 7–8.) California courts categorically decline to find a transfer of interest when a merger occurs as a transfer of stock, rather than of assets. *See Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1131-32 (C.D. Cal. 2015) ("California courts routinely decline to apply successor liability where the *de facto* merger occurs as a result of a stock purchase or transfer."). On the other hand, New Jersey, Florida, and Maryland do not appear to make such a distinction. (*See also* Doc. No. 405 at 7.) Ocwen's acquisition of PHH via a stock purchase thus implicates a true conflict between California law and the law of New Jersey, Florida, and Maryland.

Turning to the third step of the test, the court agrees with both plaintiffs and respondents that California has no interest in the application of its law in this matter, since neither PHH nor Ocwen are incorporated or based in California. The question then is whether Maryland, New Jersey, or Florida has the most compelling interest in applying its laws to this controversy. Here, several factors weigh heavily, in the court's view, towards applying Maryland law. First, the Agreement and Plan of Merger (the "Merger Agreement") governing the Transaction between

Ocwen and PHH was executed pursuant to Maryland law. (*See* Doc. No. 402-10, Ex. 10 at 5) (resolving that the Merger Agreement be adopted "in accordance with Section 3-105 of [Maryland General Corporation Law]"). This created the reasonable expectation for the parties that the Transaction—and any resulting outgrowth such as the issue of successor liability—would be governed by Maryland law. *See Funai Elec. Co. v. Daewoo Elecs. Corp.*, No. C-04-01830 JCS, 2008 WL 8969091, at *9–10 (N.D. Cal. July 22, 2008). The California Supreme Court has also held that an entity's place of incorporation can be a determinative factor in deciding whether to apply a jurisdiction's laws. *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 471 (1992) (holding that a jurisdiction's "overriding interest in the internal affairs of corporations domiciled there would in most cases require application of its law") (citations omitted).

Accordingly, the court will apply Maryland law to determine if a transfer of interest has occurred.

**B.     Whether Ocwen is a Successor in Interest to PHH**

Under Maryland law, "a corporation which acquires the assets of another corporation is not liable for the debts and liabilities of the predecessor corporation" unless: "(1) there is an expressed or implied assumption of liability; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for debts." *Martin v. TWP Enterprises Inc.*, 227 Md. App. 33, 49 (2016) (citing *Baltimore Luggage Co. v. Holtzman*, 80 Md. App. 282, 290 (1989)); *see also CDS Family Tr. v. Martin*, No. 1:15-cv-02584-JMC, 2019 WL 858782, at *3 (D. Md. Feb. 22, 2019) ("[T]he existence of a corporate relationship, such as exists between parent and sibling corporations cannot, by itself, give rise to liability. It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)) (internal quotations omitted).

As explained below, the court cannot conclude—at least on the basis of the evidence currently proffered by plaintiffs in support of the pending motion—that Ocwen is a successor in

interest to PHH. The undersigned has considered holding an evidentiary hearing and allowing limited discovery to conclusively resolve this issue. *See Luxliner*, 13 F.3d at 75–76 (holding that evidentiary hearings should be held to decide disputed factual issues when "a decision on a Rule 25(c) motion [would] effectively impose[] liability"); *Sunnyside Dev. Co., LLC v. Opsys Ltd.*, No. C 05 0553 MHP, 2007 WL 2462142, at *6 (N.D. Cal. Aug. 29, 2007) (concluding that successor liability is "a highly factual inquiry that does not lend itself well to determination without a trial or, at the very least, an evidentiary hearing"). In the end, however this court has concluded that such an exercise is unnecessary at this time because joining Ocwen at this stage of litigation would not facilitate the resolution of the claims underlying this litigation.

