UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFRAIN MUNOZ, individually and on behalf of all others similarly situated, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PHH MORTGAGE CORPORATION, et al., <br><br> Defendants. | No. 1:08-cv-00759-DAD-BAM <br><br><br> ORDER DENYING DEFENDANTS' MOTION TO REOPEN LAW AND MOTION <br><br> (Doc. No. 437) |

This matter is before the court on the motion to reopen law and motion filed on behalf of defendants PHH Corporation, PHH Mortgage Corporation, and PHH Home Loans, LLC (collectively, "PHH"), and defendant Atrium Insurance Corporation ("Atrium") (collectively, "defendants") on February 6, 2021. (Doc. No. 437.) Specifically, defendants seek to reopen law and motion for the purpose of filing a renewed motion for summary judgment on the issue of Article III standing. (*Id.*) Pursuant to General Order No. 617 addressing the public health emergency posed by the coronavirus pandemic, the court took this matter under submission to be decided on the papers. (Doc. No. 438.) For the reasons explained below, the court will deny the pending motion to reopen law and motion.

/////

1

**BACKGROUND**

Plaintiffs allege in this certified class action that defendants violated the anti-kickback provisions of Section 8 of the Real Estate Settlement Procedures Act ("RESPA") by requiring mortgage insurers to which PHH had referred private mortgage insurance ("PMI") business to enter into captive reinsurance agreements with Atrium, a reinsurer owned by PHH. According to plaintiffs, this requirement allowed defendants to extract kickbacks from those mortgage insurers for the PMI business that PHH had referred to them. Plaintiffs represent a class of individuals who "obtained residential mortgage loans originated and/or acquired by PHH and/or its affiliates on or after June 2, 2007 [through December 31, 2009], and, in connection therewith, purchased private mortgage insurance and whose loans were included within PHH's captive mortgage reinsurance arrangements." (*See* Doc. No. 417 at 3–4.)

This case has been pending since 2008, and the question of Article III standing has been addressed twice by the court. First, on September 18, 2009, the court denied defendants' motion for judgment on the pleadings, rejecting their argument that plaintiffs lacked standing because they did not allege that they were overcharged for PMI premiums and concluding instead that overcharging is not required for standing under Section 8 of RESPA. (Doc. No. 60 at 8–11.) Second, on August 18, 2020, the court granted in part and denied in part the parties' cross motions for summary judgment, concluding again that overcharging is not required for standing under Section 8 of RESPA and also that plaintiffs have adequately demonstrated their standing to proceed with their RESPA claim because their allegation "that they were not provided a meaningful choice as to whether they wished to participate in a captive reinsurance program constitutes an allegation that they suffered a concrete, particularized harm—one explicitly identified by Congress." (Doc. No. 417 at 44–45.)

Following the court's ruling on summary judgment, the court held a status conference on September 2, 2020 to discuss scheduling a date for trial and to explain the difficulties in doing so given the judicial emergency in this district and the court's closure during the ongoing coronavirus pandemic. (Doc. No. 421.) Several of defendants' attorneys appeared at that conference and expressed defendants' position with regard to trial scheduling, anticipated length

| | |
|---|---|
|1| of trial, and possible consent to magistrate judge jurisdiction.  Neither party raised any concerns |
|2| regarding the court's order on summary judgment at that status conference.  Notably, defense |
|3| counsel did not raise any concern as to the court's conclusion on the issue of standing; indeed, the |
|4| issue of standing was not raised at all during that status conference. |

Following the status conference, on September 17, 2020, the court scheduled a pretrial conference for November 30, 2020.  (Doc. No. 422.)  However, on October 16, 2020, the parties filed a joint stipulation to continue the pretrial conference for 60 days because defendants had retained new counsel and plaintiffs had agreed to accommodate defendants' request for additional time for their new counsel to become more familiar with the matter.  (Doc. No. 429.)

