|  | UNITED STATES DISTRICT COURT<br>FOR THE EASTERN DISTRICT OF CALIFORNIA |  |
|---|---|---|
| EFRAIN MUNOZ, *individually and on behalf of all others similarly situated, et al.*, | | No. 1:08-cv-00759-MMB-BAM |
| Plaintiffs, | | **ORDER RESPECTING PLAINTIFFS' MOTION *IN LIMINE* #4 AND DEFENDANTS' MOTION *IN LIMINE* #2** |
| v. | | |
| PHH MORTGAGE CORPORATION, *et al.*, | | |
| Defendants. | | |

The parties have filed two motions *in limine* relating to evidence of regulatory oversight and compliance with state insurance regulations that to some degree represent flip sides of the same coin. Plaintiffs' motion *in limine* #4 seeks "to exclude Defendants, under Rules 402 and 403, from presenting any argument, evidence, or testimony, including expert testimony, that (i) Atrium was not out of compliance with any state insurance regulations at any time during the Class Period and (ii) no examination or audit of any Defendant by any state insurance regulator or examiner resulted in a finding of noncompliance with state insurance regulations." ECF 468, at 9–10. Defendants' motion *in limine* #2, meanwhile, seeks "to allow argument, evidence, and testimony relating to the state insurance regulatory oversight of Atrium, including evidence that Atrium was licensed and regulated as a captive reinsurer and that

information relating to Atrium's corporate structure and its captive reinsurance business was disclosed to the state regulators." ECF 470, at 1.

Plaintiffs contend that evidence of regulatory compliance is irrelevant in this case and, even if it were relevant, it would be unduly prejudicial and confusing to the jury. ECF 468, at 10. They argue that state regulators did not review the captive reinsurance agreements at issue for compliance with RESPA and that any regulatory reviews were for other purposes, including whether Atrium complied with reserve requirements. *Id.*

Defendants, in contrast, argue that evidence relating to state regulatory oversight is relevant to demonstrating whether Atrium provided "real reinsurance services," an issue the court previously termed "central to this case." ECF 470, at 6 (citing *Munoz v. PHH Mortg. Corp.*, 478 F. Supp. 3d 945, 967 (E.D. Cal. 2020) (ECF 417). Defendants contend that evidence of regulatory oversight and compliance would make it less probable that the reinsurance contracts were sham transactions disguised as reinsurance agreements. *Id.* at 6–7. Defendants further contend that evidence of regulatory oversight is relevant "background evidence" under Federal Rule of Evidence 401 because it would help jurors, who are likely unfamiliar with captive mortgage reinsurance, to understand what such reinsurance is and how it operates. *Id.* at 9–10.

In response to Plaintiffs' motion, Defendants state that they are not seeking to admit evidence about Atrium's compliance with state insurance

regulations. ECF 479, at 8. They also argue that they are "*not* seeking to use evidence relating to state insurance regulatory oversight to show that the regulators *approved* Atrium's captive reinsurance business," ECF 479, at 10 (emphasis in original) but rather that they are seeking "to inform the jury of the *fact* that Atrium was regulated by state insurance regulators and that information about Atrium's operations and its captive reinsurance business was disclosed to the regulators, which directly rebuts Plaintiffs' claims that the structure was a sham," *id.* at 11 (emphasis in original).

Plaintiffs, in turn, oppose Defendants' motion by arguing that whether Atrium was subject to state regulation "is not relevant to determining whether the CRAs at issue in this case transferred any real risk from the mortgage insurers to Atrium under RESPA and the 1997 HUD Letter." ECF 481, at 3. They contend that if such evidence is relevant, then evidence of the Consumer Financial Protection Bureau's prior enforcement action against Defendants is also relevant because that agency did analyze whether the captive reinsurance agreements complied with RESPA. *Id.* at 5.[1]

---

[1] The CFPB proceedings were one of the matters addressed in Defendants' motion *in limine* #3 (ECF 471), which sought to preclude evidence and argument regarding various separate proceedings. Plaintiffs filed their response to Defendants' motion #2 prior to the court's ruling (ECF 507) granting motion #3, in which the court noted that the D.C. Circuit vacated the CFPB's decision because all of the agency's analyses were predicated on incorrect interpretations of RESPA, such that introduction of that evidence would be highly prejudicial. Thus, it does not matter whether the CFPB evidence might be relevant because the court excluded it under Rule 403.

3

1	Finally, Plaintiffs' reply in support of their motion argues that "the fact
2	that Atrium as a corporate entity was subject to regulation by the states in
3	which it operated has no bearing on the RESPA inquiry: it can certainly be the
4	case that Atrium was regulated by state insurance departments, yet still failed
5	to render 'valuable reinsurance services' to the mortgage insurers under the
6	terms of the CRAs at issue." ECF 493, at 4. Defendants' reply argues that evi-
7	dence of regulatory oversight is relevant to rebut Plaintiffs' contention that the
8	reinsurance agreements were "sham transactions." ECF 491, at 2–4.

