|  | UNITED STATES DISTRICT COURT |
|---|---|
|  | FOR THE EASTERN DISTRICT OF CALIFORNIA |

EFRAIN MUNOZ, *individually and on behalf of all others similarly situated, et al.*,

    Plaintiffs,

    v.

PHH MORTGAGE CORPORATION, *et al.*,

    Defendants.

No. 1:08-cv-00759-MMB-BAM

**<u>ORDER RESPECTING PLAINTIFFS' MOTION *IN LIMINE* #1</u>**

Plaintiffs' first motion *in limine* (ECF 466) requests an order under Federal Rules of Evidence 402 and 403 "to exclude from trial any argument, evidence, or testimony, including expert or opinion testimony, questioning or contradicting findings made by the Court in its summary judgment decision." ECF 466, at 1. Specifically, Plaintiffs contend that the court has made the following "summary judgment determinations" and seek to preclude Defendants from expressing disagreement with either:

> (1) the evaluation of whether there was a real transfer of risk under the captive reinsurance agreements at issue for purposes of the Real Estate Settlement Procedures Act requires consideration of all relevant aspects of the CRAs and therefore cannot be done on a book year basis alone; and

> (2) Atrium's liability under the CRAs at issue with Genworth Mortgage Insurance Company, Radian Guaranty Inc., and CMG Mortgage Insurance Company was limited to the amounts in the trust accounts held for each such mortgage insurer in connection with those CRAs from which claims could be satisfied.

1   *Id.* at 1–2 ("defined terms" omitted). Plaintiffs ask the court to order Defend-
2   ants' counsel to direct their witnesses not to say anything about the foregoing
3   topics "until specifically questioned thereon after a prior ruling by the Court"
4   because they contend that "[p]ermitting interrogation of witnesses, comments
5   to jurors or prospective jurors, or offers of evidence concerning the precluded
6   matters would impermissibly prejudice and confuse the jury." *Id.* at 2.

7        In support of their argument, Plaintiffs contend that the court's sum-
8   mary judgment ruling included a "holding that risk transfer must be consid-
9   ered across multiple book years," and they quote the court's statement that
10   "[e]valuating whether there was an actual transfer of risk requires the court
11   to look at multiple factors, such as the structure and contractual terms of a
12   CRA, the rationale for and effects of cross-collateralization, and the way de-
13   fendants' own actuaries analyzed the CRAs." *Id.* at 4 (quoting *Munoz v. PHH*
14   *Mortg. Corp.*, 478 F. Supp. 3d 945, 978 (E.D. Cal. 2020) (ECF 417)). They also
15   contend that the court "rejected" Defendants' "book year methodology" and con-
16   clude that "[t]his holding controls the risk transfer analysis here and justifies
17   the entry of an order precluding Defendants from arguing or presenting evi-
18   dence to the contrary." *Id.* at 4–5.

19        Plaintiffs further assert the court held that "Atrium's liability under the
20   Genworth, Radian, and CMG CRAs was limited strictly to the funds contained
21   within each of the associated trust accounts, meaning that Atrium's obligations

did not extend to its own assets," *id.* at 5 (quoting *Munoz*, 478 F. Supp. 3d at 979), and that "there is no dispute that Atrium's liability ***did not*** extend to its own funds, but was limited strictly to the monies held in the trust accounts that were formed in connection with each of these CRAs," *id.* (all emphasis in original).

Defendants respond that Plaintiffs mischaracterize the court's summary judgment ruling and assert that "there were *no* Court 'determinations' or 'holdings' on these points," ECF 478, at 1 (emphasis in original), that "[t]hese are *not* matters that 'have already been adjudicated by this Court,' as Plaintiffs claim," *id.* (emphasis in original) (quoting ECF 466, at 7), and that none of these matters could have been decided because "they relate to facts that were disputed at summary judgment and remain disputed today" and the court so found, *id.* (citing *Munoz*, 478 F. Supp. 3d at 980). Defendants emphasize that the issues and quoted language Plaintiffs discuss all appear in a section of the summary judgment opinion in which the court reached no conclusion or holding other than to deny summary judgment to both parties. *Id.* at 2–3 (citing *Munoz*, 478 F. Supp. 3d at 980).

Plaintiffs, in reply, essentially reiterate the quotations from the summary judgment ruling set forth in their motion *in limine*.

Therefore, resolution of this motion depends on examining the court's summary judgment ruling to determine what the court did and did not decide.

As an initial matter, Defendants are correct that all the language Plaintiffs quote comes from a section of that opinion titled "Applying § 8(c)'s Safe Harbor,"[1] in which the court applied the two-part test prescribed in the 1997 HUD Letter. The court examined two issues: (1) whether payments to Atrium were for reinsurance services "actually furnished or for services performed" and, if so, (2) whether the payments were "bona fide compensation that does not exceed the value of such services." *Munoz*, 478 F. Supp. 3d at 977 (cleaned up).

