| | |
|---|---|
| **UNITED STATES DISTRICT COURT** | |
| **FOR THE EASTERN DISTRICT OF CALIFORNIA** | |

EFRAIN MUNOZ, *individually and on behalf of all others similarly situated, et al.*,

      Plaintiffs,

      v.

PHH MORTGAGE CORPORATION, *et al.*,

      Defendants.

No. 1:08-cv-00759-MMB-BAM

**ORDER DENYING MOTION TO MODIFY PRETRIAL ORDER, DENYING MOTION TO STRIKE AS MOOT, AND DENYING MOTION TO DECERTIFY WITHOUT PREJUDICE**

Defendants move to decertify the class, ECF 462, and Plaintiffs oppose, ECF 467. As part of their response, Plaintiffs filed—without seeking leave—the expert report of Professor Robert E. Hoyt (Hoyt Report) (ECF 467-3) and a joint report to Congress in 1972 by the Veterans Administration and the Department of Housing and Urban Development (Joint Report) (ECF 467-2). As these submissions do not satisfy the final pretrial order's strict criteria for late witness and exhibit disclosures, *see* ECF 456, the court construes them as a *de facto* motion under Federal Rule of Civil Procedure 16(e) to modify the final pretrial order to include (i) Professor Hoyt among Plaintiffs' trial witnesses and (ii) the Joint Report among Plaintiffs' trial exhibits. For the reasons explained below, the court **DENIES** Plaintiffs' *de facto* motion to so modify the pretrial order, consequently **DENIES** as moot Defendants' motion to strike the Hoyt

1    Report and the Joint Report, and further **DENIES** without prejudice Defend-

2    ants' motion to decertify the class.

3                                    **Background**

4           Plaintiffs commenced this action on June 2, 2008. ECF 1. Plaintiffs' first

5    amended complaint, brought on behalf of a class of similarly situated home-

6    owners, alleges that Defendants, various affiliated mortgage lenders (collec-

7    tively PHH) and their captive reinsurer (Atrium), violated the Real Estate Set-

8    tlement Procedures Act of 1974 (RESPA), 12 U.S.C. § 2601 *et seq.*, by receiving

9    kickbacks from private mortgage insurers to which PHH referred Plaintiffs'

10   business. *See* ECF 96, ¶¶ 1–7. The court certified the class on June 11, 2015.

11   ECF 288.

12          In the meantime, one week after fact discovery closed on May 9, 2016,

13   ECF 330, and more than two months before expert discovery closed on Au-

14   gust 6, 2016, *id.*, the Supreme Court in *Spokeo, Inc. v. Robins*, 578 U.S. 330

15   (2016) (*Spokeo I*), abrogated Ninth Circuit precedent holding that insofar as

16   "RESPA gives [a] [p]laintiff a cause of action," such a plaintiff "has standing to

17   pursue her claims." *Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir.

18   2010).

19          In *Spokeo I*, the Supreme Court held that a plaintiff "cannot satisfy the

20   demands of Article III by alleging a bare procedural violation," because such a

21   violation "may result in no harm." 578 U.S. at 342. "Article III standing

                                              2

1    requires a concrete injury even in the context of a statutory violation." *Id.*

2    at 341. In so holding, the Court vacated the decision below, which in turn relied

3    on *Edwards*. *See id.* at 336 & n.5 (characterizing the decision below as "relying

4    on" *Edwards*).[1]

5        The Supreme Court acknowledged that " '[c]oncrete' is not, however, nec-

6    essarily synonymous with 'tangible.' " *Id.* at 340. This meant that "the violation

7    of a procedural right granted by statute can be sufficient in some circumstances

8    to constitute injury in fact. In other words, a plaintiff in such a case need not

9    allege any *additional* harm beyond the one Congress has identified." *Id.* at 342

10    (emphasis in original) (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–

11    25 (1998), and *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)).[2] The

12    Court accordingly remanded the case to the Ninth Circuit because its "standing

13    analysis was incomplete." *Id.* at 342. The Supreme Court instructed the court

14    of appeals to determine whether the alleged procedural violations of the Fair

15    Credit Reporting Act (FCRA) met "the concreteness requirement." *Id.* at 343.

---

[1] Three years later, in *Frank v. Gaos*, the Supreme Court characterized *Spokeo I* as "reject[ing] the premise, relied on in the decision then under review and in *Edwards*, that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.' " 139 S. Ct. 1041, 1045 (2019) (quoting *Spokeo I*, 578 U.S. at 341).

