# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

EFRAIN MUNOZ, *individually and on behalf of all others similarly situated, et al.,*

      Plaintiffs,

      v.

PHH MORTGAGE CORPORATION, *et al.,*

      Defendants.

No. 1:08-cv-00759-MMB-BAM

**ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' EXPERT TESTIMONY**

Defendants move (ECF 530) to exclude the testimony of Plaintiffs' four proposed expert witnesses, arguing that (1) they lack sufficient knowledge or experience relevant to the issues in this case to qualify as experts for purposes of Federal Rule of Evidence 702 and (2) their opinions fail to satisfy Rule 702's requirement of reliability and relevance. ECF 530, at 2. Plaintiffs oppose; they contend that Defendants' motion amounts to an attempt to relitigate issues the court has already decided[1] and that the witnesses' testimony is relevant, reliable, and based on specialized knowledge and experience. ECF 535, at 1.

As an initial matter, the proponent of expert testimony—here, Plaintiffs—has the burden of establishing the testimony's admissibility. *United*

---

[1] Plaintiffs' opposition includes a section titled "The Law of the Case Governs This Dispute." *See* ECF 535, at 9–10. That argument fails for the same reasons it failed when Plaintiffs asserted it in opposing Defendants' motion *in limine* #1, *see* ECF 540, at 5–6, so the court will not address it further.

1   *States v. 87.98 Acres of Land*, 530 F.3d 899, 904 (9th Cir. 2008); *see also Munoz*

2   *v. PHH Mortg. Corp.*, 478 F. Supp. 3d 945, 966 (E.D. Cal. 2020) (ECF 417) ("The

3   burden of admissibility is borne by the party presenting an expert . . . .") (citing

4   *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)). If expert testimony will

5   "help the trier of fact to understand the evidence or to determine a fact in is-

6   sue," it is admissible as long as the witness "is qualified as an expert by

7   knowledge, skill, experience, training, or education" and the testimony "is

8   based on sufficient facts or data," "is the product of reliable principles and

9   methods," and reflects that "the expert has reliably applied the principles and

10  methods to the facts of the case." Fed. R. Evid. 702. The court must also per-

11  form a "gatekeeping" function to ensure that the proffered testimony is reliable

12  and relevant by assessing whether "the reasoning or methodology underlying

13  the testimony is scientifically valid" and "whether that reasoning or methodol-

14  ogy properly can be applied to the facts in issue." *Daubert v. Merrell Dow*

15  *Pharms., Inc.*, 509 U.S. 579, 592–93 (1993).

16      "The focus, of course, must be solely on principles and methodology, not

17  on the conclusions that they generate." *Id.* at 595. "Expert opinion testimony

18  is relevant if the knowledge underlying it has a valid connection to the perti-

19  nent inquiry. And it is reliable if the knowledge underlying it has a reliable

20  basis in the knowledge and experience of the relevant discipline." *City of Po-*

21  *mona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). Where expert

1  witnesses' opinions "are not the 'junk science' Rule 702 was meant to exclude,

2  the interests of justice favor leaving difficult issues in the hands of the jury and

3  relying on the safeguards of the adversary system—vigorous cross-examina-

4  tion, presentation of contrary evidence, and careful instruction on the burden

5  of proof—to attack shaky but admissible evidence." *Wendell v. Glaxo-*

6  *SmithKline LLC*, 858 F.3d 1227, 1238 (9th Cir. 2017) (cleaned up) (citing *Dau-*

7  *bert*, 509 U.S. at 596). Ultimately, the court has discretion on how to test an

8  expert's reliability based on the circumstances of the particular case. *City of*

9  *Pomona*, 750 F.3d at 1044; *see also Kumho Tire Co. v Carmichael*, 526 U.S.

