# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFRAIN MUNOZ, *individually and on behalf of all others similarly situated, et al.*, | No. 1:08-cv-00759-MMB-BAM |
| Plaintiffs, | **OPINION AND ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CLASS CERTIFICATION** |
| v. | |
| PHH MORTGAGE CORPORATION, *et al.*, | |
| Defendants. | |

Before the court is Plaintiffs' unopposed motion for preliminary approval of a class action settlement. *See* ECF 614. For the reasons explained below, the court grants both preliminary approval of the proposed settlement and conditional certification of the settlement class.

## Background

The court has summarized this case's lengthy factual and procedural history, dating back over 17 years, multiple times in various orders. *See, e.g.*, *Munoz v. PHH Mortg. Corp.*, 478 F. Supp. 3d 945, 954–61 (E.D. Cal. 2020) (ECF 417); ECF 538, at 2–7. There is little benefit to be gained by repeating that background here; instead, the court addresses such matters below in conjunction with the substantive issues to which they relate. For present

1  purposes, suffice it to say that the court scheduled a combined *Daubert*[1] hear-

2  ing and bench trial on economic harm for late March 2025 to decide the dis-

3  puted issue of Plaintiffs' standing. ECF 602. This was to be followed, if neces-

4  sary, by a trial on the merits in October. ECF 604. About a week before the

5  bench trial, the parties notified the court that they had reached an agreement

6  in principle to settle, so the court cancelled both that hearing and the later jury

7  trial. ECF 608. A few months later, Plaintiffs filed the pending motion for pre-

8  liminary approval of the settlement agreement and for certification of a settle-

9  ment class. ECF 614.

10  **I.   Legal standards**

11       Federal Rule of Civil Procedure 23 governs class actions. Court approval

12  is required for any settlement, voluntary dismissal, or compromise of "[t]he

13  claims, issues, or defenses of a certified class—or a class proposed to be certi-

14  fied for purposes of settlement." Fed. R. Civ. P. 23(e). Thus, the motion now

15  before the court presents two overall issues—whether to certify the settlement

16  class and whether to give preliminary approval to the settlement itself.

17       **A.   Certification of settlement class**

18       Certification of a class, such as the settlement class proposed here, re-

19  quires that the class is so numerous that joinder of all members is

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

1    impracticable, there are questions of law or fact common to the class, the

2    claims brought by the representative parties are typical of the class members'

3    claims or defenses, and the representative parties fairly and adequately pro-

4    tect the class members' interests. *Id.* 23(a)(1)–(4). If the court finds all four

5    elements satisfied, it may then certify the class if it finds that any of the cir-

6    cumstances described in Rule 23(b) apply.

7        A court faced with a motion to certify a settlement class must give the

8    Rule 23 considerations "undiluted, even heightened, attention" because it "will

9    lack the opportunity, present when a case is litigated, to adjust the class, in-

10   formed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*,

11   521 U.S. 591, 620 (1997). The requirements set forth in Rule 23(a) and (b) apply

12   to settlement classes because Rule 23(e) "was designed to function as an addi-

13   tional requirement, not a superseding direction, for the 'class action' to which

14   Rule 23(e) refers is one qualified for certification under Rule 23(a) and (b)." *Id.*

15   at 621. The "dominant concern[s]" under the latter two provisions are "whether

16   a proposed class has sufficient unity so that absent members can fairly be

17   bound by decisions of class representatives," an issue that "persists when set-

18   tlement, rather than trial, is proposed." *Id.*

19       **B.    Approval of settlement**

20       Rule 23 also imposes several prerequisites to approval of a settlement.

21   "The parties must provide the court with information sufficient to enable it to

3

1    determine whether to give notice of the proposal to the class," Fed. R. Civ. P.

2    23(e)(1)(A), and the court must then direct the giving of notice and conduct a

3    hearing before approving the settlement, *id.* 23(e)(2).[2] "The parties seeking ap-

4    proval must file a statement identifying any agreement made in connection

5    with the proposal." *Id.* 23(e)(3). And the court must allow class members an

6    opportunity to object to the proposed settlement. *Id.* 23(e)(5). In addition, in

7    cases where (as here) the court certified the class action under Rule 23(b)(3),[3]

8    "the court may refuse to approve a settlement unless it affords a new oppor-

9    tunity to request exclusion to individual class members who had an earlier

10   opportunity to request exclusion but did not do so." *Id.* 23(e)(4).

