1

**LARSON LLP**

2  Stephen G. Larson, Esq. (State Bar No. 145225)

Paul A. Rigali, Esq. (State Bar No. 262948)

3  Steven E. Bledsoe, Esq. (State Bar No. 157811)

4  Catherine S. Owens, Esq. (State Bar No. 307626)

555 South Flower Street, 30th Floor

5  Los Angeles, CA 90071

6  Telephone: (213) 436-4888

7

**KESSLER TOPAZ**

8  **MELTZER & CHECK, LLP**

9  Joseph H. Meltzer, Esq.

Terence S. Ziegler, Esq.

10  Donna Siegel Moffa, Esq.

11  Lisa Lamb Port, Esq.

280 King of Prussia Road

12  Radnor, PA 19087

13  Telephone: (610) 667-7706

14  Facsimile: (610) 667-7056

15  *Counsel for Plaintiffs and the Class*

16  **IN THE UNITED STATES DISTRICT COURT**

17  **FOR THE EASTERN DISTRICT OF CALIFORNIA**

18  EFRAIN MUNOZ, *et al.*,

No. 1:08-cv-00759-MMB-BAM

19  *individually and on behalf of all others similarly situated*,

**PLAINTIFFS' UNOPPOSED**

20  **MOTION FOR ATTORNEYS'**

**FEES, REIMBURSEMENT OF**

21  Plaintiffs,                       **EXPENSES, AND**

**REPRESENTATIVE PLAINTIFF**

22  v.                                **SERVICE AWARDS WITH**

**INCORPORATED**

23  **MEMORANDUM OF POINTS**

24  PHH CORP., PHH MORTGAGE        **AND AUTHORITIES**

CORP., PHH HOME LOANS, LLC.

25  and ATRIUM INSURANCE CORP.,

26                                    Dept:  Ctrm 10 (13th fl.)

27  Defendants.                      Judge: Hon. M. Miller Baker

28

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................... 1

II. CLASS COUNSEL IS ENTITLED TO RECOVER REASONABLE
    LODESTAR FEES UNDER THE APPLICABLE FEE SHIFTING
    STATUTE AND NINTH CIRCUIT PRECEDENT ............................ 3

    A.  Legal Standard for an Award of Attorneys' Fees...................... 3

    B.  The Lodestar Calculation Supports the Fees Requested ......... 4

        1.  Reasonable Rate ...................................................... 6

        2.  Class Counsel's Hours Were Reasonably Expended ........ 8

        3.  The 0.29514 multiplier is presumptively reasonable
            and evidences a lack of collusion ..................................... 9

        4.  The Requested Fee Reasonably Compensates Counsel
            for Pursuing the Class's Claim Under RESPA to an
            Excellent Conclusion and Is Not Disproportionate to
            the Benefit Provided to the Class ..................................... 10

        5.  There Have Been No Objections from Class Members
            to the Requested Fee and The Representative
            Plaintiffs Support the Request ....................................... 15

III. THE REQUESTED EXPENSE REIMBURSEMENT IS
     JUSTIFIED AND APPROPRIATE .................................................... 16

IV. THE REQUESTED INCENTIVE AWARDS ARE
    REASONABLE ................................................................................ 17

V.  CONCLUSION ............................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Apple Inc. Device Performance Litig.,*
  2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) ....................................3, 4

*Cabrera v. Google LLC,*
  2025 WL 2494429 (N.D. Cal. Aug. 29, 2025) ..................................7, 17

*In re California Gasoline Spot Market Antitrust Litig.,*
  2025 WL 822665 (N.D. Cal. Mar. 14, 2025) ..................................3, 4, 9

*Fowler v. Wells Fargo Bank, N.A.,*
  2019 WL 330910 (N.D. Cal. Jan. 25, 2019) ..........................................6

*Fox v. Vice,*
  563 U.S. 826 (2011) .................................................................................9

*Guthrie v. ITS Logistics, LLC,*
  2025 WL 2463123 (E.D. Cal. Aug. 27, 2025).................................17, 18

*Hernandez v. Dutton Ranch Corp.,*
  2021 WL 5053476 (N.D. Cal. Sep. 10, 2021) ........................................9

*Jones v. Tirehub LLC,*
  2024 WL 2132611 (E.D. Cal. May 13, 2024) .........................................7

*Kaupelis v. Harbor Freight Tools USA Inc.,*
  2022 WL 2288895 (C.D. Cal. Jan. 12, 2022) .........................................4

*Lowery v. Rhapsody Int'l, Inc.,*
  75 F.4th 988-89 (9th Cir. 2023) .......................................................4, 13

*Moreno v. City of Sacramento,*
  534 F.3d 1106 (9th Cir. 2008) ...............................................................9