 1. Whether a Merger Occurred

Plaintiffs contend that Ocwen's acquisition of PHH amounts to a merger, creating a single "newly combined company" that is liable for PHH's debts and liabilities. (Doc. No. 401-1 at 11–12.) As proof, plaintiffs point to Ocwen's SEC filings and press releases, which expressly describe the acquisition as a merger. (Doc. No. 401-1 at 11–12.) They also point to the Merger Agreement itself, noting that it calls for PHH to cease its existence upon consummation of the merger. (*See* Doc. No. 402-10, Ex. 10 at 16.) Plaintiffs also claim that, even if a formal merger did not occur, a *de facto* merger took place here because Ocwen: 1) acquired "all outstanding shares of PHH's common stock"; 2) appointed Glen A. Messina, PHH's former President and CEO, as President and CEO and to its Board of Directors; and 3) "absorbed PHH into its lending business and will have PHH simply continue its operations on a combined basis under a unified management." (Doc. No. 401-1 at 12.)

Respondents deny that a merger has occurred, arguing that they only used the term "merger" to refer generally to various methods of combining two or more organizations, not to specifically denote a merger whereby "two companies join, with only one single company emerging at the end." (Doc. No. 402 at 14.) They also assert that "neither [PHH nor Ocwen] ceased to exist" and that "there was no 'non-surviving' corporation" because "PHH Corporation maintains its own separate legal existence" and "operates under its own management structure" as "a viable, operational, [and] stand-alone company." (Doc. No. 402 at 5, 13–14.) This, they

argue, means that a merger—formal or otherwise—did not occur, precluding plaintiffs from holding Ocwen accountable for any potential judgment against PHH. (Doc. No. 402 at 8.)

      a. *Plaintiffs Have Failed to Prove That a Statutory Merger Was Consummated*

As a preliminary matter, the court notes that Ocwen's use of the term "merger" to describe its acquisition of PHH does not conclusively establish that a merger—as that term is statutorily defined—did in fact occur. *See, e.g.*, *United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 332 n.7 (1963) (noting that the "merger" at issue was "technically a consolidation" because the resulting corporation was different than either of the constituent entities, whereas a merger involves the dissolution and absorption of one entity by another); *see also* MERGER (8), Black's Law Dictionary (11th ed. 2019) (defining a corporate merger, which "must conform to statutory formalities", as "[t]he absorption of one organization (esp. a corporation) that ceases to exist into another that retains its own name and identity and acquires the assets and liabilities of the former").[2]

Because the Transaction was executed pursuant to Maryland law, (*see* Doc. No. 402-10, Ex. 10 at 5), the court looks to Maryland law to determine whether a merger occurred. Under Maryland law, a merger necessarily requires, among other things, that "[t]he acquiring entity merges with or into the subject corporation."[3] Md. Code Ann., Corps. & Ass'ns § 3-106.1(c)(1)(v); *see also id.* at § 3-114(b) (providing that, in a merger, "[t]he separate existence of each corporation, . . . except the successor, ceases").

/////

---

[2] This contrasts with a consolidation or buyout, which are often colloquially referred to as mergers. *Compare* MERGER (8) *with* CONSOLIDATION (5) *and* BUYOUT, Black's Law Dictionary (11th ed. 2019). Whether a transaction is a *de facto* merger is another matter. *See* MERGER (8), Black's Law Dictionary (11th ed. 2019) (noting that a *de facto* merger is a "transaction [that] does not meet the statutory requirements for a merger" but "that has the economic effect of a statutory merger" and "is cast in the form of an acquisition or sale of assets or voting stock").

[3] A statutory merger has other necessary elements, *see* Md. Code Ann., Corps. & Ass'ns § 3-106.1, but the court need only analyze the requirement that an acquiring entity merge with or into the subject corporation to decide the pending motion.

8

According to plaintiffs, the Merger Agreement at issue here explicitly states that PHH would cease to exist upon consummation of the merger.[4] (*See* Doc. No. 402-10, Ex. 10 at 16.) Respondents, however, strenuously deny that a merger has occurred, arguing that "PHH Corporation continues to operate and do business as a stand-alone company." (Doc. No. 402 at 10.) In support of its contention, respondent proffers a February 19, 2019 search from the

---

[4] Indeed, the Merger Agreement expressly states:

> This AGREEMENT AND PLAN OF MERGER, dated as of February 27, 2018 (this "Agreement"), is by and among Ocwen Financial Corporation, a Florida corporation ("Parent"), PHH Corporation, a Maryland corporation and a direct wholly-owned subsidiary of Parent ("Merger Sub" and, together with Parent, the "Acquirer Parties"), and POMS Corp, a Maryland corporation (the "Company" and together with Parent and Merger Sub, the "Parties" and each, a "Party").
>
> . . . .
>
> Upon the terms and subject to the conditions set forth in this Agreement at the Effective Time, Merger Sub [referring to PHH] shall merge with and into the Company [referring to POMS Corp] (the "Merger"), and the separate existence of Merger Sub shall cease. The Company shall continue as the surviving entity in the Merger (the "Surviving Corporation") and shall continue its existence under the Laws of the State of Maryland, with all its rights, privileges, immunities, powers and franchises. The Merger shall have the effects set forth in the [Maryland General Corporation Law].

(Doc. No. 402-10, Ex. 10 at 5, 16) (explanatory brackets added). However, the court has identified a discrepancy. The Merger Agreement refers to PHH as a wholly-owned subsidiary of Ocwen and seems to call for PHH's absorption by POMS Corp ("POMS"), the company that would appear to survive as a subsidiary wholly-owned by Ocwen. The Merger Agreement thus appears to presuppose Ocwen's ownership of PHH, contradicting a fact that both plaintiffs and respondents agree on: that the Transaction *resulted* in Ocwen's acquisition of PHH. However, Ocwen and PHH's October 4, 2018 Form 8-K filings with the SEC, *see Mendler v. Winterland Prod., Ltd.*, 207 F.3d 1119, 1121–23 nn. 4–12 (9th Cir. 2000) (considering information that no party had referenced during court proceedings), refer to POMS as a wholly-owned subsidiary of Ocwen and state that, pursuant to the Merger Agreement, POMS was merged into PHH, "with PHH continuing as the surviving corporation and a wholly-owned subsidiary of Ocwen." Ocwen Financial Corp., Current Report (Form 8-K) (Oct. 4, 2018), https://www.sec.gov/Archives/edgar/data/873860/000149315218014073/form8-k.htm; *see also* PHH Corp., Articles of Merger of POMS Corp with and into PHH Corporation (Ex. 3.1 to Form 8-K) (Oct. 4, 2018), https://www.sec.gov/Archives/edgar/data/77776/000110465918060466/a18-36235_1ex3d1.htm. The court notes that it does not take these SEC filings for the truth of the matter asserted; rather, the court has identified this discrepancy only in order to illustrate the lack of clarity and accuracy in the briefing submitted in connection with the pending motion.

Maryland Secretary of State's website that shows that PHH remains an incorporated entity, (*see* Doc. No. 402-5, Ex. 5), and a September 27, 2018 SEC Form 8-K filing that discloses certain mandates imposed on Ocwen by New York's Department of Financial Services, such as the requirement to "ensure that PHH has competent executive management in place" and a conditional prohibition on Ocwen appointing "anyone to serve on the board of directors of PHH or to a senior management position at PHH[.]" (Doc. No. 402-9, Ex. 9 at 3.)

The Merger Agreement and public references to a "merger" notwithstanding, the evidence proffered by respondents does suggest that PHH continues to exist as a separate company. Barring more substantial evidence presented by plaintiffs, the court must conclude that they have failed to prove at this time that a statutory merger occurred between Ocwen and PHH.

    b. *Plaintiffs Have Also Failed to Prove That a* De Facto *Merger Occurred*

"[I]n order for a court to find a *de facto* merger situation[,] most of the elements of a formal merger must be present[,] with the obvious exception of a specific designation of the agreement as a merger." *Cummings v. United Artists Theatre Circuit, Inc.*, 237 Md. 1, 23 (1964). These elements include:

> [A] transfer of all the shares and all the assets of one corporation to the other; an assumption of all the liabilities of the one corporation by the other; a 'pooling of interests' of the corporations; the dissolution of one of the corporations; the combination of the officers and directors of both corporations; and the shareholders of the dissolved corporation . . . surrender[ing] their shares and receiv[ing] newly issued shares of the surviving corporation.

*Id.* at 23–24.