On January 15, 2021, the parties submitted their joint pretrial statement as required in advance of the pretrial conference, which the court held on February 1, 2021.  (Doc. No. 431.)  In that pretrial statement and at the pretrial conference, defendants stated their belief that there is a threshold issue in this case regarding whether plaintiffs have standing to bring their Section 8 RESPA claim, and as a result, defendants expressed their intention to file a renewed motion for summary judgment solely on that issue.  (Doc. Nos. 431, 435.)  At the pretrial conference and in the tentative pretrial order issued by the court thereafter, the court explained that because defendants had not yet filed a motion to reopen law and motion in this case,[1] the court would not consider the merits of any standing arguments or motion for summary judgment on the issue of standing unless and until such a motion to reopen were granted.  (Doc. Nos. 435; 436 at 10.)  In response, defendants stated their intention to file a motion to reopen law and motion, supported by the requisite showing of good cause.  (*Id.*)

On February 16, 2021, defendants filed the pending motion to reopen law and motion for the sole purpose of filing a renewed motion for summary judgment on the issue of Article III standing.  (Doc. No. 437.)  Plaintiffs filed their opposition to the pending motion on March 2, 2021.  (Doc. No. 439.)  Defendants filed their reply thereto on March 9, 2021.  (Doc. No. 440.)

---

[1] September 9, 2016 was the deadline set for the filing of all dispositive motions in this case according to the operative scheduling order, which was entered by the court back on March 1, 2016.  (Doc. No. 330.)

3

**LEGAL STANDARD**

"The decision to modify a scheduling order is within the broad discretion of the district court." *FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023, 1030 (E.D. Cal. 2002). Pursuant to Rule 16 of the Federal Rules of Civil Procedure, a case "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Thus, when a party seeks to modify the scheduling order, including the reopening of law and motion after the dispositive motion filing deadline has passed, that party must first show "good cause." *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). In *Johnson*, the Ninth Circuit explained that

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted); *see also* 6A Wright & Miller, et al., Fed. Prac. & Proc. § 1522.2 (3d ed. 2018) ("What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case.").

A party may demonstrate good cause to modify a scheduling order where it shows that: (i) it has been diligent in assisting the court in creating a workable scheduling order; (ii) despite its diligent efforts to comply with the deadline in the scheduling order, its noncompliance was due to developments that were not reasonably foreseen or anticipated; and (iii) it was diligent in seeking to modify the scheduling order. *See Dickey v. Vital One Health Plans Direct, LLC*, No. 1:18-cv-01399-DAD-BAM, 2019 WL 3892374, at *1–2 (E.D. Cal. Aug. 19, 2019).

Retention of new counsel alone does not support a finding of good cause to modify the scheduling order. *See Lehman Bros. Holdings v. Gateway Funding Diversified Mortg. Servs., L.P.*, 785 F.3d 96, 102 (3d Cir. 2015) (denying motion to extend expert discovery deadline where

defendant decided to change attorneys before trial and its new counsel "was unfamiliar with the case," concluding that "counsel's unfamiliarity with the case did not make it impossible to obtain evidence—more diligent discovery was certainly possible, albeit by previous counsel"); *Buchanan Cty., Virginia v. Blankenship*, 545 F. Supp. 2d 553, 555 (W.D. Va. 2008) (denying motions to dismiss brought under Rule 12(b)(6) and 12(b)(1) for lack of jurisdiction because motions were filed four months after the deadline for the filing of dispositive motions and defendants failed to show good cause for the late filing). In *Buchanan*, the court specifically recognized that "defendants have recently obtained new counsel, but that alone is insufficient reason for ignoring the scheduling deadlines." 545 F. Supp. 2d at 555 n. 2.