9	The HUD Letter on which the parties rely states that "[t]o determine
10	that a real service—reinsurance—is performed by the reinsurer for which it
11	may legally be compensated, the following requirements must be satisfied."
12	ECF 342-3, at 6. The letter then sets forth three requirements, the second of
13	which is, in relevant part, that "[t]he reinsurer must post capital and reserves
14	satisfying the laws of the state in which it is chartered." *Id.* (emphasis re-
15	moved). Following the three requirements, the HUD Letter then permits an
16	analysis of "the factors in Part II(A), to the extent relevant." *Id.* The factors in
17	Part II(A) include, *inter alia*, whether "[a]ny State regulatory body questions
18	the adequacy of the reserves maintained by the primary mortgage insurer or
19	the captive reinsurer." *Id.* at 4. Moreover, the letter goes on to address factors
20	that may be considered in determining whether the compensation paid for the
21	reinsurance does not exceed its value, and among those factors is "the extent

1 to which the lender or the firm controlling the captive reinsurer is shielded
2 from potential losses by inadequate reserves and a corporate structure that
3 segregates risk," and again the letter permits consideration of the Part II(A)
4 factors "to the extent relevant." *Id.* at 7.

5     Thus, the HUD Letter makes it apparent that state regulatory oversight
6 may be relevant, given the references to state regulatory authorities' analysis
7 of reserves. Because, however, Defendants affirmatively state that they have
8 no intention of introducing evidence demonstrating that Atrium complied with,
9 or was found to be in compliance with, state insurance regulations, the partic-
10 ular regulatory oversight addressed in the HUD Letter is not at issue here.
11 Moreover, because (a) Plaintiffs' motion #4 seeks only to preclude evidence that
12 "Atrium was not out of compliance" with state regulations and that no state
13 examination or audit of any defendant resulted in a finding of noncompliance
14 yet (b) Defendants disclaim any intent to introduce that sort of evidence, the
15 court will grant Plaintiffs' motion. That leaves the question of whether evi-
16 dence of regulatory oversight generally, as opposed to specific evidence about
17 Atrium's or Defendants' compliance with regulations, is relevant as "back-
18 ground evidence" under Rule 401 and, if so, how its probative value compares
19 to any prejudicial effect it might have (or vice versa).

20     The Advisory Committee's Note to Rule 401 states that "[e]vidence which
21 is essentially background in nature can scarcely be said to involve disputed

1   matter, yet it is universally offered and admitted as an aid to understanding."
2   Fed. R. Evid. 401 advisory cmte. note (1975). "Under this theory of relevance,
3   we have explained that one measure of relevance is whether its exclusion
4   would leave a chronological and conceptual void in the story." *United States v.*
5   *Boros*, 668 F.3d 901, 908 (7th Cir. 2012) (cleaned up). "Evidence that serves as
6   background information about persons, subjects[,] and things in a trial is gen-
7   erally admissible although it may not relate to a consequential fact." 1 *Wein-*
8   *stein on Evidence* § 501[05] (1989). "Yet because background evidence about
9   ancillary matters has only marginal relevance, it is more susceptible to exclu-
10  sion under Rule 403's balancing of prejudice and probative value." *Boros*, 668
11  F.3d at 908.

12      Defendants are surely correct that the average juror is unlikely to have
13  an insurance law background and is not likely to have any familiarity with
14  reinsurance, much less the much narrower class of captive mortgage reinsur-
15  ance—at most, some jurors might generally be familiar with paying for private
16  mortgage insurance as part of their monthly mortgage payments. Thus, evi-
17  dence of what a captive mortgage reinsurer is and how it is regulated by the
18  states is potentially relevant background evidence, so the question then be-
19  comes whether its probative value "is *substantially* outweighed by a danger of
20  one of the following: unfair prejudice, confusing the issues, misleading the jury,

undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added).

Plaintiffs argue that evidence of state insurance regulation should be excluded under Rule 403 because they contend that, regardless of the reason why Defendants wish to proffer this evidence, there is a risk that the jury will conclude that state regulators approved of Atrium's business, and they argue that "[j]urors could easily be misled into believing that state insurance regulators that examined or audited Atrium for purposes of *state* insurance requirements also found that the CRAs at issue complied with *RESPA*, a federal statute which they did not." ECF 481, at 5 (emphasis in original). Any such risk is not "unfairly" prejudicial to Plaintiffs under Rule 403. As they concede, *see* ECF 481, at 3, all insurance and reinsurance companies are subject to regulation in the states in which they operate, so background evidence about how that happens is unremarkable, and Plaintiffs may use cross-examination to clarify any testimony they deem incomplete.

Therefore, it is hereby **ORDERED** that Defendants' motion *in limine* #2 is **GRANTED** and that Defendants may introduce argument, evidence, and testimony relating to state insurance regulatory oversight of Atrium, including evidence that Atrium was licensed and regulated as a captive reinsurer and that information relating to Atrium's corporate structure and its captive reinsurance business was disclosed to the state regulators.

1 However, it is further **ORDERED** that Plaintiffs' motion *in limine* #2 is also **GRANTED**, and Defendants shall not seek to introduce any argument, evidence, or testimony that Atrium was not out of compliance with any state insurance regulations at any time during the class period or that no examination or audit of any defendant by any state insurance regulator or examiner resulted in a finding of noncompliance with state insurance regulations.

Dated: January 14, 2022                             /s/ *M. Miller Baker*
                                                    M. Miller Baker, Judge[2]

---

[2] Judge of the United States Court of International Trade, sitting by designation.