The court explained that as to the first issue (actual provision of reinsurance), the HUD Letter prescribes a three-part test, but the parties disputed only the third prong of that test, whether the captive reinsurance agreements here resulted in a real transfer of risk. *Id.* The court quoted the HUD Letter's guidance as to how the court should assess that issue, but then noted that "the parties in this case dispute what the scope of the court's inquiry should be." *Id.* at 978. The court explained Defendants' position as being that "the court should conduct a risk transfer analysis by looking only at individual 'snapshots' of Atrium's cash flow from the 2007–09 book years, which fall within the certified class period," because "Atrium's reinsurance obligations were based on the loans in an individual book." *Id.* (emphasis removed). The court then explained that Plaintiffs argued that Defendants' approach was misleading and instead

---

[1] Whether the "safe harbor" applies is an element of Plaintiffs' § 8(a) claim on which they have the burden of proof. *Munoz*, 478 F. Supp. 3d at 976.

urged "that the court should analyze the CRAs comprehensively and over the lifetimes of those agreements." *Id.*

The court concluded that "plaintiffs' approach to this issue is the more compelling one":

> Evaluating whether there was an actual transfer of risk requires the court to look at multiple factors, such as the structure and contractual terms of a CRA, the rationale for and effects of cross-collateralization, and the way defendants' own actuaries analyzed the CRAs. But under the methodology advocated by defendants, the court would be limited to examining an individual book year in a vacuum. Indeed, it is somewhat perplexing that defendants continue to insist that the court adopt their somewhat myopic book year approach when it is undisputed that defendants themselves analyze and distribute risk across book years.

*Id.*

The court then turned to the evidence the parties presented and determined that it could not resolve the issue at the summary judgment stage. The court's reasoning is significant for present purposes:

> Though it is clear that Atrium earned a net profit over the lifetime of the CRAs, it is equally clear that Atrium suffered losses in the 2007–09 book years. Is that loss representative of a real transfer of risk, or is it "such a small financial loss" given the magnitude of the 2007–09 housing market collapse and financial crisis that there could not have been a real transfer of risk? Likewise, were the provisions of the CRAs so favorable to Atrium that those CRAs were effectively "shams," or were they supported by "reasonable business justifications"? Based on the evidence before the court at this time, there is a sufficiently genuine dispute over the answers to these questions that the court cannot resolve on summary judgment whether Atrium provided actual reinsurance services to the captive MIs. This ends the court's inquiry under the two-step HUD test.

*Id.* at 980. The language quoted above resolves the first issue raised by Plaintiffs' motion *in limine* because it plainly leaves the door open for the jury to use the "book year" approach. The court clearly did not resolve the question of whether the data from the 2007–09 book years, standing alone, represented a real transfer of risk, or whether instead it was necessary to consider other years as well. Thus, Plaintiffs are incorrect in arguing that the court "held" or "determined" that the "real transfer of risk" evaluation "cannot be done on a book year basis alone." ECF 466, at 1–2.

Plaintiffs also contend that the court "concluded at summary judgment" that Atrium's liability was strictly limited to the amounts in its trust accounts. *Id.* at 5. Again, the reference to which Plaintiffs refer appears in the same "safe harbor" discussion. The court first characterized Plaintiffs' position:

> Plaintiffs' case here essentially focuses on: (1) provisions in the CRAs that limited Atrium's obligation to pay out claims while allowing it an unlimited upside as to profits, and (2) the lopsided balance of payments between the captive MIs and Atrium, wherein Atrium received much more in payments than it paid out in claims. According to plaintiffs, this meant that no real risk was transferred, and thus, Atrium did not provide actual reinsurance services.

*Munoz*, 478 F. Supp. 3d at 979 (cleaned up). The court's next paragraph then began the analysis with the prefatory comment that "[t]here is substantial

evidence that supports this theory," *id.*,[2] and then stated, "For example, Atrium's liability under the Genworth, Radian, and CMG CRAs was limited strictly to the funds contained within each of the associated trust accounts, meaning that Atrium's obligations did not extend to its own assets," *id.* The court reviewed Plaintiffs' evidence and then discussed Defendants' response. *Id.* at 979–80.

It is apparent from the context that the sentence Plaintiffs emphasize about Atrium's liability under the captive reinsurance agreements was not a "holding" or a "finding" or a "determination." The court made that comment in the context of discussing and analyzing Plaintiffs' evidence on the issue of whether Atrium provided actual reinsurance services, and the court determined (or "held," as it were) that *it could not decide that issue* on the record before it. Furthermore, the court hedged any conclusions it did draw, noting that the provisions "appear to have yielded significant profits," and further noting that the fact of profits is not determinative as to the provision of real reinsurance services. *Id.* at 979. Thus, the case law Plaintiffs cite about evidence being inadmissible when it relates to issues the court has "conclusively decided" or "ruled upon" or the like is simply inapposite here.

---

[2] The words "this theory," taken in context, clearly refer to the final quoted sentence about no risk being transferred such that Atrium provided no real reinsurance services.

In short, Plaintiffs here obtained, at most, the possibility of later obtaining a verdict in their favor on whether Atrium provided actual reinsurance. The court did not decide the issue, and the summary judgment decision cannot be used to exclude the evidence Plaintiffs challenge. Furthermore, because Plaintiffs' theory that this evidence is irrelevant and has no probative value is based entirely on their contention that the court already decided the issues described above, there is no basis for finding it to be either irrelevant or without probative value.

Plaintiffs also briefly argue that the evidence should be excluded under Rule 403 "since it would, among other things, only serve to confuse the issues, mislead the jury, waste time, and require the presentation of unnecessary and duplicative evidence." ECF 466, at 7. However, once again Plaintiffs premise their Rule 403 argument on their reference to "questioning or contradicting the Court's prior findings." *Id.* Because there were no such "prior findings," the evidence in question neither "questions" nor "contradicts" them, and the Rule 403 argument is therefore unfounded.

Accordingly, it is hereby **ORDERED** that Plaintiffs' motion *in limine* #1 is **DENIED**.

Dated: January 18, 2022  /s/ *M. Miller Baker*
M. Miller Baker, Judge[3]

---

[3] Judge of the United States Court of International Trade, sitting by designation.