[2] Both *Akins* and *Public Citizen* involved plaintiffs alleging informational injury based on failures by government agencies to disclose information as required by statute.

1    On remand the next year, the Ninth Circuit read *Spokeo I* as holding

2    that "even when a statute has allegedly been violated, Article III requires such

3    violation to have caused some *real—as opposed to purely legal—harm* to the

4    plaintiff." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (*Spokeo*

5    *II*) (emphasis added). From that principle, the court of appeals held that stand-

6    ing to assert a statutory violation requires a plaintiff to establish (1) that "the

7    statutory provision[ ] at issue [was] established to protect [the plaintiff's] con-

8    crete interests (as opposed to purely procedural rights), and if so, (2) [that] the

9    specific procedural violation[ ] alleged . . . actually harm[s], or present a mate-

10   rial risk of harm to, such interests." *Id.* at 1113. Applying that test in the case

11   before it, the court found that the FCRA procedures at issue "were crafted to

12   protect consumers' (like Robins's) concrete interest in accurate credit reporting

13   about themselves," *id.* at 1115, *and* that the alleged violation—publication on

14   the Internet of inaccurate information relevant to potential employers—

15   harmed that concrete interest. *Id.* at 1115–17.

16   Meanwhile, in 2020 the court in this case granted partial summary judg-

17   ment for Plaintiffs and denied Defendants' cross-motion for summary judg-

18   ment (based in part on *Spokeo I*) and Defendants' motion to decertify. *See*

19   *Munoz v. PHH Mortg. Corp.*, 478 F. Supp. 3d 945 (E.D. Cal. 2020) (ECF 417).

20   Addressing Plaintiffs' standing, the court determined that even in the wake of

21   *Spokeo I* and *Frank*, Plaintiffs

4

1     have alleged that they were actually and personally harmed when
2     defendants "purposefully provided neither a meaningful disclosure
3     nor a meaningful choice to [their] borrowers regarding [their] cap-
4     tive reinsurance arrangements," directly implicating one of the
5     harms identified by and targeted for elimination by Congress.

6     *Id.* at 983 (quoting ECF 96, ¶ 59, and citing 12 U.S.C. §§ 2603, 2604, and

7     2607(c)) (ECF 417, at 44).

8        On May 24, 2021, the court completed its pretrial conference. ECF 450.

9     On June 11, 2021, the court issued a final pretrial order. ECF 456. Among

10     other things, the final pretrial order set a trial date of February 15, 2022, *id.*

11     at 13, and identified each side's trial witnesses and exhibits, *id*. at 15 (Plain-

12     tiffs' witnesses), 17 (Defendants' witnesses), 19 (Plaintiffs' exhibits), 35 (De-

13     fendants' exhibits). Plaintiffs' witnesses did not include Professor Hoyt, nor did

14     their exhibits include the Joint Report.

15        Two weeks after entry of the final pretrial order, the Supreme Court de-

16     cided *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). As relevant here,

17     the Court in *TransUnion* reiterated *Spokeo I*'s principle that "[o]nly those

18     plaintiffs who have been *concretely harmed* by a defendant's statutory violation

19     may sue that private defendant over that violation in federal court." *Id*. at 2205

20     (emphasis in original). Applying that principle in the context of asserted infor-

21     mational injury, the Court held that a plaintiff class lacked standing to recover

22     for violation of the FCRA's disclosure requirements, because at trial the

5

1  plaintiffs adduced no evidence of downstream harm caused by the violations.
2  *Id*. at 2213–14.