10  137, 152–53 (1999) (recognizing that whether *Daubert*'s specific factors will ap-

11  ply in a given case is a matter for the trial court's discretion). "Simply put, the

12  district court is not tasked with deciding whether the expert is right or wrong,

13  just whether his testimony has substance such that it would be helpful to a

14  jury." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th

15  Cir. 2014) (cleaned up).

16                                      **I.**

17      Defendants mount a Rule 702 challenge to all four of Plaintiffs' experts,

18  contending that they "have virtually no knowledge or experience related to ei-

19  ther mortgage insurance or reinsurance." ECF 530, at 7. To support that argu-

20  ment, Defendants rely on transcripts from the witnesses' depositions taken in

21  this case during August and September of 2016. *See* ECF 530-2, at 1; ECF

1   530-3, at 1; ECF 530-4, at 1, 152; ECF 530-5, at 1 (all transcript cover pages

2   showing deposition dates). Defendants cite the witnesses' statements that (a)

3   Barrett disclosed only one matter in which he served as an expert relating to

4   reinsurance, that matter was unrelated to mortgage insurance, and his expe-

5   rience with mortgage reinsurance is based on "predominantly this case," ECF

6   530-3, at 240:18–241:9; (b) Schwartz has never done any work on private mort-

7   gage insurance or reinsurance other than this case, ECF 530-5, at 49:6–16; (c)

8   Cummins testified that he has never done any work for mortgage insurance

9   companies, including consulting on reinsurance for private mortgage insur-

10  ance, and has never negotiated any such reinsurance agreements, ECF 530-4,

11  at 15:15–16:1, and further testified that he is unfamiliar with whether "trust

12  caps" are standard in mortgage reinsurance agreements because he only re-

13  viewed two other such contracts aside from those at issue in this case, *id.* at

14  87:21–24, 160:23–161:18; and (d) Barile testified that his first exposure to the

15  HUD Letter was when serving as an expert witness in an "earlier captive case"

16  sometime between 1997 and 2003, ECF 530-2, at 57:20–58:8.

17          Based on the foregoing statements, Defendants argue that the witnesses'

18  opinions lack sufficient indicia of reliability for purposes of Rule 702 because

19  (1) Barrett's only relevant experience with mortgage insurance is his work in

20  this case, ECF 530, at 8; (2) Schwartz likewise has no experience with mort-

21  gage insurance or reinsurance aside from this case, *id.* at 10; (3) Cummins's

1  admission that he has not examined many mortgage reinsurance contracts and

2  does not know whether "trust caps" are standard means he lacks sufficient fa-

3  miliarity with the subject matter as to which he seeks to testify, *id.* at 13; and

4  (4) Barile seeks to offer an opinion based on industry standards but lacks rele-

5  vant knowledge or experience in the relevant industry, *id.* at 14–15.

6      In response, Plaintiffs argue that Defendants' motion is based on a fal-

7  lacious distinction between mortgage insurance and reinsurance versus other

8  types of insurance and reinsurance. ECF 535, at 10. Plaintiffs contend that "*all*

9  insurance is fundamentally about risk transfer (or the lack thereof in certain

10 types of reinsurance), and [is] based on common economic, actuarial, and ac-

11 counting principles." *Id.* (emphasis in original) (citing ECF 365-2, Ex. 1, at 12).[2]

12 They further contend that because all four witnesses have "decades of experi-

13 ence with insurance, reinsurance, and risk transfer," they are qualified to tes-

14 tify as experts as to whether Atrium provided real reinsurance and whether

15 the value of compensation paid for Atrium's services exceeded the reinsur-

16 ance's value. *Id.* at 12. To support that position, Plaintiffs emphasize that the

17 court acknowledged that the HUD Letter—which the parties and the court

---

[2] The citation in Plaintiffs' brief is to the expert report proffered by their witness Barrett. The court doubts whether it is valid to cite a challenged expert's report as support for a factual statement offered to support the admissibility of that same expert's testimony, but it is unnecessary to resolve that question here for the reasons discussed below.