11       The Ninth Circuit holds district courts to a "higher procedural standard"

12   when considering whether a proposed class-action settlement is substantively

13   fair. *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019). The

14   "heightened inquiry" applies regardless of whether the settlement comes be-

15   fore or after class certification. *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th

16   Cir. 2021). The concern is to ensure that there is no collusion or other conflict

---

[2] Rule 23(e)(2) prescribes four factors the court must consider in deciding whether a proposed settlement is "fair, reasonable, and adequate," but they are for consideration during the fairness hearing, not as part of the preliminary approval process.

[3] Rule 23(b)(3) allows a federal district court to certify a class if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

1    of interest that would breach "the fiduciary duty owed the class during settle-

2    ment." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th

3    Cir. 2011). While the court must ultimately weigh the eight factors prescribed

4    by *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir.

5    2004), a full fairness analysis is unnecessary at the preliminary approval

6    stage. *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008). Instead,

7    preliminary approval—and notice to the class members of a formal fairness

8    hearing—is appropriate if the settlement appears to be the product of serious,

9    informed, non-collusive negotiations; has no obvious deficiencies; does not im-

10    properly grant preferential treatment to class representatives or segments of

11    the class; and falls within the range of possible approval. *In re Tableware An-*

12    *titrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing *Schwartz v.*

13    *Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa.

14    2001), which in turn cited *Manual for Complex Litigation 2d* § 30.44 (1985)).

15    **II.    Analysis**

16         **A.    Settlement class**

17         The parties have proposed certification of the following settlement class

18    under Rules 23(a) and 23(b)(3):

19         All persons who obtained residential mortgage loans originated
20         and/or acquired by PHH and/or its affiliates on or after January 1,
21         2007, through December 31, 2009, and, in connection therewith,
22         purchased private mortgage insurance and whose loans were in-
23         cluded within PHH's captive mortgage reinsurance agreements.

5

1    ECF 614, at 21. They note that the proposed class is slightly enlarged from the

2    one originally certified in 2013, which used June 2, 2007, as the beginning date.

3    *Id.* at 34. While the proposed class members whose loans originated, or were

4    acquired, between January 1 and June 2, 2007, were not part of the class dur-

5    ing the litigation process, Plaintiffs point out that the statute of limitations on

6    such individuals' claims has "likely long since run," such that the settlement

7    "provides a benefit that is otherwise foreclosed to them." *Id.*

8        Aside from that expansion, the proposed settlement class is materially

9    identical to the class the court certified in 2015 when it adopted the Magistrate

10   Judge's findings and recommendations filed May 15, 2013 (ECF 230), except

11   as to a proposed "tolling subclass" that is no longer at issue. *See* ECF 288. In

12   an exceptionally comprehensive analysis, the Magistrate Judge found all four

13   of the Rule 23(a) factors satisfied, ECF 230, at 14–34, and found certification

14   under Rule 23(b)(3) appropriate, *id.* at 34–39. The court later denied multiple

15   motions by Defendants to decertify the class. *See* 478 F. Supp. 3d at 984–88

16   (ECF 417); ECF 538, at 18–20. The court can find no reason to depart from its

17   previous analyses.

18       Finally, the proposed settlement class does not present a Rule 23(e)(4)

19   problem because the parties have proposed giving all potential class mem-

20   bers—regardless of whether they were covered by the previous certification or

are newly added to the settlement class—the chance to opt out, and the order the court is entering together with this opinion effectuates that option.

The court therefore grants the motion for conditional certification of the settlement class as proposed by the parties.

## B.    Settlement agreement

### 1.    Procedural fairness

The court must next consider whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations." *In re Tableware*, 484 F. Supp. 2d at 1079. "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (cleaned up and citing *Nat'l Rural Telecommc'ns Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527–28 (C.D. Cal. 2004)). This case has been pending for over 17 years. The parties have exchanged voluminous amounts of discovery, undertaken two mediation sessions, litigated an appeal to the Ninth Circuit, and ultimately reached an agreement shortly before a bench trial that could have resulted in a victory for Defendants. Those facts all point to a conclusion that the parties' negotiations here were intensive and non-collusive, supporting a finding of fairness.