*In re PFA Ins. Mktg. Litig.,*
  2024 WL 1145209, at *17 (N.D. Cal. Feb. 5, 2024.......................13, 14

ii

*Shuman v. SquareTrade Inc.,*
    2023 WL 2311950 (N.D. Cal. Mar. 1, 2023) ...........................................9

*United States v. Allergan, Inc.,*
    2023 WL 4754637 (C.D. Cal. July 24, 2023) .......................................6

*Weiner v. Ocwen,*
    No. 2:14-cv-02597-DJC-SCR (E.D. Cal.) ........................................6, 7

*Wells v. Dci Donor Servs., Inc.,*
    2025 WL 2098702 (E.D. Cal. July 25, 2025) .....................................16

*Yun-Fei Lou v. Am. Honda Motor Co.,*
    2025 WL 1359067 (N.D. Cal. May 9, 2025)................................ *passim*

**Federal Statutes**

12 U.S.C. 2607(d)(5) ...................................................................................3

**Rules**

Fed. R. Civ. P. 23(h) ...................................................................................3

iii

Plaintiffs Efrain Munoz, Leona Lovette, Stefanie Trudnowski, John Hoffman, and Daniel Maga, II (collectively, "Plaintiffs") by and through their counsel, respectfully submit this memorandum of law in support of their Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Representative Plaintiff Service Awards. Defendants PHH Corp., PHH Mortgage Corp., PHH Home Loans, LLC (collectively, "PHH") and Atrium Insurance Corp. ("Atrium") have indicated that they do not oppose the relief requested by this motion.

## I. INTRODUCTION

For over seventeen years, Plaintiffs, through Class Counsel, have pursued their complex RESPA claim, engaging in extensive discovery and factual analysis, pursuing successful motions for class certification and partial summary judgment, and prevailing in their appeal of a devastating pretrial order following significant changes in the law of standing.

The agreement to settle this case was reached in late March 2025 on the eve of a combined *Daubert* hearing and bench trial on economic harm to decide the disputed issue of Plaintiffs' Article III standing. The Settlement, if finally approved, successfully resolves this hard-fought litigation and provides a substantial tangible benefit in the amount of $875 per loan to the Settlement Class Members for more than 33,000 loans. There can be no dispute that it is only because of the dogged perseverance, zealous prosecution and skilled advocacy of Plaintiffs' counsel that this excellent result was achieved. Class Counsel undertook this case on a wholly contingent basis and ran a substantial risk of no recovery whatsoever.[1] They aggressively pursued the claims asserted for over

---

[1] Meltzer Decl., ¶ 46.

1
2
3
4

seventeen years before achieving the Settlement, which provides a meaningful direct benefit to Settlement Class Members. The record before the Court on Final Approval demonstrates that the Settlement is fair, reasonable and adequate.

5
6
7
8
9
10

For their efforts in achieving this excellent result, and in accordance with Fed. R. Civ. P. 23(h) and this Court's Orders, this motion seeks: (1) an award of attorneys' fees in the amount of $9,031,000; (2) reimbursement of litigation expenses in the amount of $2,074,556.63; and (3) service awards of $5,000 to each of the Representative Plaintiffs for their continued contribution to the resolution and service to the Class in this litigation.

11
12
13
14
15
16
17
18
19
20
21
22
23
24

As detailed below and in the supporting Declaration of Joseph H. Meltzer in Support of (1) Final Approval of Settlement; and (2) Attorneys' Fees, Expenses and Service Awards ("Meltzer Decl."), the amount of fees sought represents a negative multiplier; it would compensate Class Counsel for less than one third of their lodestar based upon all of the hours reasonably and necessarily devoted to achieve this unquestionably significant result for the Class. As such, the requested fee award is both objectively and presumptively reasonable. Likewise, the litigation expenses for which counsel seeks reimbursement are justified and fully documented. Meltzer Decl., Section V and Exhibits 5-8. The Representative Plaintiffs have all endorsed the attorneys' fee and litigation expense reimbursement awards requested by this motion. Meltzer Decl., Exhibits 9-13 (Declarations of Plaintiffs Lovette, Trudnowski, Munoz, Hoffman and Maga, respectively).

25
26

Finally, the Service Awards requested are also supported by the declarations of the Representative Plaintiffs and at $5,000 each are

27
28

2

presumptively reasonable under applicable Ninth Circuit precedent. Accordingly, Plaintiffs respectfully request that this motion be granted.

## II.   CLASS COUNSEL IS ENTITLED TO RECOVER REASONABLE LODESTAR FEES UNDER THE APPLICABLE FEE SHIFTING STATUTE AND NINTH CIRCUIT PRECEDENT

### A.   Legal Standard for an Award of Attorneys' Fees

Rule 23 permits a court to award "reasonable attorneys' fees ... that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Just like other aspects of proposed class action settlement agreements, provisions providing for attorneys' fees are "subject to the determination of whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *In re California Gasoline Spot Market Antitrust Litig.*, 2025 WL 822665, at *8 (N.D. Cal. Mar. 14, 2025) (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 963 (9th Cir. 2003)).