As noted above, it appears that, post-Transaction, PHH continues to operate as a distinct corporate entity. (*See* Doc. Nos. 402 at 5; 402-5, Ex. 5.) Moreover, plaintiffs have produced little evidence to show that Ocwen and PHH's leadership were unified under one structure. (*See* Doc. Nos. 402 at 14; 402-9, Ex. 9 at 3) (noting that PHH retains its own executive management and staff). Although plaintiffs point to the fact that Ocwen hired several of PHH's former executives, including its former President and CEO and its former Chief Risk and Compliance Officer, (*see* Doc. Nos. 401-1 at 8–9 n. 5; 402 at 14), "[s]uch evidence . . . is unpersuasive because" if "'[i]t is entirely appropriate for directors of a parent corporation to serve as directors

of its subsidiary,'" then the fact that two of Ocwen's executives *used* to work at PHH "alone may not serve to expose the parent corporation to liability for its subsidiary's acts.'" *See CDS Family Tr. v. Martin*, No. 1:15-cv-02584-JMC, 2019 WL 858782, at *3 (D. Md. Feb. 22, 2019) (quoting *Bestfoods*, 524 U.S. at 69). Consideration of these two factors—a separate corporate identity and management team—are enough to take this case out of the *de facto* merger exception. *See Baltimore Luggage*, 80 Md. App. at 299 (holding that the "continued existence" of the purchased company and "the change in management and ownership are sufficient to take this case out of the continuation exception").[5]

Even if that was not the case, Maryland courts have cautioned against weighing these factors too heavily, emphasizing that to find that liability "exists merely because there was common management and ownership without considering other factors is to disregard the separate identities of the corporation without the necessary considerations that justify such an action." *Martin*, 227 Md. App. at 55. Moreover, plaintiffs have made no showing as to the other relevant factors, including whether the Transaction led to: 1) the transfer of all of PHH's assets to Ocwen; 2) Ocwen's assumption of all of PHH's liabilities; or 3) the conversion of PHH stock into Ocwen stock.[6] In sum, at this time plaintiffs have simply failed to show that a *de facto* merger occurred between Ocwen and PHH.

2.  Plaintiffs Have Not Proven That Ocwen is a Mere Continuation of PHH

The court turns finally to the mere continuation exception, which plaintiffs assert applies to the Transaction. In Maryland, this exception "permits recovery against the successor corporation where the successor is essentially the same corporate entity as the predecessor

---

[5] The court applies the Maryland Court of Special Appeals' holding regarding the mere continuation exception here because "the mere-continuation and de-facto-merger doctrines are so similar that they may be considered a single exception." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003) (citations omitted); *Funai Elec. Co.*, 2008 WL 8969091, at *7 (noting that "the de facto merger exception is really a subset of the mere continuation exception") (citing *Franklin v. USX Corp.*, 87 Cal. App. 4th 615, 625 (2001)); *compare Cummings*, 237 Md. at 23 (describing the elements of a *de facto* merger) with *Baltimore Luggage*, 562 A.2d at 1293 (identifying the indicia of a mere continuation).

[6] The court addresses plaintiffs' contention that Ocwen acquired *some* of PHH's assets and liabilities below in analyzing whether Ocwen is a mere continuation of PHH.

corporation. The exception is designed to prevent a situation whereby the *specific purpose of acquiring assets* is to place those assets out of reach of the predecessor's creditors." *Martin*, 227 Md. App. at 52–53 (internal quotation marks and citation omitted).[7] "[T]he underlying theory of the exception is that, if a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability," because allowing "the predecessor to escape liability by merely changing hats would amount to fraud." *Baltimore Luggage*, 80 Md. App. at 297.

The following factors are indicia of continuation:

> common officers, directors, and stockholders; and only one corporation in existence after the completion of the sale of assets. While the two foregoing factors are traditionally indications of a continuing corporation, neither is essential. Other factors such as continuation of the seller's business practices and policies and the sufficiency of consideration running to the seller corporation in light of the assets being sold may also be considered.