In addition, good cause is not shown merely because there is a motion pending in the case that may alleviate the party's need for a modification to the scheduling order. *See Washington v. Andrews*, No. 1:07-cv-00886-AWI, 2012 WL 5520413, at *2 (E.D. Cal. Nov. 14, 2012) (denying defendants' motion to modify the scheduling order to enable the filing of a summary judgment motion nearly two years after the dispositive motion filing deadline). It is instructive that in *Washington*, the defendants argued that they were diligent because their delay was due to a change in counsel and due to their pending vexatious litigant motion, which they anticipated would be granted and dispose of the case. *Id*. The court rejected defendants' argument regarding their new counsel, noting "a mere change in counsel is not a basis to find good cause supporting Rule 16 relief." *Id*. The court also found that defendants were not diligent, noting that "[w]ithout suggesting that optimism as to one motion might justify delay in filing another, Defendants delayed in seeking the instant relief for more than a year after denial of the vexatious litigant motion. They give no justification for that delay." *Id*.

## ANALYSIS

In their pending motion, defendants contend that there is good cause to reopen law and motion in this case to allow them to file a renewed motion for summary judgment on the sole issue of Article III standing because they have been diligent, their motion would promote judicial economy, and to allow the filing of their motion at this time would not prejudice plaintiffs. (Doc. No. 437 at 12–18.)

### A.     Defendants' Diligence

Defendants assert that the court's August 12, 2020 order "prompted the need to evaluate the factual support for the allegations on which the court based its standing ruling," and since then, they have been diligent in raising the standing issue. (*Id.* at 12, 14.) Defendants emphasize that the parties did not brief the issue of standing based on an alleged lack of meaningful disclosure or choice, the parties did not present evidence on this point in connection with the prior summary judgment motions, and standing on that basis was not discussed during oral argument on the motions for summary judgment. (*Id.* at 12.) Because the court found that plaintiffs have standing based on their *allegations* that defendants provided inadequate disclosure and notice to borrowers regarding the reinsurance agreements at issue, according to defendants, the "necessary next step is to test the factual support for plaintiffs' nondisclosure allegations." (*Id.*) Rather than wait to test those factual allegations at trial, defendants seek to do so before trial by way of a renewed motion for summary judgment. In addition, defendants assert that their claimed need to pursue such a renewed motion on the issue of standing "became clear only in response" to the court's August 12, 2020 order, so their diligence should be measured as of that date. (*Id.* at 14.) Defendants contend that they diligently raised the standing issue in the joint pretrial statement that the parties filed with the court on January 15, 2021, five months after the court's summary judgment ruling was issued. (*Id.*) Defendants explain that they had retained new counsel at the end of September 2020, and in early October 2020, their new counsel reviewed the disclosure documents and determined that, in their view, plaintiffs could not substantiate their disclosure allegations with evidence, making a renewed motion for summary judgment focusing that issue appropriate. (*Id.* at 10.) According to defendants, they acted promptly in raising this standing issue with plaintiffs approximately two months later on December 2, 2020, when they provided their initial draft of the joint pretrial statement, which included defendants' new standing arguments. (*Id.*)

In their opposition to the pending motion to amend the scheduling order, plaintiffs counter that defendants cannot establish their diligence because they could have challenged plaintiffs' allegations of inadequate disclosure well before the court's August 12, 2020 summary judgment

order. (Doc. No. 439 at 5.) According to plaintiffs, defendants could have raised this issue before the dispositive motion filing deadline of September 9, 2016 because "at that time, the years-long discovery period in this case had already closed and all of the facts or evidence that defendants needed to bring such a motion were in the record." (*Id.*) In addition, plaintiffs argue that even if the court's August 12, 2020 order brought this standing issue to defendants' attention, the proper and diligent course of action at that point would have been to seek a motion for reconsideration of the court's August 12, 2020 order, which defendants did not do. (*Id.* at 6.) With regard to defendants' retention of new counsel, plaintiffs first emphasize that defendants were represented by competent and sophisticated counsel when the court issued its August 12, 2020 order, and their counsel chose—wisely, in plaintiffs' view—not to raise the standing issue then in a motion for reconsideration or otherwise, recognizing the futility of such a motion. (*Id.*) Second, plaintiffs assert that although defendants retained new counsel in September 2020, their new counsel did not file a motion for reconsideration and instead "waited for months to raise with the court the standing issue they now seek to relitigate." (*Id.*) Accordingly, plaintiffs urge the court to deny defendants' motion to modify the scheduling order in order to reopen law and motion based on defendants' failure to show diligence alone.