3      As examples of such "downstream consequences," the Court in *TransUn-*
4  *ion* observed that the plaintiffs failed to put forth any evidence that they would
5  have tried to correct their credit reports had the defendant made the required
6  disclosures. *Id*. Nor did plaintiffs present evidence "that the alleged infor-
7  mation deficit hindered their ability to correct erroneous information before it
8  was later sent to third parties." *Id*. at 2214. The Court held that "[a]n asserted
9  informational injury that causes no adverse effects cannot satisfy Article III."
10  *Id*. (cleaned up).

11      On October 20, 2021, Defendants in this case moved to decertify the class
12  based on *TransUnion*. ECF 462. Plaintiffs' response to this motion on Novem-
13  ber 17, 2021, included the Hoyt Report. *See* ECF 467, at 17 (describing Profes-
14  sor Hoyt's qualifications and stating that he would opine "that the captive re-
15  insurance agreements utilized by Defendants—which do not involve a real risk
16  transfer—increased transaction costs and in turn increased the premiums paid
17  for primary mortgage insurance by Class Members"); *see also* ECF 467-3 (Hoyt
18  Report). Plaintiffs also submitted the Joint Report. *See* ECF 467, at 15–16 &
19  n.13 (describing the Joint Report and its conclusion that settlement kickbacks
20  result in unnecessarily higher costs to home purchasers); *see also* ECF 467-2

6

1  (Joint Report). Plaintiffs made no effort to justify these submissions, either

2  under the final pretrial order's late disclosure provisions or otherwise.

3      Defendants moved to strike both the Hoyt Report and the Joint Report.

4  ECF 475. Plaintiffs opposed, ECF 499, and Defendants replied, ECF 503.

5  **Discussion**

6  **I.**

7      The final pretrial order prohibits the use at trial of "**undisclosed wit-**

8  **nesses**" and "**undisclosed exhibits**" "**for any purpose, <u>including im-</u>**

9  **<u>peachment or rebuttal</u>**," unless the undisclosed witness or exhibit qualifies

10  under either of two separate pathways. *See* ECF 456, at 10 (witnesses), 11 (ex-

11  hibits) (emphasis and double emphasis in original). The court considers each

12  of these pathways in turn.

13  **A.**

14      The first pathway for a party proffering an undisclosed witness is to

15  "demonstrate[ ] that the" witness "is for the purpose of rebutting evidence that

16  could not be reasonably anticipated at the pretrial conference." ECF 456, at 10.

17  The standard is materially the same for late-disclosed exhibits. *See id.* at 11.

18      Plaintiffs argue that at the time of the pretrial conference, they could not

19  have reasonably anticipated any need to rebut the deposition testimony of their

20  own experts that Plaintiffs suffered no economic injury from captive reinsur-

21  ance agreements. *See* ECF 499, at 9 & n.6. This is because, according to

7

1    Plaintiffs, "[p]rior to *TransUnion*, Plaintiffs were not required to make a show-

2    ing of such harm but instead could rely on the statutory violation to establish

3    injury and standing in cases such as this." *Id.* at 9 (citing *Munoz v. PHH Corp.*,

4    659 F. Supp. 2d 1094, 1102 (E.D. Cal. 2009) (ECF 60); *Alston v. Countrywide*

5    *Fin. Corp.*, 585 F.3d 753 (3d Cir. 2009); and the Ninth Circuit's 2009 decision

6    in *Edwards*). *TransUnion*, Plaintiffs argue, suddenly changed everything for

7    standing purposes by making economic harm relevant for the first time in the

8    litigation.