1    have accepted as providing the proper test for determining whether captive

2    reinsurance agreements comply with RESPA, *see Munoz*, 478 F. Supp. 3d at

3    977 & n.17—"does not set forth any specific criteria for determining what con-

4    stitutes a 'real transfer of risk.' " ECF 535, at 18 (quoting ECF 520, at 5, which

5    described Plaintiffs' argument about the HUD Letter and characterized it as

6    correct).

7          Defendants argue that Plaintiffs' own experts Schwartz and Cummins

8    acknowledge that there are differences between mortgage insurance and other

9    types of property and casualty insurance, such that expertise in another area

10   of insurance does not translate to expertise in mortgage insurance. ECF 530,

11   at 6–7 (citing ECF 530-5, at 252:13–253:4; ECF 530-4, at 36:21–37:3). As Plain-

12   tiffs correctly note, however, when the court ruled on Defendants' motion to

13   strike Plaintiffs' expert reports, the court concluded that "all four experts came

14   to their conclusions on the basis of extensive professional, technical, and aca-

15   demic experience in the fields of accounting, auditing, actuarial sciences, and

16   risk management, especially as they relate to risk transfer, insurance, and re-

17   insurance," and the court concluded that the reports were reliable. *Munoz*, 478

18   F. Supp. 3d at 967. While it is true that the court was addressing the expert

19   reports themselves and not the experts' proposed trial testimony, and while it

20   is also true that prior rulings are not controlling, it is striking that (1) Defend-

21   ants fail to take issue with the court's prior finding and (2) Defendants fail to

1    cite any authority to establish that the court's prior finding was incorrect as to

2    what constituted the "relevant discipline" (aside from limited case law relating

3    to how an expert selects the materials on which he will base his analysis, *see*

4    ECF 530, at 19).

5         The court can find no reason to disturb its prior finding. Particularly in

6    view of the HUD Letter's silence as to specific criteria for determining what

7    constitutes a "real transfer of risk," the court concludes that Plaintiffs' experts

8    have "a reliable basis in the knowledge and experience of the relevant disci-

9    pline." *City of Pomona*, 750 F.3d at 1044. To the extent Defendants believe the

10   jury should find the experts less than credible, Defendants are free to employ

11   "vigorous cross-examination[ and] presentation of contrary evidence." *Wendell*,

12   858 F.3d at 1238.

13                                          **II.**

14        In addition to the Rule 702 argument, Defendants contend that Plain-

15   tiffs' experts fail to satisfy the *Daubert* requirement that their opinions "rest

16   on a reliable foundation and [be] relevant." ECF 530, at 15 (alteration Defend-

17   ants') (quoting *Daubert*, 509 U.S. at 597).

18                                          **A.**

19        Defendants contend that Barrett and Schwartz rely on "the wrong legal

20   standard" because they opine that the captive reinsurance agreements at issue

21   did not comply with certain accounting standards, such that there was no risk

1  transfer. *Id.* This issue is substantially similar to an issue raised in Defend-

2  ants' motion *in limine* #6, in which Defendants asked the court to preclude

3  Barrett and Schwartz from presenting testimony and evidence as to what De-

4  fendants characterized as "confusing and prejudicial accounting standard evi-

5  dence." ECF 474, at 3 (title case removed). The court denied that motion "with-

6  out prejudice to Defendants' right to object at trial to particular pieces of evi-

7  dence (as opposed to the category of evidence as a whole)." ECF 520, at 6. In so

8  ruling, the court explained that in view of the HUD Letter's silence as to the

9  criteria for finding a "real transfer of risk," the court was unable to conclude

10  that the accounting standards were irrelevant or inadmissible. *Id.*

11      Defendants acknowledge, as they must, that the HUD Letter's standard

12  is whether there was "a real transfer of risk," and they now argue that the

13  letter does not incorporate accounting standards "as part of its guidance as to

14  what constitutes 'a real transfer of risk.'" ECF 530, at 16. But Plaintiffs are

15  also correct that the HUD Letter likewise does not "prohibit[ ] or exclude[ ] the

16  use of accounting or actuarial standards to determine whether an agreement

17  transfers real risk." ECF 535, at 19. The court can find no reason to depart

18  from its prior determination that there is no basis on which to conclude that

19  accounting (and actuarial) standards are irrelevant and immaterial such that

20  they represent the wrong legal standard. Again, Defendants are free to employ

8

1    cross-examination and competing evidence in their attempt to convince the

2    jury not to rely on Plaintiffs' experts.