1    There is more to the analysis, however. The court must "be particularly

2    vigilant not only for explicit collusion, but also for more subtle signs that class

3    counsel have allowed pursuit of their own self-interests and that of certain

4    class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947. Exam-

5    ples of such signs include counsel receiving a "disproportionate distribution of

6    the settlement" or obtaining a large fee while the class members receive no

7    monetary payment. *Id.* Another is "when the parties negotiate a 'clear sailing'

8    arrangement providing for the payment of attorneys' fees separate and apart

9    from class funds, which carries the potential of enabling a defendant to pay

10    class counsel excessive fees and costs in exchange for counsel accepting an un-

11    fair settlement on behalf of the class." *Id.* (cleaned up). A third is where the

12    settlement directs that fees not awarded will revert to the defendants rather

13    than being added to the class fund. *Id.*

14    Here, the proposed agreement provides that each member of the settle-

15    ment class who submits a valid and timely claim will receive an $875 payment

16    per affected loan. ECF 614-2, at 12.[4] The parties have explained that there is

17    no hard cap on the gross settlement amount—in other words, unlike many

18    class-action settlements where there is a fixed pool of money and an individual

---

[4] A particular claimant could receive multiple payments if the borrower had multiple
affected loans. *See id.* ("Each Settlement Class Member who makes a valid claim shall
be mailed one settlement check per affected loan.")

1   payment depends on the number of people submitting claims, class members

2   here will receive the full $875 per loan regardless of the number of other claim-

3   ants. ECF 614, at 22. Their estimate of the overall aggregate payout to class

4   members, based on Defendants' records and the parties' approximation of the

5   total class membership, is approximately $30,500,000. *Id.* The settlement

6   agreement further provides that class counsel shall seek a maximum of

7   $9,031,000 in attorneys' fees. ECF 614-2, at 18. The fee award is to be separate

8   from any claim payments to class members. ECF 614, at 23.

9        The court finds that the proposed fee award is not disproportionate to

10  the estimated class payout. Assuming, for present purposes, that the parties'

11  estimated aggregate claims payment figure is the actual amount paid, and that

12  the court awards the maximum stated amount of attorneys' fees, the fee award

13  would come to 29.6 percent of the claims payout. That percentage is somewhat

14  less than the one-third figure that is common in contingent-fee arrangements.

15  And, as noted, the fee award covers around 17 years of work.

16       The settlement does allow for a "clear sailing" arrangement because the

17  parties have represented that Defendants will not object to the payment of an

18  attorneys' fees award, provided it does not exceed the agreed-upon maximum

19  figure. *Id.* In theory, therefore, class counsel's payment could represent a

20  higher percentage of the total class payout if the number of claims submitted

21  falls significantly short of the estimated count, or if the administrator rejects

1   claims as improper or unsupported by sufficient information. But even with

2   the clear sailing provision, the class still stands to receive a greater monetary

3   award than it might have had the case not settled. The parties reached their

4   settlement a week before a combined *Daubert* hearing and bench trial on eco-

5   nomic harm. Had the court ruled for Defendants on those issues, Plaintiffs

6   would have lost the case because they would have lacked Article III standing.

7        Therefore, while the Ninth Circuit has admonished district courts that

8   "clear sailing" provisions "are important warning signs of collusion," *Kim v.*

9   *Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (citing *Roes*, 944 F.3d at 1051), and

10  that they require close scrutiny as to "the relationship between attorneys' fees

11  and benefit to the class," *id.*, here the court preliminarily finds that on balance

12  the benefit to the class members is significant enough to overcome the prospect

13  of collusion. That is especially true for the new settlement class members who

14  were not part of the earlier litigation class and whose claims would otherwise

15  be time-barred. But the court directs the parties to be prepared to discuss this

16  issue further at the final fairness hearing in view of the importance the Ninth

17  Circuit places on it.

18       Finally, while the settlement here does effectively provide that legal fees

19  not awarded will not go to the class members, the court concludes that the

20  arrangement does not render the settlement unfair because each claimant is

21  to receive the same amount regardless of the fee award. In other words, the

1    class payout is $875 times the number of valid timely claims, independent of

2    what happens with attorneys' fees. Adding "unawarded" fees to the hypothet-

3    ical class pool would not increase the amount paid—but a larger-than-antici-

4    pated fee award likewise would not decrease the amount.

5                    **2.    Substantive fairness**

6         The remaining issues the court must address are whether the proposed

7    settlement agreement has no obvious deficiencies, does not improperly grant

8    preferential treatment to class representatives or segments of the class, and

9    falls within the range of possible approval.