"The Ninth Circuit has approved two different methods for calculating a reasonable attorneys' fee depending on the circumstances: the lodestar method or the percentage-of-recovery method." *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *1 (N.D. Cal. Mar. 17, 2021) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)). Here, the Settlement Agreement does not establish a common fund but instead is an uncapped claims-made settlement resolving claims asserted under a fee shifting statute.[2] As such, consistent with the practice in the Ninth Circuit, the lodestar method should be applied. *Yun-*

---

[2] RESPA, Section 8 provides that "[i]n any private action brought pursuant to this subsection, the court may award to the prevailing party the court costs of the action together with reasonable attorneys' fees." 12 U.S.C. 2607(d)(5).

3

1  *Fei Lou v. Am. Honda Motor Co.*, 2025 WL 1359067, at *10 (N.D. Cal. May

2  9, 2025); *Kaupelis v. Harbor Freight Tools USA Inc.*, 2022 WL 2288895, at

3  *8 (C.D. Cal. Jan. 12, 2022) (citing *inter alia Bruno v. Quten Research Inst.*,

4  *LLC*, 2013 WL 990495, at *3-4 (C.D. Cal. Mar. 13, 2013); *Brazil v. Dell Inc.*,

5  2012 WL 1144303, at *1 (N.D. Cal. Apr. 4, 2012); *Parkinson v. Hyundai*

6  *Motor Am.*, 796 F. Supp. 2d 1160 (C.D. Cal. 2010)); *In re Apple Inc. Device*

7  *Performance Litig.*, 2021 WL 1022866, at *1.

8      The goal under either approach is to achieve a reasonable result. *In*

9  *re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *1.

10  Accordingly, the 9th Circuit has instructed:

11      In determining the value of [a] "claims-made" class action

12      settlement, the court should consider its actual or anticipated

13      value to the class members, not the maximum amount that

14      hypothetically could have been paid to the class. The court

15      should also consider engaging in a "cross-check" analysis to

16      ensure that the fees are reasonably proportional to the benefit

17      received by the class members.

18  *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 988-89 (9th Cir. 2023).[3]

19      **B.    The Lodestar Calculation Supports the Fees Requested**

20      "The lodestar method 'requires multiplying a reasonable hourly rate

21  by the number of hours reasonably expended on the case.'" *In Re California*

22  

23  [3] As discussed herein, the claims filed-to-date data already reflects a

24  realistically anticipated value to class members that justifies the fee sought

25  in the circumstance presented. *See Yun-Fei Lou*, 2025 WL 1359067, at *12-

26  17 (May 2025 decision conducting a *Lowry* analysis and holding that

27  compensating class counsel for the work they performed in a consumer case

28  based upon lodestar reasonable despite that the fee exceeded the value paid

to the class).

4

*Gasoline Spot Market Antitrust Litig.*, 2025 WL 822665, at *9 (quoting *Shirrod v. Dir., Office of Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015)). The total cumulative lodestar here, based upon the current hourly rates for each attorney and professional support staff employee that worked on this Action, multiplied by hours reasonably expended by those timekeepers from inception through the August 11, 2025,[4] is $30,727,917.25, as reflected in the chart below:

### SUMMARY CUMULATIVE COUNSEL LODESTAR AND EXPENSE CHART [5]

| Firm Name | Hours | Lodestar | Expenses |
|---|---|---|---|
| Kessler Topaz Meltzer & Check, LLP | 61,301.06 | $28,699,406.50 | $2,039,620.10 |
| Larson LLP | 1,088.20 | $1,080,241.00 | $17,013. 40 |
| Bramson, Plutzik, Mahler & Birkhaeuser LLP | 145.15 | $102,929.75 | $2,149.11 |
| Joseph Hage Aaronson LLC | 643.60 | $716,295.00 | $15,774.02 |
| Total | 63,178.01 | $30,598,872.25 | $2,074,556.63 |

The requested fee award of $9,031,000 amounts to less than one-third of the actual lodestar, representing a multiplier of .29514. *See* Meltzer Decl., ¶ 50 & Ex. 3.

---

[4] August 11, 2025 is the date of preliminary approval of the Settlement. In using this date as the end-date for the lodestar calculation, Class Counsel has specifically excluded the time they have devoted administering the Settlement notice provisions authorized by the PAO or to seeking final approval of the settlement. *See* Meltzer Decl., ¶¶ 58, 63. Additionally, the lodestar for KTMC excludes the time of any staff that expended less than 50 hours working on the case. *Id.* at ¶¶ 57, 59.