*Baltimore Luggage*, 562 A.2d at 1293 (citations omitted).[8] In addition, Maryland courts "look[] beyond the traditional indications of continuation . . . to other factors that [could] evidence the continuation of the corporate entity" in order to achieve "the underlying purpose of the 'mere continuation' exception." *Martin*, 227 Md. App. at 60. Overall, "[t]he most important factors in determining whether the transferee is the 'mere continuation' of the transferor are the ownership

/////

---

[7] "In Maryland, only three [other] cases have addressed the 'mere continuation' exception to the general rule against successor liability[.]" *Martin*, 227 Md. App. at 54 (citing *Acad. of IRM v. LVI Envtl. Servs., Inc.*, 344 Md. 434, 437 (1997); *Nissen Corp. v. Miller*, 323 Md. 613, 615 (1991); and *Baltimore Luggage*, 80 Md. App. at 296). In all four of these cases, Maryland courts concluded that the successor corporations were not a mere continuation of the predecessor corporation.

[8] The court in *Martin*, analyzing the Maryland cases that had examined the mere continuation exception, provided a similar list of factors:

> (1) any change in ownership and management, (2) the continued existence of the selling corporation, (3) the adequacy of consideration, (4) the transfer of any "instrumental" employees from the predecessor to the successor, and (5) the purpose of the asset sale.

*Martin*, 227 Md. App. at 60 (citations omitted).

12

of the seller and the buyer and the purpose of the transaction." James J. Hanks, Jr., *Maryland Corporation Law*, "Successor Liability" in Transfer of Assets § 9.10 (2019).

Because the mere continuation inquiry is similar to the *de facto* merger test, the court need not repeat that analysis verbatim here; suffice it to say, the court concludes that many of the indicia of mere continuation do not appear to be present in this case, at least based upon the evidence proffered by plaintiffs to date. The court will focus below on the remaining indicia placed at issue by the pending motion.

First, the court notes that there was the transfer of at least one "instrumental" employee from PHH to Ocwen: Albert J. Celini, the former Chief Risk and Compliance Officer at PHH who is now Senior Vice President, Chief Risk and Compliance Officer at Ocwen. (Doc. Nos. 401-1 at 8–9 n. 5; 402 at 14); *see Martin*, 227 Md. App. at 60 (holding that the transfer of "instrumental" employees from the predecessor corporation to the successor can be an indicia of continuation).[9] But this employee transfer alone fails to provide a sufficient basis for the court to conclude that Ocwen is a mere continuation of PHH. *See CDS Family Tr.*, 2019 WL 858782, at *3; *Baltimore Luggage*, 80 Md. App. at 299; *Martin*, 227 Md. App. at 55.

Plaintiffs also allege that Ocwen acquired some of PHH's assets, apparently alluding to the possibility that Ocwen might drain PHH's assets "so as to leave PHH Corporation unable to pay any potential judgment." (Doc. No. 405 at 11.) Plaintiffs point specifically to: 1) an Ocwen press release referring to the "newly combined company"; 2) Ocwen's unaudited pro forma combined financial statements as of June 30, 2018 referencing "certain acquired assets"; and 3) Ocwen's quarterly SEC Form 10-Q filing for the period ending September 30, 2018, noting Ocwen's assumption of a mortgage repurchase facility. (*See* Doc. No. 405 at 11.)

/////

/////

/////

---

[9] Although plaintiffs point to Ocwen's hiring of Glen A. Messina, PHH's former President and CEO, as another indicator of mere continuation, the court notes that Messina had left PHH in June 2017 and was not appointed by Ocwen until October 2018, well over a year later. (Doc. No. 401-1 at 7–8.)

Even assuming those assets were acquired,[10] plaintiffs have made no showing that the purpose of the acquisition was to move those assets out of reach of PHH's creditors. *Martin*, 227 Md. App. at 52–53 ("The exception is designed to prevent a situation whereby the *specific purpose of acquiring assets* is to place those assets out of reach of the predecessor's creditors.") (internal quotation marks and citation omitted). Rather, it is undisputed that, as part of the Transaction, PHH shareholders received $360 million in cash in consideration, (*see* Doc. No. 401-3, Ex. 1), and that Ocwen assumed $119 million in liabilities from PHH. (Doc. No. 402 at 9.) These terms suggests that: 1) there may have been adequate consideration for the Transaction and that some of the consideration ran directly to PHH, *see Martin*, 227 Md. App. at 60 (stating that Maryland courts "assess[] the adequacy of consideration as a factor and consistently f[ind] the exception [does] not apply where consideration was adequate"); and 2) Ocwen assumed the $119 million in liabilities in a "specific, defined, and limited carve out" that evinces an intent *not* to absorb all of PHH's debt and liabilities.[11] *See id.* at 62 (holding that "the 'mere continuation' exception [does] not apply . . . where there [is] no evidence of fraudulent purpose or inadequate consideration" and the acquiring company assumed part of the acquiree's liabilities).