In reply, defendants argue that they could not have raised this standing issue by the dispositive filing deadline as plaintiffs suggest. (Doc. No. 440 at 4–5.) Defendants not only reiterate that the concept of standing based on inadequate disclosures was raised for the first time by the court in the August 12, 2020 summary judgment order, but they also emphasize that the court's reasoning in that order relied on intervening Supreme Court authority—*Frank v. Gaos*, __ U.S. __, 139 S. Ct. 1041, 1044 (2019), a decision issued years after the dispositive motion filing deadline in this case had passed. (Doc. No. 440 at 5.) In addition, defendants contend that a motion for reconsideration would not have been an appropriate vehicle to raise their standing arguments because the court was not presented with, and thus had not considered, the actual evidence with respect to the disclosures at issue. (*Id.* at 6–7.) That is, the court had considered only plaintiffs' allegations that that the disclosures were inadequate. (*Id.* at 7.) Defendants contend that they do not seek to have the court reconsider those *allegations* or reconsider its

7

determination that standing turns on the adequacy of the disclosures; they seek "only to put plaintiffs to their proof on the alternative theory of standing that the court identified." (*Id.* at 6.) In this way, defendants characterize their proposed motion for summary judgment not as a challenge to the court's reasoning but as their effort to act on the court's reasoning. (*Id.* at 6.) Accordingly, defendants argue that their decision not to file a motion for reconsideration, either immediately after the court's summary judgment ruling or at any other point since then, should not be construed as a lack of diligence on their part. (*Id.* at 6–7.)[2]

The court concludes that defendants have not been diligent under these circumstances. First, defendants' retention of new counsel, alone, is clearly insufficient to support a finding of diligence. *See Lehman Bros. Holdings*, 785 F.3d at 102; *Buchanan*, 545 F. Supp. 2d at 555 n. 2. Moreover, defendants' new counsel did not replace defendants' then-current counsel in entering their appearance in this action. On October 6, 2020, several attorneys from Goodwin Procter LLP filed their *pro hac vice* applications to appear on behalf of defendants in this case (Doc. Nos. 423–25), but defendants' other counsel from Weiner Brodsky Kider PC (attorneys David M. Souders and Sandra B. Vipond) remain on the docket also as counsel of record and they have not sought to terminate their representation of defendants in this action.[3] Defendants have not offered any explanation for why their counsel at the time the August 12, 2020 summary judgment order

---

[2] Defendants also contend that it was reasonable for them to raise this issue for the first time in the joint pretrial statement because Local Rule 281 contemplates that the parties may identify any pretrial motions in the pretrial statement. Local Rule 281 provides that the pretrial statement shall include a section titled "Further Discovery or Motions," wherein the parties can set forth "[a]ny requests for further discovery or pretrial motions." L. R. 281(b)(13). Local Rule 281 further explains that:

> Where discovery and/or law and motion has been terminated by a Court order, counsel shall set forth the grounds for relief from that order and why a motion to be relieved was not made before the date ordered in the status conference for termination. Motions for relief at pretrial are not favored and will ordinarily be denied unless the moving party makes a strong showing.

L. R. 281(b)(13).

[3] Indeed, in those *pro hac vice* applications then-current local defense counsel Joseph S. Genshlea of Joe Genshlea Law and Mediation is again designated as local counsel. (Doc. Nos. 423–25.)