9        But Plaintiffs' first amended complaint alleges that they suffered eco-

10   nomic harm. *See* ECF 96, ¶ 94 (alleging that Plaintiffs were "overcharged for

11   mortgage insurance. Kickbacks and unearned fees unnecessarily and artifi-

12   cially inflate settlement service charges."). By injecting that issue at the outset,

13   Plaintiffs opened the door for Defendants' introduction of rebuttal evidence.

14   Thus, throughout this litigation, Plaintiffs should have reasonably anticipated

15   the need to disclose witnesses and exhibits pertaining to economic harm.

16       Still, even if Plaintiffs' own allegations were not dispositive as to what

17   evidence they should have reasonably anticipated needing to rebut, to deter-

18   mine whether *TransUnion* changed the relevant law the court must carefully

19   parse Plaintiffs' claims. It has long been established that "standing is not dis-

20   pensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). This means that

21   "a plaintiff who has been subject to injurious conduct of one kind" does not

1    "possess by virtue of that injury the necessary stake in litigating conduct of

2    another kind, although similar, to which he has not been subject." *Id*. (quoting

3    *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)). Thus, "a plaintiff must demon-

4    strate standing for each claim he seeks to press." *DaimlerChrysler Corp. v.

5    Cuno*, 547 U.S. 332, 352 (2006); *see also Allen v. Wright*, 468 U.S. 737, 752

6    (1984) ("[T]he standing inquiry requires careful judicial examination of a com-

7    plaint's allegations to ascertain whether the particular plaintiff is entitled to

8    an adjudication of the particular claims asserted."), *abrogated on other grounds

9    by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

10        Here, Plaintiffs' first amended complaint effectively alleges two related,

11   but distinct, RESPA violations (and corresponding injuries) under 12 U.S.C.

12   § 2607.

13        *First*, Plaintiffs allege that "PHH's captive reinsurance agreements were

14   and are sham transactions for collecting illegal kickbacks in return for refer-

15   ring private mortgage business to certain insurers." ECF 96, ¶ 69. If Plaintiffs

16   prove that allegation at trial, they will establish a violation of 12 U.S.C.

17   § 2607(a),[3] because Defendants' captive reinsurance agreements will fall

---

[3] "No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a).

1  outside the safe harbor provided by 12 U.S.C. § 2607(c)(2).[4] Plaintiffs allege

2  that their injury traceable to this violation was "overcharge[s] for mortgage

3  insurance. Kickbacks and unearned fees unnecessarily and artificially inflate

4  settlement service charges." ECF 96, ¶ 94.

5      *Second*, Plaintiffs also allege that Defendants "purposely provided nei-

6  ther a meaningful disclosure nor a meaningful choice to [their] borrowers re-

7  garding [their] captive reinsurance arrangements." ECF 96, ¶ 59. As the court

8  recognized in its summary judgment ruling, *see Munoz*, 478 F. Supp. 3d at 983

9  (ECF 417, at 44), this alleges a violation of 12 U.S.C. § 2607(c)(4)'s disclosure

10  requirements.[5] Plaintiffs allege that the injury traceable to this violation is

11  informational: they were not provided a meaningful choice whether or not to

12  use the private mortgage insurers referred by PHH. ECF 96, ¶ 59.

13      Thus, Plaintiffs have the burden of proving the alleged injury that is

14  traceable to *each* alleged violation—the economic injury traceable to the

[4] This provision shelters from § 2607(a) liability "the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." 12 U.S.C. § 2607(c)(2).

[5] This provision permits "affiliated business arrangements so long as," *inter alia*, "(A) *a disclosure is made of the existence of such an arrangement to the person being referred*," "(B) such person is not required to use any particular provider of settlement services," and "(C) the only thing of value that is received from the arrangement, other than the payments permitted under this subsection, is a return on the owner-ship interest or franchise relationship." 12 U.S.C. § 2607(c)(4) (emphasis added). The court expresses no view on whether Plaintiffs' disclosure allegation, if proven, states a viable claim for relief under § 2607.