3                                           **B.**

4          Finally, Defendants argue that Barile's opinion that the captive reinsur-

5    ance agreements "did not 'conform to reinsurance industry custom and practice

6    and d[id] not constitute valid reinsurance' should be excluded because it will

7    not be helpful to the jury." ECF 530, at 21 (brackets Defendants'). Defendants

8    argue that the issue for trial is whether the safe harbor provisions of RESPA's

9    Section 8(c) apply in this case and that conformance to industry custom and

10   practice is not relevant to that question. *Id.*

11         As the court recently explained in its order granting Plaintiffs' motion *in*

12   *limine* #5, the HUD Letter prescribes a two-part test for determining whether

13   a captive reinsurance agreement violates RESPA—(1) "whether the reinsur-

14   ance arrangement *meets three requirements* that establish that reinsurance is

15   actually being provided in return for the compensation" and (2) "whether the

16   compensation exceeds the value of the reinsurance." ECF 511, at 4–5 (empha-

17   sis added) (quoting ECF 342-3, at 5). The first of the "three requirements," in

18   turn, is whether there is "a legally binding contract for reinsurance with terms

19   and conditions conforming to industry standards." *Id.* at 5 (quoting ECF 342-3,

20   at 6) (emphasis removed in the court's prior order).

1    Defendants contend, however, citing the court's summary judgment rul-

2    ing, that only the third of the "three requirements" is disputed—or, put differ-

3    ently, that it is undisputed that the captive reinsurance agreements did satisfy

4    the "conforming to industry standards" requirement. ECF 530, at 21 (citing

5    *Munoz*, 478 F. Supp. 3d at 977 ("Here, the parties dispute only the third prong

6    of the test, whether the CRAs resulted in a real transfer of risk.")). However,

7    as Plaintiffs correctly note, in the parties' joint pretrial statement—which was

8    filed approximately seven months *after* the summary judgment ruling—the

9    subsection of the "Disputed Factual Issues" titled "Defendants' Position" in-

10   cludes the following paragraph:

11       Finally, Plaintiffs assert that specific terms of the reinsurance
12       agreements at issue themselves eliminate the risk the agreements
13       posed to Atrium. To the contrary, the facts at trial will prove that
14       the provisions at issue were all industry standard, and none of
15       these provisions eliminated the real risk of loss Atrium faced.

16   ECF 431, at 10 ¶ 5 (joint pretrial statement); ECF 535, at 27 (Plaintiffs' brief

17   citing joint pretrial statement). Thus, Defendants themselves characterize the

18   "conformance to industry standards" issue as being part of the "real transfer of

19   risk" issue. Moreover, Plaintiffs raise a valid point—why would Defendants

20   have characterized this issue as disputed in the joint pretrial statement if they

21   believed it is not in dispute?

22       Accordingly, Defendants' own submissions undermine their argument on

23   the relevance of Barile's proposed testimony. If Defendants now believe

1    conformance to industry standards is irrelevant to the real transfer of risk,

2    they may attempt to cross-examine Barile to that effect.

3                               **Conclusion**

4        It is hereby **ORDERED** that Defendants' motion to exclude the testi-

5    mony of Plaintiffs' experts Barrett, Schwartz, Cummins, and Barile (ECF 530)

6    is **DENIED.**

7    Dated: February 2, 2022                /s/ *M. Miller Baker*

8                                         M. Miller Baker, Judge[3]

---

[3] Judge of the United States Court of International Trade, sitting by designation.