10        The court can find no obvious deficiencies in the settlement agreement.

11   The agreement does grant the five named class representatives "service

12   awards" of up to $5,000 each, subject to court approval. ECF 614-2, at 17. Such

13   awards are neither a deficiency nor improper "preferential treatment." The

14   named class representatives are also the named plaintiffs. The Ninth Circuit

15   has held that "named plaintiffs, as opposed to designated class members who

16   are not named plaintiffs, are eligible for reasonable incentive payments" if the

17   court considers "relevant factors including the actions the plaintiff has taken

18   to protect the interests of the class, the degree to which the class has benefitted

19   from those actions, [and] the amount of time and effort the plaintiff expended

20   in pursuing the litigation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir.

21   2003) (cleaned up). Here, the named plaintiffs have been actively engaged in

1    this litigation for about 17 years, participated in the discovery process, and

2    obtained a settlement that would provide significant monetary payments to

3    many borrowers. The incentive payments appear reasonable.[5] *Cf. Lewis v.*

4    *Starbucks Corp.*, No. 2:07-cv-00490, 2008 WL 4196690, at *7 (E.D. Cal. Sept.

5    11, 2008) (preliminarily finding $5,000 incentive payment reasonable). The

6    court will further consider this issue as part of the final approval hearing.

7        Determining whether the proposed settlement agreement is "within the

8    range of possible approval" requires preliminary consideration of the factors

9    listed in Rule 23(e)(2): whether the class representatives and counsel have ad-

10   equately represented the class, Fed. R. Civ. P. 23(e)(2)(A); whether the pro-

11   posed agreement resulted from arm's-length negotiations, *id.* 23(e)(2)(B);

12   whether the relief provided for the class is adequate, *id.* 23(e)(2)(C); and

13   whether the proposal "treats class members equitably relative to each other,"

14   *id.* 23(e)(2)(D). Adequacy of relief, in turn, requires consideration of "the costs,

15   risks, and delay of trial and appeal," *id.* 23(e)(2)(C)(i); the effectiveness of the

16   proposed method of distributing relief and processing class members' claims,

17   *id.* 23(e)(2)(C)(ii); the terms of the attorneys' fee award, including timing of

---

[5] The parties' estimate of a total class payout of $30,500,000 at $875 per eligible loan equals 34,857 eligible loans. The maximum aggregate incentive payment of $25,000 is a minuscule fraction (which is eight ten-thousandths as a raw figure, or eight one-hundredths of one percent, of the whole) of the estimated total class payout. *Cf. id.* at 976–77 (citing cases in which courts of appeals affirmed small incentive awards when the named plaintiffs were small fractions of large classes).

1  payment, *id.* 23(e)(2)(C)(iii); and "any agreement required to be identified un-

2  der Rule 23(e)(3)," *id.* 23(e)(2)(C)(iv).

3      The court easily concludes that the named plaintiffs (as representatives)

4  and counsel have adequately represented the class for the reasons already

5  stated involving this case's years of litigation and the effective result. Also for

6  the reasons discussed above, the court preliminarily concludes that the pro-

7  posed settlement resulted from arm's-length negotiations, subject to further

8  discussion of the fee award at the final approval hearing. And the proposal

9  treats class members equitably because they will receive the same payout per

10  affected loan regardless of the number of claims submitted.

11      As to the adequacy-of-relief factors, the class members faced a material

12  risk of obtaining no relief had the case continued. The court could have found

13  that the plaintiffs, and by extension the class, lacked Article III standing, or

14  the jury could have found for Defendants on the merits.

15      Consideration of "the effectiveness of any proposed method of distrib-

16  uting relief" and of claims processing requires the court to consider the pro-

17  posed settlement's provisions for giving notice to class members. "Adequate

18  notice is critical to court approval of a class settlement under Rule 23(e)."

19  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on*

20  *other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

1   "[T]he class must be notified of a proposed settlement in a manner that

2   does not systematically leave any group without notice; the notice must indi-

3   cate that a dissident can object to the settlement and to the definition of the

4   class . . . ." *Officers for Justice v. Civil Serv. Comm'n of City and County of San*

5   *Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). The court finds the notices here

6   to be adequate to provide class members with sufficient information to make

7   informed decisions. The procedures include sending notice by U.S. mail and,

8   where possible, electronic mail, establishment of a website and a toll-free

9   phone number, and follow-up reminder notices as needed. The proposed notices

10  clearly and concisely convey necessary information about the litigation, the

11  right to opt out and appear through separate counsel if desired, the need to

12  timely submit a claim form and how to do so, and the binding effect of the

13  settlement on class members who do not opt out. The notices therefore comply

14  with Rule 23(e)'s requirement that they include "sufficient detail simply to

15  alert those with adverse viewpoints to investigate and to come forward and be

16  heard." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir.