[5] For ease of reference, this chart is also included as Exhibit 3 to the Meltzer Declaration.

1

### 1.    Reasonable Rate

A reasonable hourly rate is "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Fowler v. Wells Fargo Bank, N.A.*, 2019 WL 330910, at *6 (N.D. Cal. Jan. 25, 2019). The hourly rates used in calculating Class Counsel's lodestar are the firms' current hourly rates.[6]  The Ninth Circuit permits fee awards based upon current rates as a means of compensating prevailing attorneys for lost income they might have received due to the opportunity costs of forgoing other work, as well as lost interest. *See United States v. Allergan, Inc.*, 2023 WL 4754637, at *4 (C.D. Cal. July 24, 2023).

The blended average hourly billing rate for the time-keepers whose hours are included in the Summary Cumulative Lodestar calculated using their current rates and the total hours of work is $484.33.  Meltzer Decl., ¶ 65 and Ex. 3. This blended average billing rate is well below the $ 748.58 found to be reasonable by the Eastern District of California in its Final Approval of Class Action Settlement in *Weiner v. Ocwen,* No. 2:14-cv-02597-DJC-SCR, (E.D. Cal. Oct. 10, 2024).[7]  *Weiner*, which involved claims that the defendant charged inflated fees to borrowers that were not properly disclosed, was resolved on a claims-made basis pursuant to a settlement agreement wherein the court approved a fee award of $7.9 million nearly a full year before the claim deadline of September 29, 2025.[8]

---

[6] The lodestar for KTMC calculated using the firm's historical rates for the timekeepers that worked on this case over the span of seventeen years is $24,705,790.30.  Meltzer Decl., ¶ 57.

[7] Meltzer Decl., Ex. 14 ("Weiner Final Approval Order") at 12.

[8] According to the final approval order, at the time of the final fairness hearing on September 19, 2024, 12,000 claims had been processed. *Id.* at p.

6

As set forth in the declaration of counsel submitted in support of the fee request in *Weiner*, the rates for the attorneys that had worked on the case "range[d] from $795 to $1,200 for partners, $600 to $725 for associates, and $250 per hour for paralegals,"[9] resulting in a "blended average billing rate" of $748.58 for the work done in the case. *Weiner*, 2:14-cv-02597-DJC-SCR, ECF 264 at ¶¶ 42 & 51. The *Weiner* Court expressly took note of the blended $748.60 per hour rate, finding it "within the range of what courts consider to be reasonable" in the Eastern District of California. *Weiner* Final Approval Order at 12.[10]

The rates charged for the individual attorneys who worked on this case align closely with those charged by counsel in *Weiner*. *See* Meltzer Decl., Exs. 5-8. Here, however, the blended average rate of $484.33 per hour —based upon individual rates and hours of work—is very modest by comparison, Meltzer Decl., ¶ 65, and easily falls within the range of what courts in the Eastern District of California consider to be reasonable.

The rates charged for the individual attorneys here are also in line with the rates approved throughout California for counsel involved in complex class action litigation. Just this past August, rates that were virtually identical to (if not slightly higher than) those here were found to be reasonable in *Cabrera v. Google LLC*, 2025 WL 2494429, at *9 (N.D. Cal.

---

9. 12,000 claims represent approximately 3.65% of the total 330,337 settlement class members.

[9] *See Weiner*, No. 2:14-cv-02597-DJC-SCR, ECF 264 (declaration of counsel) at ¶¶ 42 & 51.

[10] Citing *American Multi-Cinema, Inc. v. Manteca Lifestyle Ctr., LLC*, 2024 WL 1312209, at *3 (E.D. Cal. Mar. 26, 2024); and *Jones v. Tirehub LLC*, 2024 WL 2132611, at *11 (E.D. Cal. May 13, 2024).

Aug. 29, 2025) (finding KTMC's rates of as high as $1,300/hour for partners, and $750/hour for other attorneys, $495/hour for paralegals, and $450/hour for in-house investigators was consistent with prevailing market rates).

### 2.    Class Counsel's Hours Were Reasonably Expended

Class Counsel's lodestar is based upon 63,178.01 hours of work expended over more than seventeen years by lead Class Counsel KTMC and the firms with which it worked as Class Counsel.[11] As reflected in the long history of this litigation, recounted in the Meltzer Declaration as well as in memoranda of law in support of Final Approval and submission in support of preliminary approval, Defendants aggressively opposed the claims asserted at every phase of this litigation.[12]

The case involved complex issues of insurance and reinsurance risk transfer, federal regulation of mortgage practices and insurance accounting practices. There was extensive discovery, multiple rounds of voluminous summary judgment motions, expert discovery and *Daubert* motions and extensive pre-trial preparation as well as a successful Ninth Circuit appeal. Given these facts and the nature of this case, the time expended is certainly reasonable.