Based on the evidence currently before the court, the undersigned concludes that plaintiffs have also failed to show that Ocwen is a mere continuation of PHH.

**C.      Whether Joinder Would Facilitate the Conduct of Litigation**

Even if plaintiffs had shown that PHH merged into Ocwen or that Ocwen is a mere continuation of PHH, joinder remains a matter that lies in the discretion of the court. *See In re*

---

[10] On closer inspection of plaintiffs' cited evidence, the court notes that all three documents explicitly state that PHH became Ocwen's wholly-owned subsidiary as a result of the Transaction. (*See* Doc. Nos. 401-3, Ex. 1; 402-2, Ex. 2; 402-3, Ex. 3.) In addition: 1) the press release referenced provides no information as to whether Ocwen transferred any of PHH's assets to itself; 2) the pro forma financial statement notes that Ocwen and PHH's balance sheet is presented in a combined fashion in order "to illustrate the estimated effects of the Merger," and does not necessarily reflect the transfer of any of PHH's assets to Ocwen; and 3) the Form 10-Q filing's mention of a mortgage repurchase facility specifies that it is an uncommitted facility and includes no information as to whether PHH or Ocwen has actually drawn on the facility. (*See id.*)

[11] If anything, Ocwen's assumption of some of PHH's debt may appear to put PHH in a stronger financial position.

*Bernal*, 207 F.3d at 598 (noting that Rule 25(c) is "merely a discretionary determination by the trial court that [joinder] would facilitate the conduct of the litigation").

At this time, the court is not convinced that Ocwen's joinder is necessary, as its presence would likely not facilitate the conduct of litigation at this late stage of this action. As plaintiffs have pointed out, this twelve-year-old case is nearing trial. (Doc. No. 401-1 at 6.) Joining Ocwen could lead to even further delay because: 1) Ocwen's trial counsel would need to review the litigation record and develop its own theories and defenses to the case; and 2) Ocwen has already indicated that it would seek "significant discovery and further briefing on the underlying question of its liability," among other unforeseen possibilities. This, in turn, would require the court to devote significant judicial resources to address a speculative issue,[12] since plaintiffs have presented no evidence establishing that PHH would be unable to satisfy an adverse judgment entered against it in this case. *See McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, No. CIVS022669 FCD KJM, 2006 WL 658100, at *3 (E.D. Cal. Mar. 13, 2006) (noting that the late joinder of a party pursuant to Rule 25(c) could be denied when it would "require a significant investment of judicial time and resources" and could "complicate and substantially lengthen" litigation).

In any event, should plaintiffs prevail, any resulting judgment would be binding on defendants and any of their successors in interest. *See In re Bernal*, 207 F.3d at 598. For all of these reasons, the court will deny plaintiffs' motion to join Ocwen to this action. Nonetheless, the court acknowledges that plaintiffs' concerns may be justified. In the event that plaintiffs were to obtain evidence that Ocwen is moving PHH's assets out of the reach of potential creditors, renewal of this motion for joinder would be appropriate. Of course, plaintiffs can, alternatively, seek enforcement of any judgment they obtain in a separately filed action.

/////

/////

/////

---

[12] *See* Doc. No. 415 for more information regarding the Eastern District of California's judicial emergency.

15

**CONCLUSION**

Accordingly, plaintiffs' motion to join Ocwen Financial Corporation as a defendant in this action pursuant to Federal Rule of Civil Procedure 25(c) (Doc. No. 401) is denied without prejudice to its renewal.

IT IS SO ORDERED.

Dated: **April 1, 2020**

UNITED STATES DISTRICT JUDGE