8

was issued could not have similarly determined based on their review of the disclosure documents—which they had access to for the many years that this case has been pending—that plaintiffs would not be able to satisfy their burden of proof in support of their allegations of inadequate disclosure. Defendants have also not offered any explanation for why they did not raise this standing issue at the status conference held on September 17, 2020. Even crediting defendants' argument, which is essentially that in their new counsel's review of the disclosure documents in the first week of October 2020 they saw something that defendants' other counsel was either previously unable to see or attributed less significance to, defendants still did not promptly raise this issue with the court after their new counsel appeared in this case. Specifically, on October 16, 2020—a week after defendants' new counsel apparently determined that in their view plaintiffs would be unable to prove up their inadequate disclosure allegations—the parties filed a stipulation to continue the pretrial conference date by 60 days "to allow new counsel [to] become more familiar with the matter." (Doc. No. 429.) Nowhere in that stipulation did defendants mention any jurisdictional issue or raise a concern that plaintiffs might lack standing to maintain their RESPA claim. Moreover, given that defendants first raised their new standing arguments with plaintiffs when they provided their initial draft of the joint pretrial statement on December 2, 2020, it appears that defendants did not alert plaintiffs to their concerns about standing when they stipulated to continue the pretrial conference. Under these circumstances, the court concludes that defendants' retention of additional new counsel simply does not support a finding that defendants were diligent in raising the standing issue with the court five months after the court's August 12, 2020 summary judgment order.

Second, the court is not persuaded that merely because its August 12, 2020 order supposedly introduced the concept that plaintiffs have standing based on inadequate disclosures—an issue that the parties had not briefed or presented evidence on—it necessarily follows that defendants could not have raised that issue themselves in their original motion for summary judgment. Defendants seek to challenge plaintiffs' ability to put forth evidence to support their allegations regarding the adequacy of defendants' disclosure, but defendants do not explain why that challenge could not have been brought before the dispositive motion filing deadline. At

9

bottom, defendants' argument appears to be that they did not know that these particular allegations would form the basis of the court's conclusion with regard to standing, so they did not challenge plaintiffs' evidentiary showing as to these allegations in their original motion for summary judgment. While that may be true, it does not suffice to show diligence.

Third, the court is not persuaded that there had been any intervening authority that would justify defendants' delay in raising their challenge to plaintiffs' Article III standing based on inadequate disclosure. To the extent defendants believed otherwise, they could have filed a notice of supplemental authority during the four years that the parties' cross motions for summary judgment were under submission. They did not do so. Although defendants point to the court's reference to the Supreme Court's decision in *Frank v. Gaos*, __ U.S. __, 139 S. Ct. 1041 (2019) in its August 12, 2020 order, defendants misconstrue that reference as reliance. The court referred to *Frank* merely to note that the decision in *Edwards v. First Am. Corp.*, 610 F.3d 514, 518 (9th Cir. 2010)—a decision the court relied on a decade ago—had since been abrogated.[4] In its August 12, 2020 order, the court did not rely on the decision in *Frank*.[5] Rather, the court's reasoning was based upon application of the standing analysis set forth by the Supreme Court in May 2016 in its decision in *Spokeo* coupled with consideration of Congress's intent in enacting RESPA and the 1997 HUD Letter—all of which pre-dated the dispositive motion filing deadline

/////

---

[4] In its September 18, 2009 order denying defendants' motion for judgment on the pleadings, the court found the district court's order in *Edwards* to be well-reasoned and persuasive in reaching its conclusion that overcharging is not required for standing under RESPA. (Doc. No. 60 at 10–11) (citing *Edwards v. First Am. Corp.*, 517 F. Supp. 2d 1199, 1204 (C.D. Cal. 2007)). In 2010, the Ninth Circuit affirmed in part the district court's order in *Edwards* that this court had found persuasive. *See Edwards*, 610 F.3d 514. Six years later, the Supreme Court abrogated the Ninth Circuit's decision in *Edwards*. *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016).