1    alleged sham transaction violation of § 2607(c)(2) and the informational injury

2    traceable to the alleged disclosure violation of § 2607(c)(4). *DaimlerChrysler*,

3    547 U.S. at 352; *see also Spokeo I*, 578 U.S. at 338 (to have standing, "[t]he

4    plaintiff must have (1) suffered an injury in fact, (2) *that is fairly traceable to*

5    *the challenged conduct* of the defendant, and (3) that is likely to be redressed

6    by a favorable judicial decision") (emphasis added).

7         As to Plaintiffs' disclosure claim, *TransUnion* clarified the law by mak-

8    ing clear that asserted informational injury from breach of a statutory duty

9    requires downstream adverse effects to constitute concrete injury for Article

10   III standing purposes. *See* 141 S. Ct. at 2213–14.[6] But Plaintiffs do not proffer

11   Professor Hoyt and the Joint Report to supply evidence of downstream effects

---

[6] In the court's view, *TransUnion* clarified, rather than changed, the law on informational injury. In *Spokeo I*, the Supreme Court cited the informational injury cases of *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989), as examples of cases involving intangible yet concrete harm. In *TransUnion*, the Supreme Court endorsed the reasoning of *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990 (11th Cir. 2020), which explained that

> the plaintiffs in *Public Citizen* and *Akins* identified consequential harms from the failure to disclose the contested information. The advocacy organizations in *Public Citizen* alleged that they needed the information to 'participate more effectively in the judicial selection process.' 491 U.S. at 449. And the voters in *Akins* alleged that the information 'would help them (and others to whom they would communicate it) to evaluate candidates for public office.' 524 U.S. at 21. Trichell and Cooper have identified no comparable downstream consequences from their receipt of allegedly misleading communications that failed to mislead. Absent any such concrete impact, they can complain only about *receiving* information that had no impact on them.

*Id.* at 1004 (emphasis in original); *see also TransUnion*, 141 S. Ct. at 2214 (applying *Trichell*'s analysis).

1    of their asserted informational injury—the Hoyt Report does not opine, for ex-

2    ample, that Plaintiffs would have selected different private mortgage insur-

3    ance providers had PHH provided adequate disclosures. *Cf. id.* (observing that

4    the *TransUnion* plaintiffs failed to put forth any evidence that they would have

5    tried to correct their credit reports had the defendant made the required dis-

6    closures, or "that the alleged information deficit hindered their ability to cor-

7    rect erroneous information before it was later sent to third parties").

8          Instead, Plaintiffs proffer Professor Hoyt and the Joint Report to estab-

9    lish the alleged economic harm traceable to the alleged sham transaction vio-

10   lation of § 2607(c)(2). But as to that claim, it has been manifest in this circuit

11   since *Spokeo II* in 2017 that Plaintiffs' burden is to show some concrete injury

12   beyond the bare procedural violation of § 2607(c)(2). As the Ninth Circuit put

13   it then: "[E]ven when a statute has allegedly been violated, Article III requires

14   such violation to have caused some *real—as opposed to purely legal—harm* to

15   the plaintiff." *Spokeo II*, 867 F.3d at 1112 (emphasis added). Since 2017 Plain-

16   tiffs have been required to show that (1) § 2607(c)(2) was "established to protect

17   [their] concrete interests (as opposed to purely procedural rights), and if so,"

18   that (2) "the specific procedural violation[ ] alleged . . . actually harm[s], or

19   present[s] a material risk of harm to, such interests." *Id.* at 1113.

20         After *Spokeo II*, Plaintiffs should have moved to reopen discovery as nec-

21   essary so that they could proffer evidence to demonstrate economic or other

1   harm to their concrete interests stemming from Defendants' alleged violation

2   of § 2607(c)(2).[7] *Spokeo II*—not *TransUnion*—was the change in the law that

3   made it pellucid that Plaintiffs needed to establish harm to their concrete in-

4   terests to establish standing as to that claim.[8] Because Plaintiffs should have

5   reasonably anticipated the need for evidence of such harm some four years be-

6   fore the pretrial conference, the first pathway under the pretrial order for ad-

7   mitting late witnesses and exhibits is now barred to them.