17  2015).

18      Finally, nothing in the motion for preliminary approval suggests that

19  there is any "agreement made in connection with the proposal," Fed. R. Civ. P.

20  23(e)(3), other than the settlement agreement itself.

14

1  Thus, the court preliminarily finds the proposed settlement agreement

2 is fair for purposes of giving notice and scheduling a final approval hearing.

3 **III. Order**

4  Based on the foregoing findings, the court orders as follows:

5  1. The court has subject-matter jurisdiction over this matter under

6 28 U.S.C. § 1332(d) and has personal jurisdiction over the parties and the set-

7 tlement class members as defined below in ¶ 3. Venue is proper in this district.

8  2. The motion for preliminary approval of settlement is granted.

9  3. The court provisionally certifies the following class under Fed. R.

10 Civ. P. 23(b)(3) and 23(e):

11  All persons who obtained residential mortgage loans originated
12  and/or acquired by PHH and/or its affiliates from January 1, 2007,
13  through December 31, 2009, and, in connection therewith, pur-
14  chased private mortgage insurance and whose loans were included
15  within PHH's captive mortgage insurance agreements, including
16  successors, heirs, and/or assigns of such persons.[6]

17 The following entities and individuals are excluded from the settlement class:

18 (a) Defendants' officers, directors, and employees; (b) Defendants' affiliates and

19 affiliates' officers, directors, and employees; (c) Defendants' future, present,

20 and former direct and indirect parents, subsidiaries, divisions, affiliates, pre-

21 decessors, successors, and assigns, and their future, present, and former

---

[6] Each loan obtained by a person meeting this class definition will be defined as a single "settlement class member," regardless of the number of original obligors on such loan, and only one claim will be allowed per loan/settlement class member.

directors, officers, employees, managers, servants, principals, agents, insurers, reinsurers, shareholders, investors, attorneys, advisors, consultants, representatives, partners, joint venturers, divisions, predecessors, successors, assigns, and agents thereof; (d) all persons who have previously excluded themselves from the certified class (*see* ECF 230, 288, and 314); and (e) any person otherwise in the settlement class who timely and properly excludes himself from the settlement class as provided in the settlement agreement and class notices.

4.      The court preliminarily approves the settlement agreement and its terms under Fed. R. Civ. P. 23(e) for the reasons stated in Part II of the foregoing analysis.

5.      The court also finds that the class defined in ¶ 3 meets the requirements for certification under Fed. R. Civ. P. 23(a) and 23(b)(3) for settlement purposes only. The settlement class members are sufficiently numerous for joinder to be impracticable; questions of law and fact are common to settlement class members; the proposed class representatives' claims are typical of those of class members; the proposed representatives and settlement class counsel have fairly and adequately represented, and will continue to fairly and adequately represent, the class members' interests; and the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3) are satisfied.

6.   Certification of the settlement class is solely for settlement purposes and is without prejudice to the settling parties if the settlement is not finally approved by the court or otherwise does not take effect. If either of those events occurs, the parties preserve all rights and defenses regarding class certification.

7.   The court appoints Plaintiffs as settlement class representatives.

8.   The court appoints Kessler Topaz Meltzer Check, LLP, and Larson LLP as settlement class counsel.

9.   The court appoints JND Legal Administration as settlement administrator and directs it to carry out all duties and responsibilities of that role as specified in the settlement agreement and herein.

***Notice Program***

10.   The court approves the proposed notice plan set forth in the motion for preliminary approval under Fed. R. Civ. P. 23(e)(1), 23(c)(2)(A), and 23(c)(2)(B). The notice plan meets the due process requirements of the U.S. Constitution and Rule 23, and for the reasons set forth in the foregoing analysis, the court finds it is the best notice practicable under the circumstances and thus will constitute due and sufficient notice to all persons entitled to such.