Notably, the court's role in considering these hours is "not … to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee

---

[11] *See* Meltzer Decl., ¶ 48.

[12] *See* Meltzer Decl., ¶¶ 13-23 and Ex. 3; Memorandum of Law in Support of Final Approval at Section II, Meltzer Declaration in Support of Preliminary Approval. ECF 614-1 at ¶¶ 6-21; Memorandum of Law in Support of Preliminary Approval, ECF 614 at Section II.  ECF Nos. 614 and 614-1 are expressly incorporated in support of this motion.

8

requests." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). "In a contingency fee case such as this one, '[i]t must also be kept in mind that lawyers are not likely to spend unnecessary time . . . in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee.'" *Yun-Fei Lou*, 2025 WL 1359067, at *10 (quoting *Moreno*, 534 F.3d at 1112). Indeed, in light of the fact that Class Counsel's fee request is less than one-third of the total lodestar, a detailed hour by hour audit would be extremely time-consuming and is not necessary in assessing the fee request here. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (noting that trial courts seek "to do rough justice, not to achieve auditing perfection" in making a fee determination).

### 3. The 0.29514 multiplier is presumptively reasonable and evidences a lack of collusion

As reflected in the Summary Cumulative Counsel Lodestar and Expense Chart,[13] the requested fee of $9,0310,000 equates to a "negative" multiplier of 0.29514 of the total lodestar, i.e. the request seeks less than one-third of the amount of Class Counsel's actual lodestar amount. "A negative multiple strongly suggests the reasonableness of a negotiated fee." *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, 2025 WL 822665, *10 (quoting *Moreno v. Cap. Bldg. Maint. & Cleaning Servs. Inc.*, 2021 WL 4133860, at *6 (N.D. Cal. Sep. 10, 2021)). *See also Shuman v. SquareTrade Inc.*, 2023 WL 2311950, at *5 & *7 (N.D. Cal. Mar. 1, 2023) (same, collecting cases). Moreover, the fact that a fee requested is significantly less than the lodestar has also been cited as evidence of the lack collusion. *See Hernandez v. Dutton Ranch Corp.*, 2021 WL 5053476, at *4 (N.D. Cal. Sep.

---

[13] Meltzer Decl., ¶¶48-50 and Ex. 3.

9

1
2
3
4
5

10, 2021) (noting, in granting final approval, that "there was no fraud or collusion in this settlement as Plaintiff's counsel's fee request … is only 30% of the of their lodestar a negative multiplier."). In short, the fact that the requested fee is a fraction of Class Counsel's lodestar is indicia of its reasonableness.

6
7
8
9

### 4. The Requested Fee Reasonably Compensates Counsel for Pursuing the Class's Claim Under RESPA to an Excellent Conclusion and Is Not Disproportionate to the Benefit Provided to the Class

10
11
12
13
14
15

There is no doubt the achievement of a settlement providing $875 per loan to all Class Members filing valid claims represents an excellent recovery in this case. This is especially true given the changes in the legal landscape that threatened Plaintiffs' ability to establish Article III standing and recover anything at all for the RESPA violation alleged. *See* Preliminary Approval Order, ECF 615 at 13.[14]

16
17

### a. The Requested Fee is Not Disproportionate to the Maximum Possible Monetary Benefit to the Class

18
19
20
21
22
23

In its Preliminary Approval Order, the Court noted that because the Settlement allows for a "clear sailing" arrangement pursuant to which Defendants agree not to object to the payment of an attorneys' fees award of up to $9,031,000, the Court would closely scrutinize whether "the benefit to the class members is significant enough to overcome the prospect of collusion." ECF 615 at 9-10. As demonstrated herein, the fee requested

24
25
26
27

[14] Noting that "the class members faced a material risk of obtaining no relief had the case continued. The court could have found that the plaintiffs, and by extension the class, lacked Article III standing, or the jury could have found for Defendants on the merits."

28

1    readily passes muster under such scrutiny based upon the facts,

2    circumstances, precedent and overwhelmingly positive response of Class to

3    the Settlement notice.

4        More specifically, in its preliminary approval order, the Court found

5    that "the proposed fee award is not disproportionate to the estimated class

6    payout," based upon the estimated aggregate claims payout figure and that

7    assuming "that the court awards the maximum stated amount of attorneys'

8    fees, the fee award would come to 29.6 percent of the [estimated] claims

9    payout." ECF 615 at 9. By way of update, the actual number of loan records

10   identified by Defendants and sent to the Settlement Administrator totals

11   33,708, and thus the requested fee of $9,031,000 equates to 30.62 % of the

12   actual maximum payout, roughly one percent higher than noted in the

13   Court's Preliminary Approval opinion. This percent, like the 29.6 percent

14   based on the estimated value, is "somewhat less than the one-third figure

15   that is common in contingent-fee arrangements…and…covers around 17

16   years of work." ECF 615 at 9.