[5] In its August 12, 2020 order, the court mistakenly stated that the Ninth Circuit's decision in *Edwards* was abrogated by the Supreme Court's decision in *Frank*. (Doc. No. 417 at 43.) As noted in *Frank*, the decision in *Edwards* was abrogated by the Supreme Court in its decision in *Spokeo*. *See Frank*, 139 S. Ct. at 1046 ("Our decision in *Spokeo* abrogated the ruling in *Edwards* that the violation of a statutory right automatically satisfies the injury-in-fact requirement whenever a statute authorizes a person to sue to vindicate that right.").

in this case and all of which were addressed by the parties in their cross motions for summary judgment. (*See* Doc. No. 342-1 at 26–27.)[6]

For these reasons, the court finds that defendants have not been diligent in raising this standing issue so as to justify modifying the scheduling order in this case. Although this is reason enough to deny defendants' motion to reopen law and motion, the court will nevertheless briefly address defendants' other arguments.

**B.      Promote Judicial Economy and Lack of Prejudice to Plaintiffs**

Defendants assert that resolving the threshold Article III standing issue before trial would promote judicial economy and would not prejudice the plaintiffs. (Doc. No. 437 at 15.) Defendants emphasize the judicial economy in requiring plaintiffs to satisfy their burden on this jurisdictional issue "to show—not just allege—that they have Article III standing" before expending resources on a trial. (*Id.* at 16.) In addition, defendants argue that allowing them to file their anticipated renewed motion for summary judgment would promote judicial economy because that motion is potentially case dispositive. (*Id.*) Moreover, according to defendants, the standing issue is well-suited for resolution on summary judgment because whether plaintiffs can show that they received "insufficient disclosure or choice is a legal question on which the pertinent facts—the contents of the disclosure—are undisputed." (*Id.*) Defendants also argue that plaintiffs would not be prejudiced by the court reopening law and motion practice for this sole purpose because the trial date in this case has not been set, and the issue of standing "can be fully litigated without any impact on the remaining case schedule." (*Id.* at 17.)

/////

---

[6] Specifically, in their motion for summary judgment, defendants asserted that "following the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the class of plaintiffs must demonstrate a concrete injury in fact. This they cannot do, as the rates paid by the class members for [PMI] were unaffected by the MIs' decision to cede a portion of the risk to the reinsurer." (Doc. No. 342-1 at 7.) Defendants focused their standing attack solely on their belief that "plaintiffs cannot show that they paid more for their [PMI] as a result of the reinsurance arrangements." (*Id.* at 26.) But defendants' strategic choice in basing their standing attack solely on this point does not mean that they were precluded from simultaneously challenging plaintiffs' ability to make a sufficient evidentiary showing to prove that the disclosures made by defendants were inadequate.

11

In their opposition, plaintiffs argue that reopening law and motion at this late date would not promote judicial economy because "the proposed successive summary judgment motion would directly implicate disputed facts that this court, in ruling on the parties' previous summary judgment motions, determined cannot be resolved prior to trial." (Doc. No. 439 at 5.) Plaintiffs counter defendants' assertion that this standing issue is well-suited for resolution via summary judgment by arguing that the court cannot adjudicate the adequacy of the disclosures at issue "simply by looking at their content." (*Id.* at 6.) Specifically, plaintiffs contend that "[t]he accuracy of the content of the disclosures themselves, i.e., representations that Atrium actually provided real reinsurance services, is intrinsically tied to the disputed factual issues in this case that are to be resolved at trial." (*Id.*) According to plaintiffs, "there is nothing to be gained by reopening motion practice to address the standing arguments" because "[i]f a jury finds that Atrium did not provide real reinsurance services, the disclosures to the contrary were false and misleading, and therefore not meaningful, thus conferring standing under the court's analysis." (*Id.*)