8                                          **B.**

9        The second pathway under the final pretrial order for proffering late wit-

10  nesses or exhibits provides that if the undisclosed witness or exhibit "was dis-

11  covered after" the "pretrial conference" (for witnesses) and "the issuance of this

---

[7] Putting aside that Plaintiffs' first amended complaint injected the issue of economic harm into the case at the outset, after the Supreme Court issued *Spokeo I* on May 16, 2016, prudence dictated retaining the necessary experts to establish Plaintiffs' concrete injury traceable to the alleged violation of § 2607(c)(2) before the expert discovery deadline of August 6, 2016. Nevertheless, because *Spokeo I* remanded the case to the Ninth Circuit, and giving them the benefit of the doubt, Plaintiffs were arguably entitled to wait until the court of appeals announced its interpretation of the new standard. When that happened in *Spokeo II*, Plaintiffs should have acted promptly to reopen discovery as to their alleged economic injury stemming from the alleged § 2607(c)(2) violation.

[8] Plaintiffs' argument that *at the time of the 2021 final pretrial conference* they could rely on pre–*Spokeo I* authority such as *Edwards* for the proposition that they "were not required to make a showing of such harm but instead could rely on the statutory violation to establish injury and standing," ECF 499, at 9, is less than weak. As noted above, *Spokeo I* abrogated *Edwards* in 2016, a point that *Frank* stated explicitly in 2019. *See Frank*, 139 S. Ct. at 1046 ("Our decision in *Spokeo* abrogated the ruling in *Edwards* that the violation of a statutory right automatically satisfies the injury-in-fact requirement whenever a statute authorizes a person to sue to vindicate that right.").

1   order" (for exhibits), ECF 456, at 10 (witnesses), 11 (exhibits), the proponent

2   "*shall promptly* inform the court and opposing parties of the existence" of the

3   "unlisted witnesses" and "exhibits" so "the court may consider" whether the

4   witnesses "shall be permitted to testify" and whether the exhibits will be ad-

5   missible "at trial." ECF 456, at 10 (witnesses), 11 (exhibits) (emphasis added).

6   The proponent must also show satisfaction of certain criteria.

7        As relevant here, the proffering party must show that the witness or ex-

8   hibit could not reasonably have been discovered "prior to the discovery cutoff"

9   for witnesses, *id*. at 10, and "earlier" for exhibits, *id*. at 11. In any event, the

10  proffering party must also show that they "promptly notified" the "court and

11  opposing parties" of discovery of the witness or exhibit. *Id*. at 10–11.

12       In opposing Defendants' motion to strike, Plaintiffs contend that neither

13  their new expert nor their new exhibit could "reasonably have been discovered"

14  before the expert discovery cutoff of August 16, 2016 (for Professor Hoyt) or

15  earlier (in the case of the Joint Report) because *TransUnion* changed the ap-

16  plicable standing law in June 2021. As noted above, however, Plaintiffs' first

17  amended complaint put economic injury at issue, meaning that Plaintiffs could

18  have and should have reasonably discovered both Professor Hoyt and the Joint

19  Report early in the litigation.

20       Even assuming, however, that a change in applicable standing law de-

21  termines when Plaintiffs could have reasonably made these discoveries, that

1    change occurred at the very latest with the Ninth Circuit's decision in *Spokeo II*

2    in 2017. Yet Plaintiffs did not "promptly inform the court and opposing parties"

3    of the existence of the unlisted witnesses and exhibits until over four years

4    later, on November 17, 2021. And even under Plaintiffs' theory that applicable

5    standing law did not change until *TransUnion* was decided on June 25, 2021,

6    Plaintiffs did nothing for almost five months, even though the final pretrial

7    order set a trial date of February 15, 2022. Instead, Plaintiffs waited until No-

8    vember 17, 2021—just three months before trial, as parties accelerated their

9    preparation—to disclose their new witness and exhibit. Even then, Plaintiffs

10   disclosed this new evidence only in the context of opposing a motion to decer-

11   tify.