11.   The proposed form and content of the settlement class notices, attached to the settlement agreement as Exhibits B and C (ECF 614-2, .PDF pages 57–59 and 61–72, respectively), are adequate and will give the

17

1   settlement class members sufficient information to enable them to make in-

2   formed decisions as to whether to remain in the settlement class, object, or opt

3   out, as well as about the proposed settlement and its terms. The proposed no-

4   tices clearly and concisely state, in plain, easily understood language: (a) the

5   nature of the action; (b) the definition of the settlement class; (c) the class

6   claims and issues; (d) class members' right to enter an appearance through

7   counsel if desired; (e) the necessity of submitting a timely claim via a valid

8   claim form to be eligible to receive compensation under the settlement; (f) the

9   time and manner for submitting a claim form; (g) that the court will exclude

10  from the settlement class any member who timely and validly requests such;

11  (h) the time and manner for requesting exclusion; and (i) the binding effect of

12  a class judgment on settlement class members under Rule 23(c)(3). The parties

13  may make non-material changes to the proposed notice plan, including the

14  form and content of the settlement class notices, without seeking further court

15  approval.

16      12.    The settlement administrator and the parties shall implement the

17  notice plan as set forth in the settlement agreement as soon as practicable after

18  entry of this preliminary approval order, but in no event later than September

19  10, 2025.

20      13.    All reasonable and necessary costs incurred by the settlement ad-

21  ministrator will be paid by Defendants consistent with the settlement

18

1  agreement, and specifically subject to the agreement that Defendants shall pay

2  all notice and settlement administration costs up to $500,000.

3      14.    Defendants, with the assistance of the settlement administrator,

4  shall comply with the obligation to give notice under the Class Action Fairness

5  Act, 28 U.S.C. § 1711 *et seq.*, consistent with the settlement agreement's terms,

6  and specifically subject to the agreement that Defendants shall pay all notice

7  and settlement administration costs up to $500,000.

8      15.    In connection with the forthcoming motion for final approval, the

9  settlement administrator will provide settlement class counsel with a declara-

10 tion to be filed with the court (a) identifying the people who have timely and

11 validly opted out of the settlement class and (b) detailing the scope, method,

12 and results of the notice plan.

13 ***Opt-Out and Objection Procedures***

14     16.    Settlement class members may exclude themselves from the class

15 by personally signing and submitting a written request to the settlement ad-

16 ministrator. Electronic signatures, including DocuSign, are invalid and will

17 not be considered personal signatures. The request must be postmarked or

18 e-mailed to the address provided in the settlement class notices or on the set-

19 tlement website no later than the opt-out deadline and must contain clear and

20 unambiguous wording substantially in the form, "I wish to exclude myself from

21 the settlement class in *Munoz, et al. v. PHH Corp., et al.*, No. 1:08-cv-00759-

1    MMB-BAM (E.D. Cal.)." For an opt-out to be valid, in addition to the statement

2    unambiguously requesting exclusion, the written request must include all in-

3    formation specified in the settlement class notices, including (a) name and ad-

4    dress of the potential class member requesting exclusion; (b) loan number and

5    address of the property bringing the potential class member within the scope

6    of the settlement class; and (c) personal signature of the potential class mem-

7    ber requesting exclusion. Settlement class members wishing to opt out must

8    do so on an individual basis—so-called "mass" or "class" opt-outs are not per-

9    mitted and will be of no force or effect. Any potential settlement class member

10   who does properly opt out shall (a) not be bound by any order or judgments

11   relating to the settlement; (b) not be entitled to relief under, or be affected by,

12   the settlement agreement; (c) not gain any rights by virtue of the settlement

13   agreement; and (d) not be entitled to object to any aspect of the settlement.

14       17.   The settlement administrator will provide copies of all opt-out re-

15   quests to settlement class counsel and Defendants' counsel within ten days of

16   the receipt of each such request. The settlement administrator and the settling

17   parties shall, promptly after receipt, provide copies of any requests for exclu-

18   sion, objections, and/or related correspondence to each other.

19       18.   Upon the settlement administrator's receipt of a timely and valid

20   exclusion request, the potential member shall be deemed excluded from the

21   settlement class. If a loan that may be subject to this settlement has co-

1  borrowers and one of them opts out while the other submits a valid and timely

2  claim form, the co-borrower who submits the claim will be entitled to receive

3  the full settlement relief.