17       The percent is even less when the methodology utilized considers all

18   of the benefits to the Class, as at least one other court has done. In

19   particular, in *Yun-Fei Lou* the court included in its calculation of the benefit

20   to the class not only the payout to the class based upon the claims made

21   but also the monetary value of the notice and administrative fees paid

22   under the settlement, the value of the service awards granted to named

23   Plaintiffs and litigation costs awarded. *Yun-Fei Lou*, 2025 WL 1359067, at

24   *13 and n.10. Based upon such calculation and the fee-shifting nature of

25   the case, the Court determined that a fee award in the amount of

26   $8,555,519.50—i.e. "approximately three times the monetary value to the

27   class of the settlement"—was warranted. *Id.*

28

11

1  The approach used in *Yun-Fei Lou* recognizes that the class received
2  the benefit of the value of the additional payments under the settlement.
3  Here, if such items (*i.e.* the $500,000 notice and settlement administrative
4  costs Defendants agreed to pay under the Settlement,[15] and the requested
5  service awards (totaling $25,000) and litigation expense reimbursement
6  ($2,074,556.63) are added to the potential maximum possible claims payout
7  of $29,494,500, the percentage requested fee equates to 28.13% of the total
8  benefit to Class Members of $32,094,056.60 (assuming the total maximum
9  claims payout).   That is, once again, "somewhat less than the one-third
10 figure that is common in contingent-fee arrangements..." for the 17 years
11 of work done by Class Counsel.  ECF 615 at 9.

12       **b.    The Requested Fee is Reasonable Based upon the**
13            **Actual Monetary Benefit to the Class and**
14            **Precedent Awarding Fees Under Statutory Fee**
15            **Shifting Provisions**

16 The requested fee award is also supported by—and not
17 disproportionate to—the monetary value already evident based upon the
18 reaction of the Settlement Class to notice of the proposed Settlement.  In
19 particular, the response of the Settlement Class to being advised of the
20 Settlement has been overwhelmingly positive, with 19%—or 6,436 claims—
21 having already been submitted as of October 24, 2025.[16]  As such, the Class
22 is already reasonably certain to realize a claims payout of approximately
23 $5,631,500.[17]  And, with more than ten months remaining in the claims

---

[15] Meltzer Decl., Ex. 1 at § I. D

[16] JND Decl., ¶ 31.

[17] Calculated by multiplying 6,436 by $875.

1    period, the claims payout is very likely to increase.  Thus, on the basis of

2    the facts actually known—not hypothesized—at this juncture the requested

3    fee award of $9,031,000 is already in line with fees granted under fee

4    shifting statutes even after the close of the claims period. *See Yun-Fei Lou*,

5    2025 WL 1359067, at *13-14. (Awarding fees in an amount "approximately

6    three times the monetary value to the class of the settlement".).

7         More specifically, if the requested reimbursement of expenses

8    ($2,074,556.63) and service awards ($25,000) are granted, the total

9    monetary benefit including those awards and the notice and administration

10   fees of $500,000, ***as of this date*** is approximately $8,231,056.63.  Thus, even

11   now at this early point in the claims process, the requested fee is not a

12   multiple of the value to the class (as was approved in *Yun-Fei Lou*) nor is

13   it $1,800,000 greater than the recovery to the class (as was approved in *In*

14   *re PFA Ins. Mktg. Litig.*).  Instead, the requested fee is now less than

15   $800,000.00 more than the monetary value to the Settlement Class and

16   that number is certain to diminish and likely be entirely wiped out before

17   the claims period ends in August 2026.

18        Accordingly, the Court may properly find the fee request fair and

19   reasonable on the record currently before it.  This is especially true because

20   fee awards based upon fee shifting provisions are not required to be

21   proportionate to or otherwise limited to the cash payout to class members.

22   Indeed, "courts have continued to award attorney's fees that exceed the

23   class's recovery in appropriate circumstances, even after considering

24   *Lowery*," *Yun-Fei Lou*, 2025 WL 1359067, at *15 (citing *In re PFA Ins.*

25   *Mktg. Litig.,* 2024 WL 1145209, at *17 (N.D. Cal. Feb. 5, 2024), in cases

26   involving statutory fee-shifting provisions.