In reply, defendants disagree that the threshold issue of standing is intertwined with the merits of plaintiffs' RESPA claim and assert that the adequacy of the disclosures—based solely on their content—is a legal question resolvable on summary judgment. In support of their position, defendants cite only to the decision in *Loughlin v. Amerisave Mortg. Corp.*, No. 1:14-cv-3497-LMM-LTW, 2019 WL 8375920 (N.D. Ga. Nov. 12, 2019), *report and recommendation adopted*, 2020 WL 1809362 (N.D. Ga. Feb. 3, 2020). In *Loughlin*, the district court concluded that plaintiffs had standing to pursue their RESPA claim but granted summary judgment in favor of the defendants because plaintiffs failed to show that defendants paid a kickback in connection with their loans. 2019 WL 8375920 at * 2. In that case, the adequacy of disclosures was not the crux of the issue, nor was it even in dispute—indeed, the defendants did not provide *any* disclosures to one of the plaintiffs. *Id.* at * 2, 4, 11. Rather, the defendants in *Loughlin* argued that the plaintiffs lacked standing because they admitted that they would not have done anything different even if they had known about the affiliated business arrangement between their mortgage lender and the appraisal management service that the lender required them to use for

12

appraisal services. *Id.* at *6, 11. Thus, despite defendants' characterization, the decision in *Loughlin* does not support the proposition that determining the adequacy of disclosures under RESPA is always "a legal question, ripe for summary judgment." (Doc. No. 440 at 10.)

Here, the court is not persuaded that judicial economy would be promoted by allowing defendants to file a renewed motion for summary judgment on the issue of standing. Although the court recognizes that such a motion has the potential to be case dispositive, the court shares plaintiffs' view that a dispositive outcome is unlikely in this case given that the parties dispute the accuracy of the contents of the disclosures that defendants provided to plaintiffs. In particular, the parties dispute "whether Atrium provided actual reinsurance services," which directly relates "to the accuracy of PHH's risk transfer representations" in their disclosures to plaintiffs. (Doc. No. 439 at 14.) The court also notes that plaintiffs bear the burden of establishing their standing through all stages of litigation, and they will bear that burden of proof at trial. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing these [standing] elements . . . with the manner and degree of evidence required at the successive stages of the litigation."); *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1024 (9th Cir.), *cert. granted in part*, __U.S.__, 141 S. Ct. 972 (2020) ("Plaintiffs bore the burden of proving standing through evidence at trial.") (citing *Lujan*, 504 U.S. at 561); *Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1272–73 (10th Cir. 2018) ("At the final stage of litigation, the evidence produced at trial must adequately support the facts establishing standing."). In addition, defendants have not persuaded this court that the mere prospect that a motion may be dispositive is a sufficient basis upon which to permit a late filing of such a motion after the filing deadline for dispositive motions has long ago passed. If that were true, the filing deadline for dispositive motions set by the court's scheduling order would be rendered meaningless.

The court is also not convinced that plaintiffs would not be prejudiced by any delay in proceeding to trial if the court were to grant defendants' motion to reopen law and motion. The court recognizes that it continues to face difficulties in scheduling a realistic trial date in this case given the crisis caused by the ongoing lack of judicial resources in this district and the

coronavirus pandemic. But, even factoring in the soonest realistic trial date, defendants' argument that plaintiffs would not be prejudiced is premised on an incorrect assumption about the demands placed on this court by that judicial emergency. That is, defendants presume not only that the parties would have sufficient time to complete briefing on their renewed summary judgment motion before any realistic trial date, they also assume that the court would be able to promptly rule on their motion before that realistic trial date. Defendants make this assumption despite the fact that the court issued its decision on the parties' cross motions for summary judgment in August 2020, over two years after the parties notified the court in April 2018 that they their settlement efforts were unsuccessful and requested that the court resolve their pending cross motions. (Doc. No. 396.)

In sum, the court finds that defendants have failed to establish that they were diligent in raising the issue of plaintiffs' Article III standing, and defendants have failed to otherwise show good cause to modify the scheduling order for purposes of reopening law and motion in this case.

## CONCLUSION

For the reasons explained above, defendants' motion to reopen law and motion (Doc. No. 437) is denied.

IT IS SO ORDERED.

Dated: __May 12, 2021__  
_____  
UNITED STATES DISTRICT JUDGE