12        If *TransUnion* were truly a sea change in the relevant standing law, as

13   Plaintiffs now contend, then they should have disclosed their new expert and

14   exhibit within sixty days of that decision (that is, by August 23, 2021) at the

15   very latest. Then, if the court had agreed with Plaintiffs' reading of *TransUn-*

16   *ion*, the court might have briefly reopened expert and fact discovery to address

17   economic injury.

18        But Plaintiffs chose to wait almost five months. The court finds that

19   Plaintiffs' unreasonable delay in notifying the court and Defendants means

20   that their disclosure was not "prompt." This is an independent ground for

1   concluding that the second pathway for late disclosure provided by the final

2   pretrial order is also now barred for Plaintiffs.

3                                         **II.**

4        Thus, Plaintiffs' proffering of Professor Hoyt and the Joint Report disre-

5   gards the final pretrial order. But that's not the end of the discussion, because

6   the court may modify the final pretrial order to "prevent manifest injustice."

7   Fed. R. Civ. P. 16(e). Although Plaintiffs have not invoked this provision, the

8   court construes their submission of the Hoyt Report and the Joint Report as a

9   motion seeking Rule 16(e) relief. *Cf. Chaudhry v. Angell*, No. 1:16-cv-01243-

10  SAB, 2021 WL 4461667, at *6 (E.D. Cal. Sept. 29, 2021) (construing a late-filed

11  notice designating deposition testimony for trial as a motion to modify the pre-

12  trial order).

13       District courts in this circuit weigh four factors when considering Rule

14  16(e) motions to modify a final pretrial order:

15           (1) the degree of prejudice or surprise to the defendants if the order
16           is modified; (2) the ability of the defendants to cure the prejudice;
17           (3) any impact of modification on the orderly and efficient conduct
18           of the trial; and (4) any willfulness or bad faith by the party seek-
19           ing modification.

20  *Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005) (citing *Byrd v. Guess*,

21  137 F.3d 1126, 1132 (9th Cir. 1998)). "It is the moving party's burden to show

22  that a review of these factors warrants a conclusion that manifest injustice

23  would result if the pretrial order is not modified." *Byrd*, 137 F.3d at 1132.

1    Defendants argue, persuasively, that if the court were to permit Profes-

2  sor Hoyt to testify and the Joint Report to be admitted, Defendants would need

3  to retain their own expert or experts, requiring additional depositions.

4  ECF 475, at 12. Fairness would also require the reopening of fact discovery so

5  that Defendants could explore various issues implicated by Plaintiffs' claim of

6  economic injury. *Id*. at 12 & n.7. That discovery in turn would justify more

7  motion practice, such as a renewed motion for summary judgment previously

8  sought by Defendants on the standing issue.[9] Such new discovery and motion

9  practice would require adjourning a trial date for a four-week trial that has

10  been set since the entry of the final pretrial order on June 11, 2019. The par-

11  ties, the court, and around twenty witnesses have structured their schedules

12  in reliance on the existing schedule. Defendants could not mitigate this preju-

13  dice they would suffer by alteration of the schedule.

14    Finally, the court finds that although Plaintiffs have not acted in bad

15  faith, they have certainly acted willfully by not promptly seeking relief within,

16  at the very latest, sixty days of the Supreme Court's decision in *TransUnion*.