4      19.    Any settlement class member who does not submit a written re-

5  quest to opt out may present written objections, if any, explaining why the

6  member believes the settlement, or any part thereof (including attorneys' fees

7  and class representative incentive awards), should not be approved by the

8  court as fair, reasonable, and adequate.

9      20.    To be considered valid, an objection must be in writing, must be

10  delivered to settlement class counsel and Defendants' counsel and filed with

11  the court, must be postmarked or filed no later than November 10, 2025, and

12  must include the following: (a) a detailed statement of the settlement class

13  member's objection(s), as well as the specific reasons, if any, for each such ob-

14  jection, including all evidence, argument, and legal authority the objector

15  wishes to bring to the court's attention; (b) the objector's full name, current

16  address, and telephone number; (c) the loan number and address of the prop-

17  erty bringing the objector within the scope of the settlement class; (d) an un-

18  ambiguous statement that the member objects to the settlement either in

19  whole or in part; (e) a statement of whether the objection applies only to the

20  objector or to the entire settlement class; (f) a statement of whether the objector

1    intends to appear at the final approval hearing; and (g) a statement of whether

2    the objector will be represented by separate counsel.

3        21.    A settlement class member may object on his or her own behalf or

4    through an attorney hired at the objector's own expense, provided the objector

5    has not submitted a written request to opt out. The written statement submit-

6    ted by a member objecting through counsel must include the items set forth in

7    the preceding paragraph as well as the number of times the member has ob-

8    jected to a class action settlement within the five years preceding the date of

9    the objection, the caption of each case in which the individual made such ob-

10   jection(s), and a statement of the nature of the objection(s). Attorneys asserting

11   objections on behalf of class members must (a) file a notice of appearance with

12   the court no later than the deadline for submitting objections, or at such time

13   as the court may otherwise direct; (b) either file a sworn declaration attesting

14   to representation of each settlement class member on whose behalf the objec-

15   tion is asserted or submit (*in camera*) a copy of any contract between the attor-

16   ney and each such class member, and specify the number of times within the

17   preceding five years that the attorney or his law firm has objected to a class-

18   action settlement; (c) disclose any agreement, formal or informal, with other

19   attorneys or law firms regarding the objection; and (d) comply with the proce-

20   dures described in this order and the settlement agreement.

22.     Settlement class counsel or Defendants' counsel may notice the deposition of an objecting settlement class member and/or seek the production of documents and tangible things relevant to the objections on an expedited basis, including agreements (formal or informal) between the objector's counsel and other attorneys related to the objection. Any objections to the scope of a deposition notice or a request to produce documents or other tangible things issued or served in connection with this provision shall be brought before the court for resolution on an expedited basis.

23.     Unless the court directs otherwise, any settlement class member who fails to comply with the provisions of this order and the terms of the settlement agreement will waive and forfeit any and all rights he, she, or it may have to object to the settlement agreement and/or to appear and be heard on such objection at the final approval hearing. Failure to object waives a settlement class member's right to appeal the final approval order.

24.     Not later than October 27, 2025, settlement class counsel shall file a motion or motions for final approval of the settlement and for attorneys' fees and costs for work performed in connection with the action.

### Final Approval Hearing

25.     The court will hold a final approval hearing on December 17, 2025, at 10:00 a.m., Pacific Time, in the U.S. District Court for the Eastern District of California, Robert T. Matsui United States Courthouse, Courtroom 1, 16th

floor, Sacramento, California. The purpose of that hearing will be to determine whether to grant final approval to the settlement agreement as fair, reasonable, and adequate as required by Fed. R. Civ. P. 23(e).

26.    Any settlement class member wishing to appear at the final approval hearing, whether *pro se* or through counsel, must file a notice of appearance, take all other actions or make any additional filings as may be required under the settlement class notices or as otherwise ordered by the court, and serve the notice of appearance and notice of intent to appear upon settlement class counsel and Defendants' counsel no later than the deadline for filing objections (or such other deadline as ordered by the court). The notice of intent to appear must include the member's full name, address, and telephone number and be accompanied by copies of any papers, exhibits, or other evidence that the member will present to the court at the final approval hearing. Any class member who does not timely file a notice of intent to appear, or files a notice that does not comply with the requirements of the settlement agreement and settlement class notices, will not be entitled to appear at the final approval hearing or raise objections.