27

28

13

1    Indeed, statutory fee shifting provisions, such as that included in

2   RESPA, Section 8, serve to advance policy considerations and goals by

3   attracting qualified counsel to take on cases that they otherwise would

4   not. *See Yun-Fei Lou*, 2025 WL 1359067, at *13-14.  With regard to

5   consumer cases, the need to incentivize competent counsel to take cases

6   on contingency has been recognized as an important function of fee

7   shifting provisions. *Id.* at *14.  Thus, it has been noted that "[c]ourts

8   regularly grant fee awards that exceed the damages award, sometimes

9   many times over, across a variety of fee-shifting statutes." *Id.* at *14

10  (quoting *In re Outlaw Labs., LP Litig.*, 2023 WL 6522383, at *7 (S.D. Cal.

11  Oct. 5, 2023) (collecting cases)).

12    Accordingly, district courts in this circuit have found attorneys' fees

13  that exceed the amount distributed to the class to be reasonable where

14  there is no evidence of collusion, the fees were separately paid from a

15  claims-made benefit to the class and the requested fees are reasonable

16  under a lodestar analysis.

17    For example, in *In re PFA Ins. Mktg. Litig.*, the court granted an

18  award of $6,000,000 in attorney's fees in connection with class recovery of

19  $4.2 million, explaining:

20    Where, as here, there is no evidence of collusion and the

21    attorneys' fees at issue are reasonable when compared to the

22    class members' recovery under the settlement and the other

23    factors discussed above, the presence of a clear-sailing provision

24    or kicker clause does not preclude granting approval of a

25    settlement. *See In re Bluetooth*, 654 F.3d at 949; *Briseño*, 998

26    F.3d at 1026-28.

27

28

1    2024 WL 1145209, at *18.  The "other factors" considered by the court to

2    justify the award are also present here and included: the complex nature of

3    case; the vigorous litigation of the case; the fact that fees were negotiated

4    after all material terms for class were agreed to; that the requested fees

5    were less than class counsel's lodestar;[18] and "that Class Counsel

6    committed substantial resources on a contingency basis for the benefit of

7    the class and achieved excellent results on behalf of the class throughout

8    this highly contested litigation." *Id.*  These same factors support granting

9    the requested award here.

10       In sum, given all of the circumstances here, it is apparent on the

11   current record that the fee requested is fair and reasonable and therefore,

12   the Court may properly issue an Order awarding same.

13       **5.    There Have Been No Objections from Class Members to**

14             **the Requested Fee and The Representative Plaintiffs**

15             **Support the Request**

16       The Notice of the Proposed Class Settlement mailed, emailed and

17   available online to Settlement Class Members advised them that Class

18   Counsel would request up to $9,031,000 in attorneys' fees as compensation

19   for the years of work and time they devoted to achieving the successful

20   resolution and significant settlement benefit in this case.[19]  Not only have

21   the Settlement Class members reacted extremely positively to the

22   Settlement as reflected by the very high early rate of claims submitted, but

23   also, not one has objected to the amount of fees Class Counsel was

24   permitted to request. In addition, each of the Representative Plaintiffs has

25   ───────────────

26   [18] The requested fees were $6,000,000 and class lodestar was $7,338,869.00.

27   [19] *See* JND Decl., ¶ 15 and Ex. B thereto.

28

1    expressly offered their endorsement of the attorneys' fees request. *See*

2    Meltzer Decl., ¶ 12 and Exs. 9-13 at Section III of each. This unequivocal

3    support for the fee award requested also weighs in favor of its approval.

4    **III.  THE REQUESTED EXPENSE REIMBURSEMENT IS JUSTIFIED**

5    **AND APPROPRIATE**

6    "An attorney is entitled to 'recover as part of the award of attorney's

7    fees those out-of-pocket expenses that would normally be charged to a fee

8    paying client.'" *Yun-Fei Lou*, 2025 WL 1359067, at *16 (quoting *Harris v.*

9    *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Consistent with this authority,

10   Class Counsel requests that it be awarded $2,074,566.63 in reimbursement

11   of the expenses incurred in litigating this case to a successful conclusion.

12   Notably the requested award would not diminish or otherwise impact the

13   funds available to Settlement Class Members.

14   Moreover, the reimbursement request is "limited to typical out-of-

15   pocket expenses that are charged to a fee paying client and [are] reasonable

16   and necessary." *Wells v. Dci Donor Servs., Inc.*, 2025 WL 2098702, at *10

17   (E.D. Cal. July 25, 2025) (quoting *In re Immune Response Sec. Litig.*, 497

18   F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)). In particular, Class Counsel

19   properly seeks reimbursements for: "1) meals, hotels, and transportation;

20   2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger

21   and overnight delivery; 6) online legal research; 7) class action notices; 8)

22   experts, consultants, and investigators; and 9) mediation fees." *See id.*

23   (listing these items as the type that may be included in a reimbursement

24   request).