17  Although the court disagrees with Plaintiffs' reading of *TransUnion*, if it rep-

18  resented the change in the applicable law that Plaintiffs say it did, they should

---

[9] In February 2021, Defendants moved to reopen law and motion practice on standing. ECF 437. In successfully opposing the motion, Plaintiffs argued, *inter alia*, that Defendants were not diligent in bringing the motion, and that "all of the facts or evidence that Defendants needed to bring such a motion were in the record." ECF 439, at 1.

have promptly sought relief soon afterwards, because Plaintiffs have the affirmative burden of demonstrating standing at all stages of the litigation. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs' failure to seek relief until almost five months after *TransUnion*, and their blasé failure to even attempt to justify the late disclosure of Professor Hoyt and the Joint Report under the final pretrial order, or to (alternatively) seek modification of the pretrial order under Rule 16(e), *cf. Byrd*, 137 F.3d at 1132 (affirming trial court's denial of modification of pretrial order in part because the moving party made no effort to explain whether its request "passed the four-part test governing modifications of pretrial orders"), reveals an indifference to the norms of ordinary court procedures that amounts to willfulness.

The court therefore denies Plaintiffs' motion (so construed) to amend the final pretrial order to add Professor Hoyt and the Joint Report to the lists of Plaintiffs' disclosed witnesses and exhibits. Correspondingly, in view of this disposition, Defendants' motion to strike (ECF 475) is denied as moot.

**III.**

Invoking *TransUnion*, Defendants move to decertify the class. ECF 462. Defendants first argue that Plaintiffs suffered no informational injury. *Id.* at 11–15. Defendants further argue that as to such alleged informational injury, individualized standing inquiries will predominate in violation of Federal Rule of Civil Procedure 23(b)(3). *Id.* at 20–24. Defendants finally argue that even if

18

1    some members of the class can show downstream adverse effects from infor-

2    mational injury, the named plaintiffs cannot, and therefore the named plain-

3    tiffs' claims are not typical of the class, as required by Rule 23(a)(3). *Id.* at 25–

4    26.

5        Defendants' invocation of *TransUnion* suffers from the same analytical

6    flaw as Plaintiffs': it impermissibly mixes and matches the standing require-

7    ments for the separate 12 U.S.C. § 2607(c) violations (and claims) alleged by

8    Plaintiffs. *Cf. Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500

9    U.S. 72, 77 (1991) ("Standing does not refer simply to a party's capacity to ap-

10   pear in court. Rather, standing is gauged by the specific common-law, statu-

11   tory[,] or constitutional claims that a party presents.").

12       The informational injury Plaintiffs contend is traceable to the alleged

13   § 2607(c)(4) disclosure violation does not provide standing for their § 2607(c)(2)

14   sham transaction claim, because such injury is not traceable to the alleged

15   § 2607(c)(2) violation. Thus, the serious standing questions raised by Defend-

16   ants as to the alleged *disclosure* violation (including predominance and typi-

17   cality) based on *TransUnion* have no bearing on whether the class should be

18   decertified as to the alleged *sham transaction* violation.[10]

---

[10] Defendants present no argument why the class should be decertified as to the sham transaction claim.

1       At this late hour of the case, it is unclear to the court whether Plaintiffs

2   even intend to prosecute their disclosure violation claim, as their trial brief

3   does not mention it. *See* ECF 525. Accordingly, the certification issues raised

4   by Defendants as to that claim appear to be academic. Thus, the court denies

5   Defendants' motion for decertification. The court does so without prejudice;

6   Defendants may renew their motion based on the evidence (and claim(s)) pre-

7   sented at trial.

8                                         **Conclusion and Order**

9       For the reasons provided above, it is hereby **ORDERED** that:

10      Plaintiffs' motion to modify the final pretrial order (so construed) in their

11  response (ECF 467) to Defendants' motion to decertify the class (ECF 462) is

12  **DENIED**;

13      Defendants' motion to strike (ECF 475) is **DENIED AS MOOT**; and

14      Defendants' motion to decertify the class (ECF 462) is **DENIED WITH-**

15  **OUT PREJUDICE**.

16  Dated: January 31, 2022                   /s/ *M. Miller Baker*

17                                      M. Miller Baker, Judge[11]

---

[11] Judge of the United States Court of International Trade, sitting by designation.