27.    Not later than seven days before the final approval hearing, Defendants' counsel and settlement class counsel shall serve on each other, and on all other parties who file notices of appearance, any further documents in support of the proposed settlement, including responses to any papers filed by

1  settlement class members. Defendants' counsel and settlement class counsel

2  must also promptly furnish to each other any and all objections or written re-

3  quests for exclusion they may receive and shall file them with the court prior

4  to the date of the final approval hearing.

5      28.    If the court modifies the date, time, and/or location of the final ap-

6  proval hearing—including changing from an in-person hearing to a videocon-

7  ference—the court will issue an order to that effect and will direct counsel to

8  post the new information on the settlement website.

9      29.    If, for any reason, the court does not enter the proposed final ap-

10  proval order or judgment, or if the terms set forth in either (with the exception

11  of any provision relating to settlement class counsel's attorneys' fees and costs)

12  are materially modified, reversed, or set aside on further judicial review; if for

13  any other reason the settlement does not become final; or if this court, or a

14  reviewing court, takes any action to expand, impair, or reduce the scope or

15  effectiveness of the releases set forth in section III of the settlement agreement

16  or to impose greater financial or other burdens on Defendants than those con-

17  templated in the settlement agreement, then either party shall have the option

18  to terminate the settlement agreement. The parties shall also have the right

19  to terminate the settlement agreement if the number of timely and valid opt-

20  outs exceeds the threshold set forth in the termination provision of that agree-

21  ment.

1      30.    Other than such proceedings as may be necessary to carry out the

2  terms and conditions of the settlement agreement, all proceedings in this ac-

3  tion are hereby stayed and suspended until further order of the court.

4      31.    This preliminary approval order, the settlement agreement, and

5  all negotiations, statements, agreements, and proceedings relating to the set-

6  tlement, as well as any matters arising in connection with settlement negotia-

7  tions, proceedings, or agreements, shall not constitute, be described as, be con-

8  strued as, or be offered or received against Defendants or the other released

9  persons as evidence or an admission of (a) the truth of any fact alleged by any

10  plaintiff in this action; (b) any liability, negligence, fault, or wrongdoing of De-

11  fendants or the other released persons; or (c) that this or any other action was

12  properly certified as a class action for litigation, non-settlement purposes.

13      32.    The court directs the parties to take all necessary and appropriate

14  steps to establish the means necessary to implement the settlement agreement

15  according to its terms if it receives final approval.

16      33.    The court may extend any of the deadlines set forth in this order

17  without further written notice to settlement class members. The parties may

18  also, without first seeking court approval, agree to make non-material modifi-

19  cations in implementing the settlement that are not inconsistent with this or-

20  der.

1        34.    The following table summarizes the dates and deadlines set by this

2    order:

| Date | Event |
|------|-------|
| August 11, 2025 | Entry of preliminary approval order |
| As soon as practicable, but no later than September 10, 2025 | Notice plan begins |
| October 10, 2025 | Substantial completion of direct notice component of notice plan |
| October 27, 2025 | Due date for motion for final approval |
| October 27, 2025 | Due date for motions for attorneys' fees and costs and for awards to settlement class representatives |
| November 10, 2025 | Deadline for objections and opt-outs |
| December 1, 2025 | Due date for reply memoranda (if any) in support of final approval and fee/expense motions |
| December 17, 2025 | Final approval hearing |
| August 11, 2026 | Deadline for submitting claim forms |

3        35.    This order shall have no force and effect if the settlement does not

4    become final. This order shall not be offered by any person as evidence in any

5    action or proceeding against any party hereto in any court, administrative

6    agency, or other tribunal for any purpose, other than to enforce or otherwise

7    effectuate the settlement agreement (or any agreement or order relating

8    thereto), including the releases, or this order. This order also shall not be

offered by any person or received against any of the released persons as evidence, or construed by or deemed to be evidence, of any presumption, concession, or admission by any of the released persons of:

      a.     the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in this action or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in this action or in any litigation, or of any liability, negligence, fault, or wrongdoing of any of the released persons;

      b.     any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any of the released persons or any other wrongdoing by any of the released persons; or

      c.     any liability, negligence, fault, or wrongdoing in any civil, criminal, or administrative action or proceeding by any of the released persons.

36.    The court authorizes the parties to take all necessary and appropriate steps to implement the settlement agreement.

Dated: August 11, 2025              /s/ *M. Miller Baker*
                                  M. Miller Baker, Judge*

---

\* Judge of the United States Court of International Trade, sitting by designation.