25   These expenses for which reimbursement is sought are documented

26   in the accompanying declarations of counsel which set forth the nature and

27   amount of the expenses incurred during the past seventeen years during

28

1  which they prosecuted this case.  *See* Meltzer Decl., 48, 46,66-69 and Exs.
2  5-8. Those expenses total $2,074,556.63, confirming that the requested
3  reimbursement is warranted.

4  **IV.    THE REQUESTED INCENTIVE AWARDS ARE REASONABLE**

5        In recognition of their contribution to the pursuit and ultimate
6  resolution of the RESPA claims on behalf of the Class they have
7  represented for many years, the Settlement Agreement provides that
8  incentive awards of $5,000 for each named plaintiff may be sought without
9  opposition from Defendants. Meltzer Decl., Ex. 1, § IV. A.  Any such award
10 is to be paid by Defendants separate and apart from, and without any
11 impact upon, the $875 per loan to which Class members are entitled. *Id.*

12       The "presumptively reasonable amount for service awards in the
13 Ninth Circuit is $5,000." *Cabrera*, 2025 WL 2494429, at *9. Such awards
14 serve to "compensate class representatives for work done on behalf of the
15 class," "make up for financial or reputational risk" associated with bringing
16 the action, and, in some cases "to recognize their willingness to act as a
17 private attorney general." *Guthrie v. ITS Logistics, LLC*, 2025 WL 2463123,
18 at *20 (E.D. Cal. Aug. 27, 2025).  Here, not only is the amount of the
19 requested incentive awards presumptively reasonable, it is supported by
20 the declarations of the named Plaintiffs detailing the substantial time and
21 effort the Plaintiffs devoted to advancing this RESPA case. *See* Meltzer
22 Decl., ¶¶ 70-71 and Exhibits 9-13, Section I of each.  Coupled with Counsel's
23 attestation to their contributions to the case, the Plaintiffs' own testimony
24 concerning their participation in discovery (including collecting and
25 producing documents, responding to interrogatories and sitting for their
26 depositions); regular correspondence and consultation with counsel
27 concerning developments in the case, including those related to motions,

28

17

1  trial preparation and appeals; and communications regarding settlement
2  negotiations and the agreement to settle the case demonstrates that the
3  quantity and quality of their representative service  justifies the  awards
4  sought.

5      Finally, the incentive awards sought do not represent an
6  unreasonably high proportion of the overall settlement amount or are
7  disproportionate to the recovery of other class members suggestive of
8  inadequacy or collusion. *See Guthrie*, 2025 WL 2463123, at *20 (noting
9  cases where incentive awards of 1% of the common fund were found to be
10 excessive and/or overcompensate the plaintiffs).  Indeed, as observed by the
11 Court in preliminarily approving the Settlement, the "maximum aggregate
12 incentive payment of $25,000 is a minuscule fraction (which is eight ten-
13 thousandths as a raw figure, or eight one hundredths of one percent, of the
14 whole) of the estimated total class payout." ECF 615, n.5.

15 **V.    CONCLUSION**

16      For all of the foregoing reasons, Class Counsel respectfully request
17 that their motion for Motion for an Award of Attorneys' Fees,
18 Reimbursement of Expenses and Representative Plaintiff Service Awards
19 be granted.

20
21 DATED: October 30, 2025          Respectfully submitted,

22                                  **KESSLER TOPAZ**
23                                  **MELTZER & CHECK, LLP**

24                                  */s/ Joseph H. Meltzer*
                                    Joseph H. Meltzer, Esq.
25                                  Terence S. Ziegler, Esq.
26                                  Donna Siegel Moffa, Esq.
27                                  Lisa M. Port, Esq.

                                    18

1    280 King of Prussia Road

2    Radnor, PA 19087

      Telephone: (610) 667-7706

3    Facsimile: (610) 667-7056

4    **LARSON LLP**

5    Stephen G. Larson, Esq. (SBN 145225)

      Paul A. Rigali, Esq. (SBN 262948)

6    Steven E. Bledsoe, Esq. (SBN157811)

7    Catherine S. Owens, Esq. (SBN 307626)

      555 South Flower Street, 30th Floor

8    Los Angeles, CA 90071

9    Telephone: (213) 436-4888

      Facsimile: (213) 623 2000

10

11    *Counsel for Plaintiffs and the Class*

19

1

## CERTIFICATE OF COMPLIANCE

2     I hereby certify that the foregoing Memorandum of Points and

3  Authorities contains 4,904 words, as reported by Microsoft Word.

4

5                              */s/ Joseph H. Meltzer*

6                              Joseph H. Meltzer

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 1:08-cv-00759-MMB-BAM
PLAINTIFFS' MEMO ISO MOTION FOR ATTORNEYS' FEES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (CM/ECF) upon all counsel of record.

*/s/ Joseph H. Meltzer*
Joseph H. Meltzer

21